*Leave to file*
*Granted*
*J CKolle-Kotu*
*3/7/2023*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                              )<br>)<br>)<br>PRAKAZREL MICHEL,        )<br>    a/k/a "PRAS" MICHEL,    )<br>LOW TAEK JHO,              )<br>    a/k/a "JHO LOW",         )<br>)<br>Defendants.          )<br>)<br>_____ ) | CRIMINAL NO. 1:19-CR-148 (CKK) |

## MOTION TO QUASH SUBPOENA TO TESTIFY

Donald J. Trump respectfully moves this Court to quash Defendant Prakazrel Michel's subpoena to testify at a hearing or trial in this criminal matter. The subpoena, dated January 20, 2023, seeks President Trump's appearance on March 27, 2023, at 12:00 a.m., in Courtroom 28 of this Court.

The Defendant has failed to demonstrate the required need for the testimony of President Trump and has failed to show that President Trump's testimony would be relevant, material, admissible, favorable, and non-cumulative.

In support of this motion, President Trump submits the accompanying memorandum, which is fully incorporated herein.

Dated: March 3, 2023

Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC

717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

*Attorney for Donald J. Trump*

## CERTIFICATE OF SERVICE

I certify that on March 3, 2023, a copy of the foregoing was filed with the Clerk of the Court at the provided email address, dcd_cmecf_cr@dcd.uscourts.gov, in which a copy will be sent to the U.S. District Judge assigned to this matter. If approved for filing by the U.S. District Judge, it will be filed on the docket using the Court's CM/ECF system, which will send a copy to all counsel of record.

Dated: March 3, 2023

/s/ Jesse R. Binnall
Jesse R. Binnall

*Attorney for Donald J. Trump*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:19-CR-148 (CKK) |
| | ) | |
| | ) | |
| PRAKAZREL MICHEL, | ) | |
|     a/k/a "PRAS" MICHEL, | ) | |
| LOW TAEK JHO, | ) | |
|     a/k/a "JHO LOW", | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PRESIDENT DONALD J. TRUMP'S MEMORANDUM IN SUPPORT OF HIS
## MOTION TO QUASH SUBPOENA TO TESTIFY

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................. ii

BACKGROUND ...................................................................................... 1

LEGAL STANDARDS............................................................................. 2

ARGUMENT ........................................................................................... 4

      I.      Enforcement of the subpoena would be unreasonable and oppressive. ........................................................................... 4

      a. All the information sought is protected by privilege or is cumulative, irrelevant, immaterial, or unfavorable to Defendant Michel.......................................................................................... 4

      b. President Trump's testimony would be irrelevant, immaterial, and prejudicial........................................................................... 12

      c. The practicalities of a former President testifying in Court would incur unreasonable expenses and create an oppressive burden........... 14

CONCLUSION ...................................................................................... 14

CERTIFICATE OF SERVICE................................................................ 16

# TABLE OF AUTHORITIES

### Cases

*C. & S. Air Lines v. Waterman S.S. Corp.,*

  333 U.S. 103, 111 (1948) ..................................................................................11

*Cohen v. Cowles Media Co.,*

  501 U.S. 663, 669 (1991) ...................................................................................2

*In re Grand Jury Investigation,*

  No. MC 17-2587 (BAH), 2017 WL 11140345, at *3 (D.D.C. Oct. 23, 2017) ..............2

*In re Sealed Case,*

  121 F.3d 729, 736 (D.C. Cir. 1997) ...................................................................8

*Montrose Chem. Corp. of California v. Train,*

  491 F.2d 63, 69 (D.C. Cir. 1974) ......................................................................13

*New Jersey v. T.L.O.,*

  469 U.S. 325, 337 (1985) ....................................................................................3

*Simplex Time Recorder Co. v. Sec'y of Lab.,*

  766 F.2d 575, 586 (D.C. Cir. 1985) ..................................................................13

*Trump v. Vance,*

  140 S. Ct. 2412, 2422 (2020) .............................................................................8

*\* United States v. Nixon,*

  418 U.S. 683 (1974) ....................................................................3, 5, 6, 8, 9, 11

*United States v. Burr,*

    25 F. Cas. 30, 33–34 (No. 14,692d) (CC Va. 1807) .......................................................9

*United States v. McGill,*

    815 F.3d 846, 880 (D.C. Cir. 2016) .............................................................................14

*United States v. Morgan,*

    313 U.S. 409 (1941) ......................................................................................................12

*United States v. North,*

    910 F.2d 843, 889 (D.C. Cir. 1990) .........................................................................4, 15

\* *United States v. R. Enterprises, Inc.,*

    498 U.S. 292, 299 (1991) ........................................................................................3, 4, 5

United States v. Valenzuela–Bernal,

    458 U.S. 858, 867 (1982) ...........................................................................................5, 6

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*

    429 U.S. 252, 268 (1977) .............................................................................................12

**Rules**

7 Fed. Proc. Forms § 20:526...............................................................................................4

Fed. R. Crim. P. 17(c)(2) ...................................................................................................3

Fed. R. Evid. 401 ..............................................................................................................12

Fed. R. Evid. 402 ..............................................................................................................12

Fed. R. Evid. 403 ..............................................................................................................12

### U.S. Constitution

U.S. Const. amend. V ........................................................................................4

U.S. Const. amend. VI .......................................................................................4

### U.S. Code

3 U.S.C. § 102, *et seq.* ......................................................................................14

The moving defendant has failed to demonstrate the required need for the testimony of President Trump and has failed to show that President Trump's testimony would be relevant, material, admissible, favorable, and non-cumulative. A criminal defendant cannot abuse the right to compulsory process of witnesses by hauling an unrelated third-party into a court for irrelevant, immaterial, unfavorable, and cumulative criminal trial testimony. The moving defendant is unreasonably and oppressively seeking to drag a former President into testifying at a criminal trial when the former President has no information that is (1) not privileged and inadmissible at trial; (2) not entirely irrelevant, immaterial, or harmful to the defense that seeks the testimony; and (3) non-cumulative of other witnesses. The Court should quash the subpoena.

## BACKGROUND

According to the superseding indictment, the moving defendant, Prakazrel Michel, has been charged with multiple federal offenses. Superseding Indictment, ECF No. 84. These charges stem from two separate periods of time and three separate series of actions.

The superseding indictment alleges that Defendant Michel, along with his co-defendant Low Taek Jho, worked to improperly influence the Obama campaign and President Obama by far exceeding donation limits during the 2012 presidential election. *Id.* at 1-19. These offenses make up the first four counts of the superseding

indictment. *Id.* Next, the superseding indictment alleges, in counts five and six, that Defendant Michel tampered with witnesses. *See id.* at 19-23. F

Finally, the superseding indictment outlines a plan to lobby and influence the Trump Administration and President Trump in an attempt to accomplish two goals: (1) a favorable resolution of the 1MDB investigation, and (2) the release of People's Republic of China ("PRC") national A, in violation of 18 U.S.C. § 371, 22 U.S.C. § 612, 22 U.S.C. § 618, and 18 U.S.C. § 951. *See id.* at 23-44. Neither of these goals were accomplished.

Defendant Michel has issued a subpoena to President Trump for trial testimony. President Trump now moves to quash that subpoena.

## LEGAL STANDARDS

In accordance with Federal Rule of Criminal Procedure 17, a subpoena must "command the witness to testify at the time and place the subpoena specifies." Federal subpoenas "impose legal obligations, enforceable by a federal court, to respond to requests for documents, testimony, or both." *In re Grand Jury Investigation*, No. MC 17-2587 (BAH), 2017 WL 11140345, at *3 (D.D.C. Oct. 23, 2017) (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) (noting "the obligation shared by all citizens to respond to a grand jury subpoena and answer questions relevant to a criminal investigation"). Once served with a subpoena, the party that has received the subpoena may acquiesce to the subpoena, or they may seek to remove the legal obligation created by the subpoena. "On motion made

2

promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

The Supreme Court has been clear that the standard created by Federal Rule of Criminal Procedure 17(c) is "not self-explanatory." *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 299 (1991) (citing *New Jersey v. T.L.O.,* 469 U.S. 325, 337 (1985)). In *Nixon*, the Supreme Court "defined what is reasonable in the context of a jury trial." *Id.* The Court determined that "a party must make a reasonably specific request for information that would be both relevant and admissible at trial." *Id.* (citing *United States v. Nixon,* 418 U.S. 683, 700 (1974)). In *R. Enterprise*, the concurring justices elaborated that Rule 17(c) "requires the district court to balance the burden of compliance, on the one hand, against the governmental interest in obtaining the documents on the other." 498 U.S. at 303 (Stevens, J., concurring).

Moreover, the D.C. Circuit has approved this Court's decision to quash a rule 17(a) subpoena when the proposed high-ranking administration official witness could not provide testimony that was both relevant and material to the case. *See United States v. North,* 910 F.2d 843, 889 (D.C. Cir. 1990), *withdrawn and superseded in part on rehearing by,* 920 F.2d 940, (D.C. Cir.1990.),

## ARGUMENT

I. **Enforcement of the subpoena would be unreasonable and oppressive.**

    a. **All the information sought is protected by privilege or is cumulative, irrelevant, immaterial, or unfavorable to Defendant Michel.[1]**

The Supreme Court has decided that determining whether to enforce a subpoena is a balancing test. In *R. Enterprise*, the concurring justices confirmed that Rule 17(c) "requires the district court to balance the burden of compliance, on the one hand, against the governmental interest in obtaining the documents on the other." 498 U.S. at 303 (J. Stevens, concurring). Here, where it is not the government seeking to enforce a subpoena but a defendant, the same balancing should take place, but instead of the governmental interest in obtaining the documents, it would be the defendants' rights to compulsory process under the Sixth Amendment and to a fair trial and due process under the Fifth Amendment. *See, e.g.,* 7 Fed. Proc. Forms § 20:526; U.S. Const. amend. VI; U.S. Const. amend. V. This comports with the Supreme Court's discussion in *U.S. v. Nixon*, 418 U.S. 683, 711 (1974), where the Court determined that the right to production of evidence implicates the Sixth

---

[1] As an initial matter, Defendant Michel's blank subpoena does not comply with the requirement that a subpoena to a President be both reasonably specific and for information that is admissible at trial because it contains no information about what information it seeks from President Trump. *R. Enterprises, Inc.,* 498 U.S. at 299–300 (citing *Nixon,* 418 U.S. at 700 (1974)). This alone could provide this Court with grounds to quash the subpoena.

Amendment right to compulsory process and the Fifth Amendment right to due process.

These protections are not, however, without their limits. The Supreme Court has determined that a petitioner must "make some plausible showing of how [the absent witness's] testimony would have been both material and favorable to his defense." *See United States v. Valenzuela–Bernal,* 458 U.S. 858, 867 (1982) (holding that the defendant's compulsory process right was not violated by the deportation of illegal aliens who could be defense witnesses because the defendant could not show lost testimony would have been material, favorable, and not merely cumulative).

Similarly, here, Defendant Michel must show that President Trump's testimony would be both material and favorable to his defense. Therefore, Defendant Michel must show: (1) that he has a reasonably specific request for information that will likely be admissible at trial, *Nixon,* 418 U.S. at 700; and (2) that the information would be material, favorable, and not merely cumulative, *Valenzuela–Bernal,* 458 U.S. at 867.

Since there has been no reasonably specific request, President Trump is left to speculate as to what information Defendant Michel may be seeking. President Trump's counsel conferred with Defendant Michel's counsel who stated they would seek testimony from President Trump that the conduct in the superseding indictment was not improper in relation to the official act at issue. Other than these broad suggestions, which are discussed in more detail below, President Trump is left to speculate what topics may be covered. Based on the superseding indictment, there

are only a handful of interactions between any of the alleged co-conspirators of Defendant Michel and President Trump, and no interactions between Defendant Michel and President Trump.

In Count 7, conspiracy to serve as an unregistered agent of a foreign principal and a foreign government and to commit money laundering, the superseding indictment lays out that Defendant Michel (1) engaged in a conspiracy to act as an agent of a foreign principal, (2) engaged in a conspiracy to act as an agent of a foreign government, (3) transferred funds from outside the United States to inside the United States to further the conspiracies, and (4) represented these funds and the transfers as legitimate. Superseding Indictment, ECF No. 84, at 23-37.

Of these four overarching claims, only the allegations of conspiracy to act as an agent of a foreign principal and foreign government could even potentially relate to President Trump or anything about which President Trump could potentially testify. More specifically, there are only three allegations in the superseding complaint that President Trump may have personal knowledge of and could, therefore, potentially testify regarding. Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

First, there is a general allegation that between June and September 2017, Defendant Michel's co-conspirator Elliott Broidy contacted high-ranking administration members and President Trump himself in an attempt to set up a golf match between the Malaysian Prime Minister and President Trump. Superseding

6

Indictment, ECF No. 84, at ¶ 130. Second, there is an allegation that a September 2017 meeting took place between the Malaysian Prime Minister and President Trump. *Id.* at ¶ 134 (admitting that no golf match took place in addition to the official meeting). Third, there is an allegation that an October 6, 2017, meeting took place between President Trump and co-conspirator Broidy where Broidy lobbied President Trump on behalf of Defendant Low. *Id.* at ¶ 135. All of these actions are likely to be cumulative evidence from other sources and are inadmissible from President Trump himself. In addition, Defendant Michel has argued that Steve Wynn was involved in the lobbying of President Trump. ECF No. 195 at 13-14. This too fails to advance any relevant, material, favorable, or non-cumulative evidence that could be elicited during President Trump's testimony.

### 1. *President Trump's testimony is inadmissible due to Executive Privilege.*

"Since the beginnings of our nation, executive officials have claimed a variety of privileges to resist disclosure of information the confidentiality of which they felt was crucial to fulfillment of the unique role and responsibilities of the executive branch of our government." *In re Sealed Case,* 121 F.3d 729, 736 (D.C. Cir. 1997). In *Nixon,* the Court determined that a "President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *Nixon,* 418 U.S. at 708. The Court went on to hold "[t]hese are the considerations justifying a presumptive privilege for Presidential communications." *Id.*

7

While it is true there is a presumptive privilege for executive communications, the Supreme Court has determined that the President "does not 'stand exempt from the general provisions of the constitution' or, in particular, the Sixth Amendment's guarantee that those accused have compulsory process for obtaining witnesses for their defense. *Trump v. Vance,* 140 S. Ct. 2412, 2422 (2020) (citing *United States v. Burr,* 25 F. Cas. 30, 33–34 (No. 14,692d) (CC Va. 1807)). Rather, *Nixon* found "neither the doctrine of separation of powers, nor the need for confidentiality of high-level communications, without more, can sustain an absolute, unqualified Presidential privilege of immunity from judicial process under all circumstances." *Nixon,* 418 U.S. at 706. This, of course, means that there are some instances where executive privilege will bend to a criminal subpoena and some instances where it will not. *Id.* at 710-11. *Nixon* espoused a couple of specific areas where courts may be required to defer to the executive's assertion of privilege, including military or diplomatic secrets, foreign policy considerations, and national security. *Id.* And, as noted above, the Court also determined that a criminal subpoena may implicate the Sixth Amendment right to compulsory process and the Fifth Amendment right to due process, and courts must "vindicate those guarantees." *Id.* at 711.

Here, even including Defendant Michel's counsel's proffer to undersigned counsel and other statements on the record, there are only three instances of conduct that need to be considered: (1) a general allegation of communications from co-conspirator Broidy to high-ranking Trump Administration officials and President Trump in an attempt to set up a golf match between the Malaysian Prime Minister

and President Trump; (2) a September 2017 meeting that took place between the Malaysian Prime Minister and President Trump; and (3) an October 6, 2017 meeting between President Trump and co-conspirator Broidy.

Executive privilege extends to all Presidential communications, including those of aides and close advisors. The breadth of this protection sweeps up any testimony that President Trump may give on any of the instances discussed in the superseding indictment. Moreover, unlike in *Nixon*, the privilege here is not required to bend or break due to the issues presented in this case.

First, it is quickly confirmed by a search of the Department of Justice FARA filings that Defendant Michel is, in fact, not registered under FARA. Therefore, any testimony from President Trump about the communications from Broidy attempting to set up a golf match with the Malaysian Prime Minister and a meeting at which Broidy lobbied President Trump to take an action for a client that was paying Broidy to lobby on his behalf would be harmful to Defendant Michel. It would be harmful since the mere act of lobbying President Trump on behalf of a foreign power or a foreign national would prove essential elements of the government's case. The contents of the lobbying efforts are immaterial to the criminality of the failure to register before engaging in lobbying activities.

Since the testimony is not favorable, Defendant Michel's Fifth and Sixth Amendment rights are not implicated, and the balance tips decidedly in favor of sustaining executive privilege unlike in *Nixon*. In *Nixon,* unlike in this case, the subpoena for documents was issued by the government rather than by an individual

defendant. This required a balancing of different interests that are not at play here. Due to the issues presented in this case, executive privilege should not bend because Defendant Michel's constitutional rights are not involved.

Moreover, President Trump's conversations with the Malaysian Prime Minister are absolutely privileged under *Nixon* because they were foreign policy conversations between the United States President and the Malaysian Prime Minister. *Nixon* specifically found that:

> "'The President, both as Commander-in-Chief and as the Nation's organ for foreign affairs, has available intelligence services whose reports are not and ought not to be published to the world. It would be intolerable that courts, without the relevant information, should review and perhaps nullify actions of the Executive taken on information properly held secret.'"

*Nixon,* 418 U.S. at 710 (quoting *C. & S. Air Lines v. Waterman S.S. Corp.,* 333 U.S. 103, 111 (1948). Therefore, any communication including discussion of foreign policy is absolutely privileged.

Second, the Department of Justice has informed this Court that it is planning to call Broidy to the stand and may call Steve Wynn to the stand. ECF No. 193 at 10 ("The defendant, therefore, will have an opportunity to directly question the individuals responsible for and knowledgeable about the communications with President Trump."). Therefore, everything that President Trump could testify about would be needlessly cumulative. Moreover, as the Department of Justice succinctly argued, "Consequently, President Trump's cumulative testimony that he was in fact approached and lobbied about both meeting with Najib and extraditing Guo would

not make it more or less probable that Michel and his co-conspirators were working at the direction of Low and the PRC government." *See id.*

Therefore, executive privilege precludes any of President Trump's testimony from being admissible, and this Court should quash the subpoena.

### 2.   *President Trump's testimony is inadmissible due to the Morgan doctrine and deliberative process privilege.*

It is well-established that government decision-makers should not be compelled to testify about the basis for their decision-making absent extraordinary circumstances. The seminal case is *United States v. Morgan*, 313 U.S. 409 (1941), where the Supreme Court ruled that a district court erred in allowing the deposition of the Secretary of Agriculture about the basis on which he decided to issue an order setting maximum rates that could be charged.

The Court determined that "[j]ust as a judge cannot be subjected to such a scrutiny, so the integrity of the administrative process must be equally respected." *Id.* at 422 (citations omitted). The Supreme Court has clarified that only in "extraordinary instances" may members of a "decision-making body" be called to testify about their decisions, and "even then such testimony frequently will be barred by privilege." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977). Indeed, the D.C. Circuit has determined that "[t]he bar against probing the mental processes of an executive branch decision-maker is not recently derived from exemption 5 of FOIA," but rather it is established in the *Morgan* cases. *Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 69 (D.C. Cir. 1974). The D.C. Circuit

11

confirmed this position in 1985 when it held "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586 (D.C. Cir. 1985).

The President is an executive decision-maker, and, here, it is alleged that he made several pertinent decisions. These decisions include the decision not to interfere with the Department of Justice's investigation into the 1MDB scandal and not to release PRC national A. Allowing an inquiry into the decision-making process of President Trump or into the information underlying those decisions would violate well-established precedence limiting investigation into the decision-making process of executive officials. Therefore, this Court must quash this subpoena because it does not seek relevant or admissible evidence.

  b. **President Trump's testimony would be irrelevant, immaterial, and prejudicial.**

Only relevant evidence is admissible. *See* Fed. R. Evid. 402. Evidence is only relevant if "it has any tendency to make a fact more or less probable than it would be without other evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401.

A court may nevertheless exclude relevant evidence if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also United States v. McGill*, 815 F.3d 846, 880 (D.C. Cir. 2016).

As noted above, the Department of Justice has already filed briefs with this Court outlining the lack of materiality and relevance of President Trump's testimony. "Consequently, President Trump's cumulative testimony that he was in fact approached and lobbied about both meeting with Najib and extraditing Guo would not make it more or less probable that Michel and his co-conspirators were working at the direction of Low and the PRC government." ECF No. 193 at 10.

In *North*, the D.C. Circuit confirmed this Court's decision to quash a subpoena to President Reagan because the record did not contain evidence that President Reagan could testify about material elements of either the prosecution or defense case. 910 F.2d at 889-92. The Court properly determined that President Reagan's testimony was "immaterial to North's defense" and subject to being quashed because President Reagan would not present "evidence relevant and material" to North's criminal defense if President Reagan were compelled to testify. *Id.* at 890, 889.

Here, President Trump likely would not provide any relevant evidence, and if he did, it would be highly likely to confuse the issues, create undue prejudice, and be unnecessarily cumulative of other witnesses' testimony. The specific charges against Defendant Michel render the testimony he would seek from President Trump irrelevant and immaterial because it is irrelevant what was actually said to President Trump. The only material questions are whether Defendant Michel was registered as required by law to lobby on behalf of foreign countries or persons, and if such lobbying took place. President Trump does not provide any new material or relevant information on those questions.

    c.    **The practicalities of a former President testifying in Court would incur unreasonable expenses and create an oppressive burden.**

Pursuant to the Former Presidents Act, 3 U.S.C. § 102, *et seq.*, provides that a former President shall continue to be under United States Secret Service protection. Included within this protection is a requirement that the USSS utilize advanced countermeasures anytime a former President travels, including controlling environments that may be or may become dangerous or hostile.

It is likely that, should this subpoena not be quashed, the USSS would be required to some extent to close this Court or control or otherwise limit access to the Court in order to allow the President to testify. This expense to the taxpayers is unreasonable given the lack of admissible information in President Trump's possession and lack of general knowledge of the relevant and pertinent events. It is unreasonable and oppressive to require that these steps be taken for testimony that is irrelevant and inadmissible.

## CONCLUSION

Therefore, for the reasons outlined above, President Trump respectively requests this Court quash the subpoena issued by Defendant Michel for his testimony.

Dated: March 3, 2023              Respectfully submitted,

                                /s/ Jesse R. Binnall
                                Jesse R. Binnall (VA022)
                                BINNALL LAW GROUP, PLLC
                                717 King Street, Suite 200

Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
Email: jesse@binnall.com

*Attorney for Donald J. Trump*

## CERTIFICATE OF SERVICE

I certify that on March 3, 2023, a copy of the foregoing was filed with the Clerk of the Court at the provided email address, dcd_cmecf_cr@dcd.uscourts.gov, in which a copy will be sent to the U.S. District Judge assigned to this matter. If approved for filing by the U.S. District Judge, it will be filed on the docket using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Jesse R. Binnall
Jesse R. Binnall

*Attorney for Donald J. Trump*

16

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:19-CR-148 (CKK) |
| | ) | |
| | ) | |
| PRAKAZREL MICHEL, | ) | |
| a/k/a "PRAS" MICHEL, | ) | |
| LOW TAEK JHO, | ) | |
| a/k/a "JHO LOW", | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## [PROPOSED] ORDER

Upon consideration of Donald J. Trump's Motion to Quash Subpoena to Testify and arguments in the accompanying memoranda, any opposition thereto, any oral arguments before this Court and because the Court finds good cause, it is hereby

ORDERED Donald J. Trump's motion is GRANTED.

The subpoena sent to President Trump for his testimony in this criminal matter is not required as it would be irrelevant, immaterial, inadmissible, unfavorable, and non-cumulative. As such, President Trump does not need to comply.

**SO ORDERED.**

Dated: _____

_____
The Honorable Colleen Kollar-Kotelly
United States District Judge

AO 458 (Rev. 06/09) Appearance of Counsel

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff* | ) |
| v. | ) |
| PRAKAZREL MICHEL and LOW TAEK JHO | ) |
| *Defendant* | ) |

Case No.    1:19-CR-148 (CKK)

## APPEARANCE OF COUNSEL

To:    The clerk of court and all parties of record

I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for:

Donald J. Trump

Date:    03/03/2023

/s/ Jesse R. Binnall
*Attorney's signature*

Jesse R. Binnall (VA022)
*Printed name and bar number*

Binnall Law Group, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314

*Address*

jesse@binnall.com
*E-mail address*

(703) 888-1943
*Telephone number*

(703) 888-1930
*FAX number*

RECEIVED BY CHAMBERS

SK 3/7/23

### CLERK'S OFFICE
### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

Received: 3/3/2023
Sent to Chambers: 3/6/2023

TO:   **Judge**   Colleen Koller-Kotelly

RE:   Criminal Action No.:   19-148, USA v. Michel, et al

Please indicate on the face of **each document** whether leave to file is granted or denied.

LEAVE TO FILE GRANTED

Thank you

ANGELA D. CAESAR, Clerk of Court

By: _____

Attachment(s):

Motion to Quash Subpoena to Testify.
Third Party Motion

CO-930A
(Rev. 9/2011