<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2

 3   UNITED STATES OF AMERICA,     ) CRIMINAL ACTION NO.:
                                   ) 19-00148-1
 4            Plaintiff,           )
         vs.                       )
 5                                 )
     PRAKAZREL MICHEL,             ) Washington, D.C.
 6                                 ) March 27th, 2023
              Defendant.           ) 2:16 p.m.
 7   _____) AFTERNOON SESSION

 8

 9                  TRANSCRIPT OF JURY VOIR DIRE
            BEFORE The HONORABLE COLLEEN KOLLAR-KOTELLY
10                  UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   FOR THE GOVERNMENT:        John D. Keller, Esquire
                                U.S. Department of Justice
14                              1301 New York Avenue, NW
                                Suite 1016
15                              Washington, D.C. 20530

16                              Sean F. Mulryne, Esquire
                                Nicole Rae Lockhart, Esquire
17                              U.S. Department of Justice
                                Public Integrity Section
18                              1400 New York Avenue, NW
                                Washington, D.C. 20005

19

20   For the Defendant:         David E. Kenner, Esquire
                                Alon Israely, Esquire
21                              Kenner Law Firm
                                16633 Ventura Boulevard
22                              Encino, California 91436

23

24

25
</pre>

```
1   APPEARANCES (CONT'D):


3   FOR THE DEFENDANT:        Charles R. Haskell, Esquire
                              Law Offices of Charles R.
4                             Haskell, P.A.
                              641 Indiana Avenue, NW
5                             Washington, D.C. 20004

6   Reported by:              Christine T. Asif, RPR, FCRR
                              Official Court Reporter
7                             United States District Court
                              for the District of Columbia
8                             333 Contitution Avenue, NW
                              Room 6507
9                             Washington, D.C., 20001
                              (202) 354-3247
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    P R O C E E D I N G S

 2            THE COURT:  All right.  Good afternoon.  What I'd

 3   like to suggest is in terms of trying to move 102 people

 4   around, minus a few people that we excused, is to suggest that

 5   we, from 77 to 102, that we excuse them now and ask them to

 6   come back at 9:00.  We're clearly not going to reach them.

 7   And instead of leaving them getting annoyed in the ceremonial

 8   courtroom, I would suggest, you know, that we do that.  We can

 9   also tomorrow figure out, you know, maybe having different

10   groups come and go.  But I think to start with, we'll make

11   sure that we at least get those out.

12            I'm going to leave the ones in Judge Cooper's for

13   now.  I found it's helpful to make them understand they need

14   to hang around even though it's a nuisance.  So we don't wind

15   up losing them and trying to find them.

16            The other thing is by tomorrow, we will have an

17   overflow courtroom, so media can go someplace else to watch.

18   I mean, the courtroom's open so people can be here, but we

19   will have a separate overflow, so either spectators or the

20   media can go down there and watch what's going on.  I don't

21   think it's going to get set up for today.

22            So anybody have any objections to excusing 77 to

23   102?

24            MR. KELLER:  No, Your Honor.

25            MR. KENNER:  No, Your Honor.
```

```
1               THE COURT:  Okay.  Let me just run down, say
2    something to them to make sure they show up tomorrow, and I'll
3    be right back.
4               (A recess was taken.)
5               THE COURT:  All right.  I think we're all set.
6               THE CLERK:  Would you like the next juror, Your
7    Honor?
8               THE COURT:  Yes, please.
9               If you would step up over here, please.  Go ahead
10   and sit down.  And you can take your mask off.  Thank you.
11   And you need to speak into the microphone.
12              This is juror No. 0187?
13              PROSPECTIVE JUROR:  Yes.
14              THE COURT:  Okay.  And you've listed no questions,
15   so you didn't have any information to provide us; is that
16   correct?
17              PROSPECTIVE JUROR:  No.
18              THE COURT:  Okay.  No, you didn't have --
19              PROSPECTIVE JUROR:  I didn't have information.
20              THE COURT:  Okay.  All right.
21              Mr. Keller, anything?
22              MR. KELLER:  No, Your Honor.
23              THE COURT:  Mr. Kenner?
24              MR. KENNER:  Yes, Your Honor.  Thank you.
25              How long have you lived in D.C.?
```

1          PROSPECTIVE JUROR:  My whole life, so 24 years.

2          THE COURT:  Can you pull the microphone just a

3   little closer?  That's it.  Perfect.

4          MR. KENNER:  Have you ever been on a -- withdraw

5   that.

6          Are you a member of any political organizations?

7          PROSPECTIVE JUROR:  No, I'm not.

8          THE COURT:  That's -- I excluded those questions,

9   Mr. Kenner.  Please do not put them in.

10          MR. KENNER:  I apologize.

11          Have you ever had an opportunity to discuss criminal

12   justice issues with anyone?

13          PROSPECTIVE JUROR:  No.

14          MR. KENNER:  Do you have a general view of your own

15   about the effectiveness of the jury system?

16          PROSPECTIVE JUROR:  Can you repeat that?

17          MR. KENNER:  Yeah --

18          THE COURT:  Have you been a juror before?

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  Okay.  So he obviously isn't going to

21   have any comments because he hasn't had the experience.

22          MR. KENNER:  Okay.  I have nothing further.

23          THE COURT:  All right.  You can step down.  If

24   you'll go that way.  Thank you.

25          (Juror left the courtroom.)

1           THE COURT:  Please don't bring up questions that I

2   excluded.  This is not a political case, don't make it one.

3           MR. KENNER:  I apologize.

4           THE COURT:  I'm assuming nobody has any reason to

5   excuse?  Everybody's shaking their head no, so we're keeping

6   him.

7           (Juror entered the courtroom.)

8           THE COURT:  Take your time, don't rush.  Please come

9   through here.  And if you'd step up over here next to me.

10  Just come around over here.  Step up and go ahead and sit

11  down.  You can take your mask off, just so that we can hear

12  you.

13          All right.  This is juror No. 0237.  And she's not

14  listed any questions.

15          So I take it you had no information to provide us;

16  is that accurate?

17          PROSPECTIVE JUROR:  That's correct.

18          THE COURT:  Okay.  Any questions, Mr. Keller?

19          MR. KELLER:  Just a couple on your employment.  What

20  does DJS Consulting Group do?

21          PROSPECTIVE JUROR:  We are contractors to the

22  federal government on government contracts.  I do contract

23  close-outs.

24          MR. KELLER:  What kind of services does DJS provide

25  the federal government?

1          PROSPECTIVE JUROR:  Contract close-outs.

2          MR. KELLER:  I'm just -- I'm not familiar, I'm

3     sorry, can you I guess just explain a little bit what that

4     means?

5          PROSPECTIVE JUROR:  Any contracts that the

6     government has with other companies, we come in and we provide

7     the service and make sure that all services were provided and

8     that the vendor was paid in full and then we're able to close

9     out the contract.  So if all services were not provided and

10    they didn't invoice, we initiate that function, whatever it

11    takes, to get to the point where we can close the contracts.

12         MR. KELLER:  Okay.  Understood.  Thank you.

13         Do you -- are there particular government agencies

14    that you work more with than others, or are there particular

15    government agencies that you work frequently with?

16         PROSPECTIVE JUROR:  No.  I've been doing contract

17    close-outs since 2006, just to give you my background, and

18    I've worked at different companies, not necessarily DJS the

19    whole time.  But I have worked at different agencies.  I've

20    worked at -- I've worked at Department of Transportation, I've

21    worked at Department of Health and Human Services.  I actually

22    began my contract at Department of Homeland Security.

23         So it depends, depends on who I'm working for at the

24    time and what contract, you know, they're trying to fulfill.

25         THE COURT:  So do you monitor -- in essence, monitor

1    these contracts and make sure that the terms of the contracts

2    are fulfilled?  Is that what your company does?

3              PROSPECTIVE JUROR:  Yes, ma'am.  And we make sure

4    that all invoices have been submitted and the vendor has been

5    paid in full.  If there's any issues and we, you know, try to

6    negotiate between whatever agency and that particular vendor

7    to get to the point where the contract can be closed.

8              THE COURT:  Who is your client, the government

9    agency or the company that's providing the services?

10             PROSPECTIVE JUROR:  My client is -- right now I'm

11   working for Department of Homeland Security.  My employer is

12   DJS Consulting.

13             THE COURT:  Okay.  All right.

14             MR. KELLER:  And just using the current -- the

15   current client, DHS, as an example, do you know what the

16   vendor was doing on the contract that you're working on the

17   close-out for?  Do you know what services the vendor was

18   providing?

19             PROSPECTIVE JUROR:  Well, there's several vendors

20   that I'm closing contracts for.  I'm not closing them -- one

21   particular contract.  I'm closing whatever Department of

22   Homeland Security wants to be -- whatever contract that

23   they've had that has expired.

24             MR. KELLER:  And do you get exposure to the services

25   then, that the vendor was providing as part of your work?

1          PROSPECTIVE JUROR:  Only by way of reviewing their

2     file, you know, to make sure.

3          MR. KELLER:  And has some of that work included law

4     enforcement work or work related to law enforcement or

5     criminal investigations?

6          PROSPECTIVE JUROR:  No, I have not had -- it hasn't

7     been my experience.

8          MR. KELLER:  Okay.  Thank you.

9          THE COURT:  Mr. Kenner.

10          MR. KENNER:  Thank you, Your Honor.

11          Do you audit the contracts?  Would that be a correct

12     term, do you audit the contracts?

13          PROSPECTIVE JUROR:  Sometimes, yes.

14          MR. KENNER:  And what do you do when you audit a

15     contract?

16          PROSPECTIVE JUROR:  Basically -- well, some of them

17     have been -- I haven't done it recently, but some in the past

18     have been cost-plus fixed fee contracts.  So in auditing, we

19     just make sure, as I say, that the vendor is paid and that

20     they're paid the correct amount.  If not, then we kind of put

21     it -- let me see if I can explain.  If they haven't been paid,

22     we make sure that they submit final invoices to whomever I'm

23     working for, so that they can get paid.  We try to reconcile

24     and make sure that they get paid the accurate amount for the

25     services they performed.

1          MR. KENNER:  So you essentially are in a position

2    where you make decisions about whether or not contracts have

3    been properly performed and whether people have been paid?

4          PROSPECTIVE JUROR:  I don't necessarily -- I don't

5    want to say I make decisions.  I give the information that --

6    in my findings to whomever, whatever agency I'm working for,

7    and if they determine that, you know, the contract hasn't been

8    fulfilled, then we can't close it.  So I'm not in that

9    position.  I just try to make sure that all the services are

10   providing and they've been paid.

11         MR. KENNER:  Okay.  So have you ever -- do you ever

12   get involved with the question of whether or not there is any

13   fraud involved in contracts?

14         PROSPECTIVE JUROR:  No, sir.

15         MR. KENNER:  So you don't look at what they say they

16   provided against what they did provide?

17         PROSPECTIVE JUROR:  I don't -- no, I just present

18   the information to whomever, whatever agency, and they make

19   final determinations.

20         MR. KENNER:  Okay.

21         THE COURT:  So they would decide whether the vendor

22   has actually provided the services.

23         PROSPECTIVE JUROR:  Exactly.  I'm just kind of the

24   go-between between the two of them.  The vendor can tell me,

25   well, yes, I provided the services, but then if DHS tells me,

1  well, no, they haven't performed it to our satisfaction, then

2  I'm not able to close the contract.  I give it back to DHS.

3          MR. KENNER:  Does the person from DHS give you

4  instructions as to what else they want you to look at for them

5  to be able to --

6          PROSPECTIVE JUROR:  If they're not satisfied with

7  the vendor's performance, I'm not involved with it anymore.  I

8  just strictly do close-outs.

9          MR. KENNER:  How long have you lived in D.C.?

10          PROSPECTIVE JUROR:  Pretty much all my life.

11          MR. KENNER:  Can you tell me something -- this seems

12  like a very detailed kind of job.  Can you tell me something

13  about your education?

14          PROSPECTIVE JUROR:  Well, I'm high school graduate.

15  I don't really have any college per se.  I just have kind of

16  on-the-job experience as far as contract close-outs.

17          MR. KENNER:  Okay.  Do you have any background in

18  accounting?

19          PROSPECTIVE JUROR:  No.

20          MR. KENNER:  And you don't interface with law

21  enforcement; is that correct?

22          PROSPECTIVE JUROR:  No, I do not.

23          MR. KENNER:  I have nothing further.

24          THE COURT:  All right.  Thank you.  You can step

25  down.  She'll give you further instructions.

1      PROSPECTIVE JUROR:  Okay.  Do I go back to --

2      THE COURT:  She's going to tell you where to go.

3      PROSPECTIVE JUROR:  Okay.  Thank you.

4      (Juror left the courtroom.)

5      MR. KENNER:  Pass for cause, Your Honor.

6      THE COURT:  I assume there's no issue?

7      MR. KENNER:  Pass for cause.

8      THE COURT:  Okay.  I don't have a problem in terms

9  of -- but I excluded some of the questions.  Mr. Kenner, don't

10  bring them up.  Okay?  Maybe in wherever you practice in

11  California they do.  They don't do it here.  And jurors don't

12  like asking -- these questions if they're out of context.  I

13  allowed this one because it was in the context of her

14  training, but in terms of the other ones I've excluded,

15  they're excluded.

16      MR. KENNER:  Okay.

17      THE COURT:  All right.  Let's get the next one.

18      THE CLERK:  So we're keeping --

19      THE COURT:  Yes, I'm sorry.

20      (Juror entered the courtroom.)

21      THE COURT:  If you could come up this way and step

22  up over here.  Just come on over here, next to me.  Yes.  Come

23  on up, sit down.  You can take your mask off.

24      This is juror No. 0739.  And she's listed No. 16.

25      And you can take the mask down.  It's hard to hear

1    you without it.  So No. 16 is whether you or somebody close to

2    you is employed by law enforcement agency.

3                   PROSPECTIVE JUROR:  Yes.

4                   THE COURT:  So is that you or somebody else?

5                   PROSPECTIVE JUROR:  My daughter.

6                   THE COURT:  All right.  And what law enforcement

7    agency is she employed by?

8                   PROSPECTIVE JUROR:  She works at D.C. jail.

9                   THE COURT:  So she's a correctional officer?

10                   PROSPECTIVE JUROR:  Yes.

11                   THE COURT:  You have to say something.

12                   PROSPECTIVE JUROR:  Oh, yes, she's a correctional

13    officer.

14                   THE COURT:  So she's a correctional officer at the

15    D.C. jail.  How long has she worked at that?

16                   PROSPECTIVE JUROR:  I think around eight years, if

17    I'm sure.

18                   THE COURT:  And she's still employed there now?

19                   PROSPECTIVE JUROR:  Yes.

20                   THE COURT:  Okay.  And before that, did she do other

21    law enforcement jobs, or is this the only one?

22                   PROSPECTIVE JUROR:  No, I think that's the only

23    one.

24                   THE COURT:  All right.  Do you have discussions with

25    her about, you know, who the defendants or people that are

1    locked up, or --

2                PROSPECTIVE JUROR:  I don't.

3                THE COURT:  You don't, okay.

4                PROSPECTIVE JUROR:  No.

5                THE COURT:  All right.  Mr. Keller.

6                MR. KELLER:  Has your daughter discussed with you

7    her thoughts about the correctional facility or about

8    corrections generally?

9                PROSPECTIVE JUROR:  No.

10               MR. KELLER:  I see that you currently work as a home

11   health aid?

12               PROSPECTIVE JUROR:  I do.

13               MR. KELLER:  How long have you been doing that line

14   of work?

15               PROSPECTIVE JUROR:  Around 15 years.

16               MR. KELLER:  And has that all been here in D.C.?

17               PROSPECTIVE JUROR:  Yes -- no, I'm sorry, Maryland

18   too.

19               MR. KELLER:  Through your daughter, turning back to

20   her job for a moment, have you gotten to know or do you

21   socialize with any of her coworkers?

22               PROSPECTIVE JUROR:  No.

23               MR. KELLER:  No further questions, Your Honor.

24               THE COURT:  Mr. Kenner.

25               MR. KENNER:  Thank you, Your Honor.

```
1                Is your daughter a correctional officer in a federal
2       or a state facility?
3                PROSPECTIVE JUROR:  D.C. jail.
4                THE COURT:  D.C. jail is the local facility,
5       although it does have a federal component in the sense that
6       the U.S. Marshals Service for district court can place people
7       there.
8                MR. KENNER:  Thank you.
9                Thank you.  In your job as a home health worker, do
10      you do individuals on a long-term basis, or do you go to
11      different people all the time?
12               PROSPECTIVE JUROR:  No, I have one client.
13               MR. KENNER:  Okay.  You have one client at a time?
14               PROSPECTIVE JUROR:  Uh-huh.
15               MR. KENNER:  And may I ask you what the occupation
16      when your client was working was?
17               THE COURT:  That's not an appropriate question.
18      There's a privacy interest in terms of who her client is about
19      health care.
20               MR. KENNER:  Thank you.
21               Do you have any notion about what the presumption of
22      innocence is?
23               PROSPECTIVE JUROR:  I know what innocence is.
24               MR. KENNER:  Do you know what a presumption of
25      innocence means?
```

1          PROSPECTIVE JUROR:  What is presumptions?

2          THE COURT:  Have you been a juror before?

3          PROSPECTIVE JUROR:  No.

4          THE COURT:  All right.  So in terms of asking her

5    jury instructions, I think isn't going to be appropriate.

6          MR. KENNER:  Let me ask this way then, do you

7    believe that if somebody is brought to trial that they're

8    guilty?

9          PROSPECTIVE JUROR:  No.

10          MR. KENNER:  Do you have any notion that a person

11    charged with a crime has to prove that they're innocent?

12          PROSPECTIVE JUROR:  Yes, they do.

13          THE COURT:  You're asking her questions when she has

14    not been a juror about what instructions would be provided.

15    So I don't think any of the questions that require her to know

16    what the jury instructions are, or to have been involved in a

17    criminal trial in some way.  And she hasn't put that down.  So

18    I don't think it's an appropriate question to ask.

19          MR. KENNER:  Nothing further.

20          THE COURT:  All right.  You can step down, and we'll

21    give you -- you know, we'll give you further instructions.

22          PROSPECTIVE JUROR:  Thank you.

23          (Juror left the courtroom.)

24          THE COURT:  Mr. Kenner, if people have not been

25    jurors or have been in trials or answered anything that would

1    suggest they would know this, you're asking them something

2    that they know nothing about.  And it's basically a jury

3    instruction.

4          So she answered the question that was important,

5    which was if you're brought -- if you're brought to trial,

6    does that mean you're guilty.  And she said no.  That's your

7    answer.  That, I think, is an appropriate question.

8          The questions you've asked her about trying to get

9    around whether she knows the presumption of innocence or

10   reasonable doubt, I mean, beyond a reasonable doubt, there's

11   several versions of it that are at issue here in D.C.  So I

12   mean, it's not an appropriate question, and I prefer that we

13   not waste time on it.  Okay.

14         MR. KENNER:  Respectfully, Your Honor, I didn't ask

15   about reasonable doubt.

16         THE COURT:  No, you asked somebody else.  I'm

17   bringing all of these up.  Okay?  You asked somebody else

18   about reasonable doubt and I stopped you.  I prefer not to be

19   in the position of stopping you from asking questions.

20         Don't get into the questions of jury instructions

21   when they have not been a juror, have had nothing to do with

22   trials or anything else.  Your question, which I thought was

23   appropriate, is whether she thinks they're guilty if they're

24   brought to trial.  And her answer was no.

25         So that is an appropriate question.  The rest of

1     them are not.  And I prefer not to be constantly saying to you

2     it's not an appropriate question.  All right.  That's what I'm

3     getting at.

4          MR. KENNER:  Your Honor, just so that I understand,

5     you're -- you don't believe that a person's perception

6     about --

7          THE COURT:  If they don't have any -- if they have

8     had nothing -- and we have no information from her that would

9     suggest that she would know particularly one way or another

10    about a presumption of innocence.  Innocence she understands.

11    Presumption of innocence, that is something that you provide

12    an instruction about.  Okay.

13          If you don't have -- she gave no answer that would

14    suggest she's had any contact such that she would know what

15    that is.  And it is a jury instruction that one does apart

16    from being the law.  All right.

17          So it's not an appropriate -- I told you the

18    question I thought was appropriate, is to make sure she hasn't

19    already decided he's guilty just by bringing him to trial.

20          MR. KENNER:  Thank you, Your Honor.

21          THE COURT:  All right.  Let's get to the next -- so

22    is anybody objecting to this one?  Any objection?

23          MR. KENNER:  I do object --

24          THE COURT:  Okay.  What's the basis?

25          MR. KENNER:  I asked her because she said she

1    thought a defendant had to prove their innocence.  I don't

2    think that --

3              THE COURT:  Well, I think in terms of -- she doesn't

4    know what a presumption of innocence is.  I -- you know, if

5    you want to ask some further questions we can.  But what

6    you're getting into is trying to find out and trying to

7    instruct them, to some degree, in terms of the instructions.

8    And it's not appropriate.

9              What she did say was that if you are brought to

10   trial that you are not -- you're not guilty.  So she hasn't

11   started off with that.

12             I agree with you that that was not, you know, an

13   answer in terms of proving.  She's going to be told that you

14   do not have a burden.

15             So what's the government's position?

16             MR. KELLER:  Your Honor, we would oppose the motion

17   to strike, although we would be fine bringing the witness back

18   in just to ask if she could follow the instructions of the

19   Court.

20             THE COURT:  All right.  Let's bring her back in.

21             (Juror entered the courtroom.)

22             THE COURT:  Thank you.  If you could take your mask

23   off.

24             This is again 0739.

25             I have one additional question.  That is, you're

1    going to be instructed that the defendant is presumed

2    innocent, that he has no burden to prove that he's not guilty.

3    The government has the burden at all times to prove that he's

4    guilty beyond a reasonable doubt.

5              So I want to make sure that you understand and would

6    follow my instructions that the defendant doesn't have to

7    have -- he doesn't have any burden to prove his innocence.

8    The government is the one that has the burden to prove him

9    guilty beyond a reasonable doubt.

10             Do you understand what I'm saying?

11             PROSPECTIVE JUROR:  I understand that a person is

12   guilty -- I mean, not guilty until -- guilty until proven

13   innocent.  So something like that?

14             THE COURT:  No.  What I'm saying is the person is

15   not guilty.

16             PROSPECTIVE JUROR:  Yeah.

17             THE COURT:  Okay?  Presumed innocent.  I think we're

18   having trouble hearing you.

19             PROSPECTIVE JUROR:  Okay.

20             THE COURT:  They come to trial, okay.  As you've

21   indicated, the fact that they've come to trial doesn't mean

22   they're guilty.  They are presumed innocent.

23             PROSPECTIVE JUROR:  Until proven guilty.

24             THE COURT:  Until the government proves that they're

25   guilty beyond a reasonable doubt.

```
1                PROSPECTIVE JUROR:  Uh-huh.

2                THE COURT:  And the defendant doesn't have a burden,

3       doesn't have to prove anything.  Doesn't have to present any

4       evidence, doesn't have to testify or do anything.  So I want

5       to make sure you understand that they do not have a burden,

6       the government does.

7                PROSPECTIVE JUROR:  I --

8                THE COURT:  Do you understand that?

9                PROSPECTIVE JUROR:  Yes, ma'am.

10               THE COURT:  Would you be able to follow that

11      instruction?

12               PROSPECTIVE JUROR:  Yes, ma'am.

13               THE COURT:  All right.  Do you want to do -- anybody

14      any follow-up?

15               MR. KENNER:  No, Your Honor.

16               THE COURT:  Okay.  I want to make sure you

17      understand.  That's really important.

18               PROSPECTIVE JUROR:  I understand.

19               THE COURT:  So when I give the instruction, listen

20      carefully to it.

21               PROSPECTIVE JUROR:  Yes, ma'am.

22               THE COURT:  Okay?  Thank you.

23               PROSPECTIVE JUROR:  Thank you.

24               (Jury left the courtroom.)

25               THE COURT:  Okay.  Let's get the next one.
```

1          (Juror entered the courtroom.)

2          THE COURT:  If you could step up over here, please.

3    Go ahead and sit down and make yourself comfortable.  You can

4    take your mask down so we can hear you.  You need to speak

5    into the microphone, okay?

6          So this is juror No. 0463, and she has written 1, 4,

7    18, 26, 27, and 36.

8          So let me ask.  Number 1 is -- so question No. 1 is

9    Mr. Michel, the defendant, has been charged in what we call an

10   indictment.  And I've indicated it's the formal way of letting

11   a defendant know about the charges against them.  And you're

12   not to consider the indictment as an indication of guilt or

13   infer in any way that he's guilty based on the fact that there

14   is an indictment.  All right.  And the defendant's presumed

15   innocent.  That presumption remains with him throughout the

16   trial.  He doesn't have any burden of proving it.  He doesn't

17   have to produce any evidence or anything else.

18         Now, those principles of law I set out, and I asked

19   is there anyone who believes that they would be unable to

20   follow those principles of law if they were selected as a

21   juror in this trial, and you have indicated No. 4.  So is

22   there -- is it your view that you would not be able to follow

23   those instructions?

24         PROSPECTIVE JUROR:  I mailed in my questionnaire to

25   be excused because my son is incarcerated.

1          THE COURT:  You have to talk into the microphone.

2          PROSPECTIVE JUROR:  I said I entered my request

3    form.  I mailed it in to be excused because my son has been

4    incarcerated for five years, and I haven't seen him in five

5    years.  And I have a letter right here where he's located at,

6    and I would like to be excused because I don't want to

7    participate in it.

8          THE COURT:  So from your perspective, based on

9    what's happened with your son, you feel that -- because you've

10   also done 4, which is if you've heard the evidence, the

11   arguments, if you then have a reasonable doubt as to the

12   defendant's guilt, it would be your duty to vote not guilty,

13   and you wrote that down.  Were you indicating you couldn't

14   carry out that responsibility?

15         PROSPECTIVE JUROR:  Yeah.  Yes.

16         THE COURT:  You wouldn't be able to find somebody

17   not guilty?

18         PROSPECTIVE JUROR:  Well, I wouldn't say as far as

19   not guilty.  I just don't want to -- I just don't want to be a

20   jury, that's all.

21         THE COURT:  Okay.  The reason for not wanting to be

22   a jury is what's happened to your son?

23         PROSPECTIVE JUROR:  Yeah, because it's been going --

24   we been through a lot right now, operation, surgery.  He's

25   sick.  And I can't see him in five years.  So I mean, I

1    don't -- I have enough already going on with me and my family

2    right now, so I'm sorry, I don't want to be a jury.  That's

3    all I have to say.

4            THE COURT:  All right.  Anybody want to go any

5    further?

6            MR. KENNER:  No, Your Honor.

7            THE COURT:  All right.  I can ask you to go ahead

8    and step down.  Thank you.

9            (Juror left the courtroom.)

10           MR. KELLER:  Your Honor, the government would move

11   to strike for cause.

12           THE COURT:  Any objection?

13           MR. KENNER:  No, Your Honor.

14           THE COURT:  All right.  Then I'll strike 0463 for

15   cause.

16           If we can have the next juror.

17           (Jury entered the courtroom.)

18           THE COURT:  If you would step up over here, please.

19   If you would step up and go ahead and sit down.  And make

20   yourself comfortable.  You can take your mask down so we can

21   hear what your answer is.  And you need to speak into the

22   microphone.

23           PROSPECTIVE JUROR:  Okay.

24           THE COURT:  This is juror No. 0722.  And it's

25   question 16 and 18.

```
1                  So 16 is whether you or somebody close to you is
2       working for law enforcement.  So is that you or somebody else?
3                  PROSPECTIVE JUROR:  Yes.  My cousin.
4                  THE COURT:  Can I ask you to speak up into the
5       microphone.  They all need to be able to hear you.
6                  PROSPECTIVE JUROR:  My cousin.
7                  THE COURT:  Okay.  Your cousin?
8                  PROSPECTIVE JUROR:  Yes.
9                  THE COURT:  And what law enforcement agency does
10      your cousin work for?
11                 PROSPECTIVE JUROR:  Police department.
12                 THE COURT:  Can I ask you to speak up a little bit
13      more?  Speak as if somebody's standing at the back door.
14                 PROSPECTIVE JUROR:  Police department.
15                 THE COURT:  Is that the D.C. Police Department --
16                 PROSPECTIVE JUROR:  Yes.
17                 THE COURT:  -- or another one?
18                 PROSPECTIVE JUROR:  Yes.
19                 THE COURT:  D.C.  Okay.  And do you know where your
20      cousin is assigned in the police department?
21                 PROSPECTIVE JUROR:  Ward 5, maybe.
22                 THE COURT:  Okay.  Is he street patrol, or he has
23      particular areas, subjects that he is involved in?
24                 PROSPECTIVE JUROR:  From time to time.
25                 THE COURT:  I'm sorry?
```

1          PROSPECTIVE JUROR:  From time to time, maybe.

2          THE COURT:  Okay.  And what -- do you know what his

3    assignments are within Ward 5?

4          PROSPECTIVE JUROR:  No, that's -- I know that he's a

5    police officer, that's it.

6          THE COURT:  Okay.  Do you have -- has he ever lived

7    in your household with you?

8          PROSPECTIVE JUROR:  No.

9          THE COURT:  Okay.  And have you ever discussed your

10    cousin's work with him?  Has he talked with you about what he

11    does as a police officer or some of his things?

12          PROSPECTIVE JUROR:  No, not really.

13          THE COURT:  Okay.  Has he discussed anything at all

14    in terms of, you know, what he does or, you know, what's

15    happening in the city in terms of crime or anything else?

16    Does he talk about that at all?

17          PROSPECTIVE JUROR:  No.

18          THE COURT:  No?  Okay.

19          How often do you see your cousin, roughly?

20          PROSPECTIVE JUROR:  Probably three times out the

21    year.

22          THE COURT:  About three times a year?

23          PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Okay.  Now, you didn't put down anything

25    about making a difference whether somebody -- if a police

1    officer took the stand and testified.  Would you be able to

2    treat him like you would any other witness; in other words,

3    not, you know, believe him more or less just because he's a

4    police officer.  Were you able to do that?

5              PROSPECTIVE JUROR:  Yes.

6              THE COURT:  All right.  Number 18 is whether you or

7    somebody close to you had an experience with law enforcement

8    or with someone associated or working with the U.S. Attorney's

9    Office or the Court, which would make it difficult for you to

10   be fair and impartial.  So is that you or somebody else?

11             PROSPECTIVE JUROR:  Somebody else.

12             THE COURT:  I'm sorry?

13             PROSPECTIVE JUROR:  Somebody else in my family.

14             THE COURT:  What relation in your family?

15             PROSPECTIVE JUROR:  My younger -- my youngest

16   cousin.

17             THE COURT:  Your youngest?

18             PROSPECTIVE JUROR:  Yes, he's 18.

19             THE COURT:  Your -- I missed what the -- your

20   youngest cousin, still?

21             PROSPECTIVE JUROR:  No.

22             THE COURT:  Your youngest --

23             PROSPECTIVE JUROR:  I have another cousin.

24             THE COURT:  Oh, okay.  So this is a different

25   cousin?

1        PROSPECTIVE JUROR:  Yes.

2        THE COURT:  Okay.  And what is the experience, the

3   negative experience that they had?  Was it with the U.S.

4   Attorney's Office or law enforcement, the Court, what?

5        PROSPECTIVE JUROR:  Gun possession.

6        MR. KENNER:  I can't hear the witness.

7        THE COURT:  We're having trouble hearing you.

8        PROSPECTIVE JUROR:  Gun possession.

9        THE COURT:  Okay.  So was your cousin arrested or

10  something with gun possession charges?

11       PROSPECTIVE JUROR:  Yes.

12       THE COURT:  And is that case still pending, or is

13  that finished?

14       PROSPECTIVE JUROR:  Still pending.

15       THE COURT:  So is -- so your cousin has a pending

16  case about gun possession.  In this court or in the local

17  court, do you know?

18       PROSPECTIVE JUROR:  Somewhere else, in like

19  Maryland.

20       THE COURT:  Oh, in Maryland, okay.  All right.  And

21  what -- based on the fact that your cousin has a pending

22  charge, is that why you think it would be difficult for you to

23  be a juror in this case?

24       PROSPECTIVE JUROR:  Yes, I think so.

25       THE COURT:  Okay.  Is -- can you explain to me why

1    you're concerned about being a juror in this case because of

2    your cousin's case?

3              PROSPECTIVE JUROR:  I don't know.  I really don't

4    know, like --

5              MR. KENNER:  Can't hear, Your Honor.

6              THE COURT:  Yeah, you need to speak into microphone.

7              PROSPECTIVE JUROR:  I'm sorry, but my -- I'm sorry,

8    my cousin's case is really hard on me, so I don't want to get

9    involved in something that's major like this.  Is this a major

10   case?

11             THE COURT:  Okay.  So is -- are you close to this

12   cousin, the one who's been charged?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Is it somebody that's lived in your

15   household?

16             PROSPECTIVE JUROR:  A few times, maybe.

17             THE COURT:  Okay.  Do you know anything about the

18   case of your cousin?

19             PROSPECTIVE JUROR:  Um --

20             THE COURT:  Or you just know the charge?

21             PROSPECTIVE JUROR:  Yeah, like gun possession,

22   robbery, and stuff like that.

23             THE COURT:  Okay.  And is the case going to go to

24   trial, or do you not know?

25             PROSPECTIVE JUROR:  They still gathering the

1    evidence.

2            MR. KENNER:  I can't hear what he's saying.

3            PROSPECTIVE JUROR:  They still gathering evidence

4    right now.

5            THE COURT:  Okay.  Is he still in the community, or

6    has he been locked up?

7            PROSPECTIVE JUROR:  He's locked up right now.

8            THE COURT:  Do you know anything about the case?

9    You know, you'd have to know it from your cousin.  Has your

10   cousin talked to you about the case?

11           PROSPECTIVE JUROR:  No, he's still locked up.

12           THE COURT:  Okay.  But as I understand it, you're --

13   you basically because of what's happened to your cousin, you

14   don't want to get involved in this case; is that correct?

15           PROSPECTIVE JUROR:  Yes.

16           THE COURT:  If you got selected, do you think you

17   could be fair and impartial, or are you worried about your

18   cousin's case?

19           PROSPECTIVE JUROR:  I'm worried about my cousin's

20   case more.

21           THE COURT:  All right.  Any questions?

22           MR. KENNER:  No.

23           THE COURT:  All right.  Thank you.  You can step

24   down, sir.

25           (Juror left the courtroom.)

```
 1              MR. KELLER:  Government moves to strike, Your
 2    Honor.
 3              THE COURT:  Any objection?
 4              MR. KENNER:  No, Your Honor.
 5              THE COURT:  All right.  Then I'll strike 0722.
 6              (Jury entered the courtroom.)
 7              THE COURT:  All right.  If you would step up over
 8    here.  Just come up next to me.  If you would step up.
 9              PROSPECTIVE JUROR:  Sure.
10              THE COURT:  And go ahead and make yourself
11    comfortable.  You can take your mask down so we can hear
12    you.
13              PROSPECTIVE JUROR:  Okay.
14              THE COURT:  I need to have you really speak loudly
15    into the microphone.
16              PROSPECTIVE JUROR:  Okay.
17              THE COURT:  Okay.  If I understand this correctly,
18    you have -- if I could give this back to you for a second and
19    have you -- I want to make sure I have the right numbers.
20              PROSPECTIVE JUROR:  Sure.
21              THE COURT:  Looks like 14?
22              PROSPECTIVE JUROR:  14, 15, 18, 20, 22, 29, 35, 36,
23    42.
24              THE COURT:  Okay.  If you can hand that back to her
25    and she'll give it to me.
```

1           So we'll start with question 14, which was the

2    defense witnesses that were introduced.  Assuming that he

3    decides to put on a defense; he isn't required to.  And one of

4    the things is whether you know witnesses personally or you

5    know them in some other way, reputation or some other way, and

6    whether that -- whether it's personal or whether it's by

7    reputation or some other means that you know them, whether

8    that would affect your fairness and impartiality as a juror.

9    So are there witnesses that you know personally?

10          PROSPECTIVE JUROR:  No.  I don't know anyone

11   personally.  To be honest, it was more like political bias

12   based on like political beliefs or things that I've come

13   across or seen when I heard certain names and I was like,

14   okay, if I'm kind of like feeling like a twinge when I hear

15   someone's name, I just wanted to be honest about that.

16          THE COURT:  Okay.  So what I have here is --

17          PROSPECTIVE JUROR:  I'm sorry, I shouldn't have

18   wrote notes.

19          THE COURT:  It's okay.  I have Bannon, Sessions.

20          PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Ivanka Trump, *Wolf of Wall Street*?

22          PROSPECTIVE JUROR:  Yeah, I'm sorry, I was just

23   taking --

24          THE COURT:  That's okay.

25          PROSPECTIVE JUROR:  I was jotting things down as I

1    was hearing them.  Yes, I mean, to be honest, I'm just, like I

2    said, whether -- like my husband's an attorney.  We just talk

3    a lot, like a lot of D.C. households.  We're just a political

4    household.  And things like that, especially with the recent

5    Trump administration and the news come up often, so it's

6    disgust.

7              THE COURT:  Okay.  So the question we have is,

8    obviously having heard all of this, whatever the source is, is

9    that going to -- is that going to affect your fairness and

10   impartiality in the case if you were selected?

11             PROSPECTIVE JUROR:  I hope not.  It's hard to know

12   like exactly without it happening.  But I mean, I'm -- like

13   things stand out to me.  For example, with Mr. Giuliani,

14   watching -- I'm sorry, the new -- the newer -- he was in a

15   movie.  It was -- oh gosh, I'm sorry.  Borat, yes.  I had a

16   really bad taste in my mouth after seeing Mr. Giuliani in that

17   movie, like that's just my associations.  I will of course do

18   my best to listen to any witnesses and not be biased, but I

19   want to be honest about just the names and the -- what comes

20   the mind.

21             THE COURT:  Okay.  So let's assume that you do have

22   some, you know, reactions to these people.

23             PROSPECTIVE JUROR:  Sure.

24             THE COURT:  The question -- you know, I take it you

25   haven't been a juror before?

```
1          PROSPECTIVE JUROR:  I have not.

2          THE COURT:  Okay.  Have you, in other aspects of

3    your life, had to put aside your views and be --

4          PROSPECTIVE JUROR:  Absolutely.

5          THE COURT:  -- apolitical, et cetera?

6          PROSPECTIVE JUROR:  Absolutely.  Yes.

7          THE COURT:  And what kinds of experiences have you

8    had to do that with, work or something else?

9          PROSPECTIVE JUROR:  Oh, absolutely.  Working with

10   people that you don't necessarily get along with or have

11   different views with or having and conversations with friends

12   with different political views, absolutely.

13         THE COURT:  So I'm getting to my question as to

14   whether you think you can put them aside or not.  In other

15   words, you're appearing to have some negative views about

16   these people.  Would that be the limbs under which you would

17   listen to the evidence, or would you be able to put them

18   aside?

19         PROSPECTIVE JUROR:  I think I could listen to the

20   evidence, fairly.

21         THE COURT:  Can you put aside the -- your negative

22   views about some of these people?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  The next one is -- 15 is testimony from

25   law enforcement officers.  And again, we want you to treat
```

1      them as you would anybody else.  So you wouldn't have decided

2      they're going to be truthful or not truthful before they said

3      anything, you'd listen and come to your own credibility.

4      You've put it down, which would seem to raise a question about

5      whether you would be able to do that.  Do you have a concern?

6              PROSPECTIVE JUROR:  I might have misunderstood at

7      the time.  I apologize.  I haven't always had the best

8      experiences with law enforcement in my community.  But I think

9      it's very similar in terms of not making a decision before I

10     hear things or trying not to go into that with bias.

11             THE COURT:  Okay.  So the question is really in

12     terms of your decisions about the credibility.  What we want

13     to do is have you treat them like anybody else.  In other

14     words, you wait to hear their testimony and make a decision

15     about their credibility, as opposed to deciding before they

16     say anything they're more credible or less credible than

17     anybody else.  So can you treat them like you would anybody

18     else and make no decisions about their credibility before you

19     hear their testimony?

20             PROSPECTIVE JUROR:  I believe so.  Yes.

21             THE COURT:  All right.  Okay.  18 is whether you or

22     somebody close to you has had an experience either with law

23     enforcement, somebody with the U.S. Attorney's Office or the

24     court, which would make it difficult for you to be fair and

25     impartial in this case.  So is that you or somebody else?

1          PROSPECTIVE JUROR:  You know what, I think maybe I

2     recorded that incorrectly.  I apologize.  I don't -- I

3     don't -- I don't know anyone or have any experiences with

4     that.  I apologize that that's on there.

5          THE COURT:  Okay.  So there hasn't been an

6     experience either with law enforcement or the U.S. Attorney's

7     Office or the court, which would present a difficulty to you

8     to be fair and impartial; is that correct?

9          PROSPECTIVE JUROR:  Oh, I'm sorry, I -- so with me

10     having a law enforcement experience about nine years ago, my

11     car got broken into.  And that person was put on trial, and I

12     was asked to show up just to testify what happened.  And I was

13     assured by law enforcement that I would feel safe, but the

14     person that was, in fact, on trial was very angry with me, and

15     it was just a very scary experience.  I didn't feel safe.  So

16     I don't think that that was necessarily the law enforcement,

17     like that person's fault.  I think that I could still be fair.

18     But I was just trying to rack my brain of any associations.

19     That's probably what I was thinking about.

20          THE COURT:  Okay.  So this is about nine years ago?

21          PROSPECTIVE JUROR:  Yeah.

22          THE COURT:  Was it here in the District of Columbia

23     or someplace else?

24          PROSPECTIVE JUROR:  It was in D.C.

25          THE COURT:  And I take it somebody broke into your

1    car?

2                    PROSPECTIVE JUROR:  Yes.

3                    THE COURT:  And I take it took stuff?

4                    PROSPECTIVE JUROR:  Yes, and got caught in that

5    pursuit by police officers and then went to court.  And I went

6    just to testify of like what was taken out of my car, what

7    time, things like that.

8                    THE COURT:  Okay.  And was that in superior court,

9    the local court or someplace else?

10                   PROSPECTIVE JUROR:  I'm honestly trying to remember.

11   It feels like this building, but I could be wrong.  It was

12   nine years ago.  I'm sorry.

13                   THE COURT:  Okay.  So you were a witness?

14                   PROSPECTIVE JUROR:  Yes.

15                   THE COURT:  And did you watch the whole trial, or

16   did you just testify and then leave the courtroom?

17                   PROSPECTIVE JUROR:  I testified and I left.

18                   THE COURT:  Okay.  And what was the outcome of the

19   case, do you know?  Was it a judge trial or a jury trial?

20                   PROSPECTIVE JUROR:  It was a judge trial.  I don't

21   think that there was the -- that person was not -- there was

22   not consequences or that person was not found to be guilty at

23   that time.

24                   THE COURT:  Okay.  So it was not a -- it wasn't a

25   jury trial?

1              PROSPECTIVE JUROR:  No.

2              THE COURT:  It was a judge trial?

3              PROSPECTIVE JUROR:  Yes.

4              THE COURT:  And the judge determined the evidence

5    was insufficient or whatever and found he was not guilty?

6              PROSPECTIVE JUROR:  Correct.  Yes.

7              THE COURT:  Okay.  Did you feel that you were

8    treated fairly by the system?

9              PROSPECTIVE JUROR:  I felt like there was a lot of

10   menacing and threatening from the person that was on the

11   stand.  And then I ran into him later in the courtroom and

12   just -- I just didn't feel safe.  I don't think that's

13   necessarily anyone's fault.  I guess I just hoped that I would

14   be safer by law enforcement.

15             THE COURT:  Okay.  So part of it is whether you can

16   put aside that experience, all aspects in terms of feeling

17   threatened, in terms of the, you know, the courtroom and the

18   experience just in general of having somebody break into

19   your -- can you put all of that aside and look at this case as

20   something totally separate, or is that going to in some way

21   inform the way you look at things?

22             PROSPECTIVE JUROR:  Again, I think I can, in my

23   mind, put it aside and do my best.  I think that's going to be

24   a lot easier to do than the political beliefs, which again,

25   I'm making every effort to do.  So yes, I think I can.

1          THE COURT:  All right.  So 20 is you or somebody

2   close to you a lawyer, work for a lawyer or studied law.  So

3   is that you or somebody else?

4          PROSPECTIVE JUROR:  My husband is an attorney.

5          THE COURT:  Okay.  And does he work for the

6   government or private?

7          PROSPECTIVE JUROR:  Department of Transportation.

8          THE COURT:  Does he do any kind of litigation?

9          PROSPECTIVE JUROR:  No.

10          THE COURT:  What kind has -- how long has he worked

11   there as an attorney?

12          PROSPECTIVE JUROR:  Ten years?  Almost ten years.

13          THE COURT:  Do you know what -- did he have a job as

14   a lawyer before that?

15          PROSPECTIVE JUROR:  No.  He worked for Senator

16   Durbin.

17          THE COURT:  And then what, went to law school or was

18   in law school?

19          PROSPECTIVE JUROR:  Went to law school, briefly

20   worked for Senator Durbin and then took this job.

21          THE COURT:  Okay.  So at the Department of

22   Transportation, what subject matter area do you know that your

23   husband works on?

24          PROSPECTIVE JUROR:  Employment law.

25          THE COURT:  Okay.  So is that within the -- in terms

1    of the General Counsel's Office, is that where he works in the

2    Department of Transportation?

3             PROSPECTIVE JUROR:  Yes.  I think he works for like

4    hazmat or pipeline.  I'm trying to remember exactly.  I'm

5    sorry.  He does employment law, but I think it's more so in a

6    general counsel role.

7             THE COURT:  Okay.  And have you had discussions with

8    him about, you know, the criminal -- the criminal system or

9    laws and -- anything legal or how trials work or anything of

10   that nature?

11            PROSPECTIVE JUROR:  I mean, we talk about like the

12   news and things like that often.  He hasn't told me -- you

13   know, I think he's very careful to discuss work things with

14   me.  But, I mean, we are a politically active family.

15            THE COURT:  Okay.  So in terms of politically

16   active, what do you do and what does your husband do that you

17   view is politically active?

18            PROSPECTIVE JUROR:  Just donating to causes that we

19   believe in, going to marches or protesting when it feels

20   appropriate, discussing current events together, just things

21   like that.

22            THE COURT:  Okay.  And is there anything about your

23   political discussions, the marches, protests, these other

24   things that you think, having listened to what I described

25   what the case was about in very general terms, that you think

```
1    match up with these political views that you're talking about?
2           PROSPECTIVE JUROR:  Well, and again, to be hon- --
3    I'm just trying to be honest.
4           THE COURT:  That's what we want you to be.
5           PROSPECTIVE JUROR:  This isn't like the proudest
6    thing to admit, but we have had conversations around
7    corruption; for example, around Steve Bannon's actions or
8    advisors or associates of former President Trump.  So we have
9    definitely kind of analyzed things that have happened in the
10   past or tuned in to CNN trials, things like that.  Same with
11   Mr. Sessions and Mr. Giuliani.  So that's why those names kind
12   of stood out to me.  We have had conversations in the past,
13   but I am, like I said, very willing to go forward with as much
14   not bias as someone can have, you know.
15          THE COURT:  Why don't you mention -- what's the
16   latest march or protest you've been involved in?
17          PROSPECTIVE JUROR:  I think the one that really
18   stands out for me is with the change in *Roe v. Wade*, was the
19   most recent.
20          THE COURT:  Okay.  In terms of 21, which is whether
21   you or somebody close to you worked in accounting, forensic
22   accounting, banking or banking regulations.  Is that you or
23   somebody else?
24          PROSPECTIVE JUROR:  In accounting?  I'm so sorry --
25          THE COURT:  I believe you said -- let me make sure
```

1    I've got the right one.  Oh, no, 22.

2              PROSPECTIVE JUROR:  No.

3              THE COURT:  Okay.  Have you or somebody close to you

4    ever worked in campaign fund raising or campaign finance?

5              PROSPECTIVE JUROR:  Yes.  My father-in-law was very

6    closely connected to Bill Clinton's campaign, and he moved

7    here from Chicago to work in that campaign and then he was a

8    lobbyist after that.

9              THE COURT:  Okay.  And anybody else besides your

10   father-in-law?

11             PROSPECTIVE JUROR:  Nope.

12             THE COURT:  Do you know what he did with Clinton's

13   campaign?

14             PROSPECTIVE JUROR:  I really don't.  I'm sorry.  It

15   was when I was still a kid, and he doesn't really talk about

16   it that much.  So I don't know exactly what he was doing, but

17   I know he was on his campaign to support him and support his

18   election.

19             THE COURT:  And did he do anything after in terms of

20   supporting him?

21             PROSPECTIVE JUROR:  I don't know.  It's not

22   something that we talk about often.

23             THE COURT:  Okay.  29 is do you have any strong

24   opinions about money from foreign countries being used to

25   influence the outcome of elections or seek political favors

1    from elected officials in terms of these opinions that would

2    affect your fairness and impartiality in this case.

3              PROSPECTIVE JUROR:  I think that you're asking me

4    these questions now around if I can put aside these -- whether

5    it be political feelings or feelings of credibility from

6    politicians, yes, I think I can put that aside to be fair,

7    yes.

8              THE COURT:  Okay.  Do you -- but do you have those

9    views?

10             PROSPECTIVE JUROR:  I just -- I think that being a

11   long-time resident of D.C., I do feel a little bit jaded by

12   political corruption with money, and just following those

13   stories and trying to understand what's happening.  So -- but

14   I'm not -- I'm not like very well versed, I'll say that.  Like

15   I try to follow the news on a basic level and have

16   conversations and learn, but I wouldn't say I have like very

17   well-articulated views on that specifically.  Maybe I

18   shouldn't have written that number.

19             THE COURT:  Okay.  In terms of 35, which I think is

20   one of the -- is the verdict has to be unanimous.  And the

21   question was whether you would consider the opinions and the

22   points of view of the others but eventually, you know, you'd

23   have to make your own decision.  And the question was whether

24   you'd have any difficulty expressing your own opinions and

25   thoughts about the case to your fellow jurors as well as

1    listening to them.  So do you have some concerns about that?

2              PROSPECTIVE JUROR:  I do.  This is deeply personal

3    to be sharing, but it kind of goes along with question 42.  So

4    I recently had a baby, and I am really struggling with

5    postpartum anxiety and depression.  And I'm on medication for

6    that and seeing a therapist and trying to get better.  And

7    right now I don't quite feel like I'm myself, which is why I

8    asked for a deferment, which I'll get into on 36.  But I have

9    a trouble with high-stress conflict situations.  I think that

10   I would listen to others, but maybe not feel as confident in

11   expressing my own opinions because of the anxiety I'm trying

12   to manage right now.

13             THE COURT:  Okay.  Any other questions?  Should I go

14   further?  There's a couple of others that are left.

15             One is the -- 36, which is the length of the trial,

16   and --

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  In terms of whether there would be any

19   difficulties with it.

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  And 42 is anything else you wanted to

22   bring up.

23             PROSPECTIVE JUROR:  Yes.  Is that okay if I talk

24   about that?

25             THE COURT:  Sure.

1          PROSPECTIVE JUROR:  Okay.  I fully believe in doing

2    my duty as a citizen.  I believe in it, I'm here for it.  I

3    have an 11-month-old son who I am completely responsible for

4    taking care of.  He's actually sick with an ear infection and

5    with a family friend, which causes me a lot of stress right

6    now to not be able to be with him.

7          I don't have child care.  Like I have to take care

8    of him.  So if you select me, I don't know how I can be -- I

9    don't know how I can be a consistent presence.  I really want

10   to do my duty.  I submitted a deferral request six weeks ago.

11   I've been calling the office leaving messages every day to try

12   to learn more.  It never got accepted, but I wanted to show up

13   to be a responsible citizen.  But in terms of having a

14   four-week trial, I don't know how I would even get child care

15   for him the rest of the week.

16        In combination with that, and like I said, being a new

17   mom and having to try to work through depression and

18   postpartum anxiety, I don't think I'm in the mental state to

19   be able to give this my all and really be able to dedicate the

20   full attention that this deserves, which is why I put question

21   42 on there.  I just don't think even if I could physically be

22   here and somehow make that work, I don't think mentally I am

23   in a place to be a fair jury member.  I also brought my son's

24   birth certificate and Social Security if you want to see

25   that.

1          THE COURT:  I take your word for it.

2          PROSPECTIVE JUROR:  I don't mind, I have proof, but

3   I'm really hoping for this -- my mental sanity and the -- and

4   just being able to take care of my baby, that I can defer

5   this.

6          THE COURT:  Any questions?

7          MR. KENNER:  No, Your Honor.

8          THE COURT:  All right.  Then you can step down.

9   Generally, when we do special panels, they send it out to

10  quite a large -- just for your information -- group of people,

11  and people can send in something at the time to be able to be

12  excused later.  It's -- we have a lot of trials going on right

13  now, so I think part of the concern is in terms of trying to

14  get back to people to let them know.  So generally, they've

15  just had people come in.  You present it to the judge and then

16  the judge either excuses you or not.  All right.

17         PROSPECTIVE JUROR:  Okay.

18         THE COURT:  We'll let you know in a minute.

19         PROSPECTIVE JUROR:  Oh, okay.  So sorry.

20         THE COURT:  No problem.

21         (Juror left the courtroom.)

22         MR. KELLER:  No objection to excusing the juror,

23  Your Honor.

24         MR. KENNER:  No objection, Your Honor.

25         THE COURT:  All right.  Then I'll excuse 0704.  I

1    must admit I don't remember her as part of the group that

2    asked to be excused that wasn't excused, but anyway.

3            All right.  Moving on.

4            (Juror entered the courtroom.)

5            THE COURT:  If you would step up over here, please.

6    If you would step up on -- right next to me here, please.

7    Yes, please.  You can sit down and make yourself comfortable.

8    You can take your mask off so we can hear what you're saying.

9    You need to speak into the microphone in a nice loud, clear

10   voice so we make sure we can hear you.

11           This is juror No. 0203, and it's 33 and 37.  Two of

12   them?

13           PROSPECTIVE JUROR:  I'm -- I have pain back pain.

14           THE COURT:  Okay.  I just want to make sure I've got

15   the right questions.  Okay.  Let me start with 37 then.  37 is

16   whether you have any health problems or medication that would

17   make it difficult for you to be on the jury.  And you

18   indicated you have back pain?

19           PROSPECTIVE JUROR:  Yeah, back pain for --

20           THE COURT:  Are you taking any kind of medications?

21           PROSPECTIVE JUROR:  No, no, just starting at

22   night.

23           THE COURT:  So does it create problems for you

24   sitting for any length of time, or how does the back pain

25   create an issue for you?

1          PROSPECTIVE JUROR:  No, I had an accident a long

2    time ago, but this happen when --

3          THE COURT:  Okay.  You need to speak into the

4    microphone so make sure everybody can hear you.

5          So I understand you had an accident some years

6    ago.

7          PROSPECTIVE JUROR:  Yeah, maybe that or when I work

8    hard, when I work too much, when I work -- I mean, plus I told

9    the guy, too, I have a program that with language, can be jury

10   to somebody.  I cannot take responsibility to somebody.

11         THE COURT:  Okay.  So you've raised two issues.

12   What do you do for work?  What do you do?

13         PROSPECTIVE JUROR:  Yeah, I work, I'm working.

14         THE COURT:  What do you do?  What's your job?

15         PROSPECTIVE JUROR:  Taxi driver.

16         THE COURT:  Okay.  So are you indicating that your

17   back pain is such that you don't think you could sit and

18   listen to the jury, to the case?  Is that what you're saying?

19   I'm trying to figure out how the back pain fits in here.

20         PROSPECTIVE JUROR:  Yeah, I can't stay long time,

21   long sitting, you know.

22         THE COURT:  So even if we took some breaks -- have

23   you been a juror before?

24         PROSPECTIVE JUROR:  Yeah, I've been, but this is --

25   it's not like this.  It's very hard very, it's very long time,

```
1    long and then very complicated.  I can't -- I can't
2    understand.  I mean, you -- I mean --
3              THE COURT:  Okay.  So you're indicating you're
4    having some difficulty with the language.  Is that what you're
5    saying?
6              PROSPECTIVE JUROR:  Yeah.  As a juror, I've been in
7    Maryland.  In Maryland, I've been there, but we go and we
8    register and then we stay for a couple hours, then we go back.
9    One time again, somebody, they was working with the criminal
10   case, you know, I was with them.  But I don't know I'm doing
11   what they -- what they say.
12             THE COURT:  Okay.  So you've been a juror in another
13   case in Maryland.  Is that what you're saying?
14             PROSPECTIVE JUROR:  Yeah, Upper Marlboro, yes.
15             THE COURT:  How long ago?
16             PROSPECTIVE JUROR:  Maybe three years, three years
17   ago.
18             THE COURT:  Okay.  And so you were chosen to be on
19   the jury -- is that correct -- in a criminal case, so you
20   listened to the evidence?
21             PROSPECTIVE JUROR:  No, that -- I was present, but
22   they at that time was -- the case was criminal case.
23             THE COURT:  Okay.  The case -- but you were part of
24   the jury; is that correct?
25             PROSPECTIVE JUROR:  I don't understand maybe the
```

1    jury meaning, what you mean.  We were here --

2              THE COURT:  Well, let me just -- okay.  Let me ask,

3    have you ever been in a case where you sat in a jury box like

4    that --

5              PROSPECTIVE JUROR:  Yeah.

6              THE COURT:  -- and you -- the government presented

7    evidence, the defendant may or may not have presented

8    evidence.

9              PROSPECTIVE JUROR:  There was --

10             THE COURT:  And then you listened to the judge give

11    instructions and then you -- 12 of you would have had to

12    decide whether or not the government proved the case beyond a

13    reasonable doubt.  Did you participate in something like that?

14             PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Okay.  And that was a couple years ago

16    in Maryland?

17             PROSPECTIVE JUROR:  Yeah.

18             THE COURT:  Okay.

19             PROSPECTIVE JUROR:  I don't exactly, but maybe three

20    years ago.

21             THE COURT:  And was there something about that

22    experience that you thought would affect your being a juror in

23    this case?  Was there anything about it that would affect if

24    you were chosen in this case?

25             PROSPECTIVE JUROR:  I don't know -- I don't know

```
1    which -- which case.  I can't take responsibility, you know,
2    because -- that you give us instruction before.
3              THE COURT:  Right.
4              PROSPECTIVE JUROR:  Some I understand, some I don't
5    understand, you know, so I can --
6              THE COURT:  So did the -- did the jury -- without
7    telling me what the verdict was, did the jury reach a verdict
8    in your case in Maryland?
9              PROSPECTIVE JUROR:  Huh?
10             THE COURT:  Did they reach a verdict in your case in
11   Maryland?
12             PROSPECTIVE JUROR:  My case?
13             THE COURT:  In the case where you were a juror.
14             PROSPECTIVE JUROR:  Uh-huh.
15             THE COURT:  Did they reach a verdict, you as one of
16   the jurors and the other jurors?
17             PROSPECTIVE JUROR:  Yeah, I was with some group
18   people over there, we go back --
19             THE COURT:  Right.
20             PROSPECTIVE JUROR:  -- the Court and then we -- I
21   mean, we --
22             THE COURT:  You talk about it.
23             PROSPECTIVE JUROR:  We talking about, we discussing
24   about it.  After that, the judge -- we come here, we -- we
25   decide what we decide, what we say.
```

1          THE COURT:  Okay.  So you came back with a verdict.

2    So you were obviously able to reach a verdict, you as a

3    members of the jury; is that correct?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  Okay.  So what would be different in

6    this case from that case?  You evidently were chosen, you

7    listened to the evidence, the judge gave you the law, you went

8    back and had a discussion with your fellow jurors, and you

9    came back with a verdict and that was announced.  So is there

10   something different with this case?

11         PROSPECTIVE JUROR:  No, I will -- I -- I don't know

12   for what case I am present in here.

13         THE COURT:  Well, I've -- you know, it's a criminal

14   case, and you'll hear about it.  We gave you a little bit of

15   information as an introduction.

16         PROSPECTIVE JUROR:  Yeah, I --

17         THE COURT:  But the government will present its case

18   and then you'll hear what the case is about.

19         PROSPECTIVE JUROR:  I hear, but -- yeah, I'm not --

20   I'm not satisfied -- I'm not satisfied to say something if I

21   don't got interpreter.  And it's better for me, I know to

22   better understand, yes.  So for criminal case, where I'm here

23   right now.

24         THE COURT:  Okay.  Any questions, Mr. Kenner?

25         MR. KENNER:  No, Your Honor.

```
 1              THE COURT:  All right.  You can step down, sir.
 2    Okay.  And we'll tell you what --
 3              (Juror left the courtroom.)
 4              MR. KENNER:  Move to dismiss for cause, Your
 5    Honor.
 6              THE COURT:  Any objection?
 7              MR. KELLER:  No, Your Honor.
 8              THE COURT:  All right.  Then I'll excuse 0203 for
 9    cause.  He's excused.
10              MR. KENNER:  Will we be getting any recess this
11    afternoon?
12              THE COURT:  Do you want -- can we do this last one?
13              MR. KENNER:  Sure.
14              THE COURT:  Unless you need to now.  Right after
15    this juror we'll do...
16              MR. KENNER:  Thank you, Your Honor.
17              (Juror entered the courtroom.)
18              THE COURT:  If you could step up over here, please.
19    Please come up and sit down.
20              PROSPECTIVE JUROR:  Thank you.
21              THE COURT:  All right.  And you can take your mask
22    off so we can hear what you're going to say.
23              PROSPECTIVE JUROR:  Okay.
24              THE COURT:  And you need to speak into the
25    microphone to make sure -- you can move it around.
```

```
 1              PROSPECTIVE JUROR:  Okay.

 2              THE COURT:  All right.  This is juror No. 0625, and

 3    must admit I'm having trouble reading it.  Let me give it

 4    back.

 5              PROSPECTIVE JUROR:  That's not the questions.  I'm

 6    sorry, Your Honor.

 7              THE COURT:  Oh, okay.

 8              PROSPECTIVE JUROR:  Those were just the dates that

 9    you told us we might not be in session.

10              THE COURT:  All right.  Okay.

11              PROSPECTIVE JUROR:  I just wrote that down quickly.

12    I didn't have any answers.

13              THE COURT:  All right.  So what she's written are

14    the dates we wouldn't be sitting on the back.  And you had no

15    other --

16              PROSPECTIVE JUROR:  No.

17              THE COURT:  No other answers to the questions?

18              PROSPECTIVE JUROR:  No.

19              THE COURT:  All right.  Mr. Keller.

20              MR. KELLER:  Are you currently employed, ma'am?

21              PROSPECTIVE JUROR:  No, I'm retired.

22              MR. KELLER:  And what are you retired from?

23              PROSPECTIVE JUROR:  I was head of the library at a

24    nonprofit research institute.

25              MR. KELLER:  Was that somewhere local?
```

```
 1              PROSPECTIVE JUROR:  Yes, in D.C.

 2              MR. KELLER:  How long did you do that?

 3              PROSPECTIVE JUROR:  12 years at that job.

 4              MR. KELLER:  Was there any specific focus of the

 5    nonprofit at the --

 6              PROSPECTIVE JUROR:  Yes, it was international.

 7              THE COURT:  One at a time so we make sure that we

 8    have it.

 9              PROSPECTIVE JUROR:  It was focused on international

10    development.

11              MR. KELLER:  Fostering economic development --

12              PROSPECTIVE JUROR:  Well, it was focused

13    specifically on women and girls in the developing world.  Very

14    specific focus.

15              MR. KELLER:  Thank you.

16              No further questions.

17              THE COURT:  Mr. Kenner.

18              MR. KENNER:  Yes.

19              How long have you lived in D.C.?

20              PROSPECTIVE JUROR:  Since 1985.

21              MR. KENNER:  Okay.  And what was your job before you

22    were the librarian at this --

23              PROSPECTIVE JUROR:  I was the librarian for an

24    educational association.

25              MR. KENNER:  So that's been your career,
```

1    essentially?

2         PROSPECTIVE JUROR:  I had two careers.  I worked for

3    a outsourcing firm working on the State Department's Fulbright

4    program.  I was the Russia specialist.

5         MR. KENNER:  Can you tell me a little about what you

6    did as a Russian specialist?

7         PROSPECTIVE JUROR:  I was a program officer for

8    Fulbright scholars who were professors coming to the U.S. from

9    the Soviet Union and the ex-Soviet states after the collapse

10   of the Soviet Union and working with American professors who

11   were going there to teach and do research.

12        MR. KENNER:  Okay.  And did you do the same with

13   the --

14        PROSPECTIVE JUROR:  Both directions.

15        MR. KENNER:  -- Republic of China also?

16        PROSPECTIVE JUROR:  No, I studied Russian, Eastern

17   European studies in grad school, so I just worked with that

18   region specifically.

19        MR. KENNER:  Were there any particular subject

20   matters that these professors --

21        PROSPECTIVE JUROR:  All over the place.

22        MR. KENNER:  All over the board.

23        PROSPECTIVE JUROR:  Yeah.

24        MR. KENNER:  Okay.  I have nothing further.

25        THE COURT:  All right.  You can step down.

```
1              PROSPECTIVE JUROR:  Okay.

2              (Juror left the courtroom.)

3              THE COURT:  I assume there's no issue?

4              MR. KENNER:  No, Your Honor.

5              THE COURT:  Okay.  All right.  Why don't we go ahead

6    and take a break at this point.  It's quarter of.  Until 4:00,

7    okay.  And we'll come back at that point.  We'll go to 5:00.

8              (A recess was taken.)

9              (Juror entered the courtroom.)

10             THE COURT:  If you would step up over here.  Please

11   step up.  And you can go ahead and sit down.  All right.  You

12   can take your mask down so we can hear you.  And if you'd

13   speak into the microphone in a nice loud, clear voice.

14             PROSPECTIVE JUROR:  All right.  Hello, everybody.

15             THE COURT:  This is juror No. 0206.  And it's

16   questions 20 and 36.

17             So 20 is whether you or somebody close to you is a

18   lawyer, worked for a lawyer, or studied the law.  Is that you

19   or somebody else?

20             PROSPECTIVE JUROR:  I previously -- in my previous

21   job, I worked for a couple lawyers.

22             THE COURT:  Okay.  What was your job with the

23   lawyers?  What did you do?

24             PROSPECTIVE JUROR:  I was a personal admin

25   assistant, so I helped grab the mail, file away paperwork, and
```

1    things like that.  Yes.

2              THE COURT:  Okay.  So if you make sure you keep your

3    voice up.

4              So did you work for a law firm, or they were

5    individual lawyers or what?

6              PROSPECTIVE JUROR:  It was a private law firm.  It

7    was a small law firm of about four attorneys.

8              THE COURT:  Okay.  And so you were, in essence, the

9    administrative officer in the --

10             PROSPECTIVE JUROR:  Correct.

11             THE COURT:  What was their practice?

12             PROSPECTIVE JUROR:  Their practice was -- they were

13   boutique.  They did hospitality management and restaurateur,

14   helping restaurants in San Francisco set up and how to, you

15   know, get a ABC or how to get a lease, stuff like that.

16             THE COURT:  How long did you work for them?

17             PROSPECTIVE JUROR:  I worked as their admin

18   assistant for about three, four years.  I did it during

19   college.

20             THE COURT:  Okay.  And did they do any litigation,

21   the firm itself?

22             PROSPECTIVE JUROR:  When I was with them, they

23   didn't do any litigation.  They may have done it in the past

24   but not when I was there.

25             THE COURT:  All right.  Did you have any discussions

1    about legal issues or, you know, criminal justice system or

2    anything else while you worked for them that you think would

3    affect your consideration of the evidence in this case?

4              PROSPECTIVE JUROR:  I don't think so.  They never

5    really talked about cases with me.  I kind of just did my

6    office admin work there.

7              THE COURT:  All right.  And 36 is the length of the

8    trial.  And so do you have an issue?

9              PROSPECTIVE JUROR:  I have a family vacation planned

10   next Tuesday, April 4th to April 14th.  My family's coming

11   from California to do an East Coast trip.  It's their first

12   time visiting me since I've been in D.C., and their flights

13   and hotel rooms are already booked.  And they're using my car.

14   So we're doing a whole road trip.  So that would be -- I'm not

15   sure how long this case is, but I feel like that's two full

16   weeks of when that would be occurring.

17             THE COURT:  Well, the trial will take at least a

18   month.  So is this -- are you -- is family coming here?

19             PROSPECTIVE JUROR:  Correct.  They're flying from

20   L.A. to Dulles.

21             THE COURT:  Okay.  And then what are you doing here?

22   Are they just visiting, or are you doing something with them

23   and going someplace?

24             PROSPECTIVE JUROR:  We're doing all the tourist

25   attractions.  So we're doing two days in D.C., then I'm

1    driving them to Niagara Falls.  I'm going to see that.  And

2    then we're going to go all the way down to Boston, make our

3    way down to New York, down to Philly, and then make our way

4    back to D.C. before they fly back to California.  It's a -- I

5    know it's a lot, but we're going to try.

6                    THE COURT:  And how long ago did you plan it?

7                    PROSPECTIVE JUROR:  We planned it when I was back

8    home for Christmas, and they're like, you know, we're going to

9    try and finally come and visit you, and that's how it was

10   decided.

11                   THE COURT:  This juror did request to be excused.

12   It wasn't clear from the materials as to what the family --

13   whether people were just coming to stay here or whether they

14   were actually traveling around.  He's obviously explained the

15   traveling around.  Any questions?

16                   MR. KENNER:  No questions.  No objection.

17                   THE COURT:  All right.  You can go ahead and step

18   down, sir.

19                   PROSPECTIVE JUROR:  Thank you.

20                   (Juror left the courtroom.)

21                   THE COURT:  So he had planned it already, and he did

22   ask to be excused.  It's just that it didn't have quite enough

23   information to figure out whether, you know -- so family comes

24   to visit, you can still work or do whatever, but obviously

25   with more details it's -- he's got a bigger plan.  So I'm

1    assuming nobody had any problems; is that correct?

2             MR. KENNER:  I have no problem.

3             THE COURT:  All right.  So he's excused.

4             (Juror entered the courtroom.)

5             THE COURT:  All right.  If you would step up over

6    here, please.  Please come up, you can sit down, and you can

7    take your mask off so we can hear your answers.

8             PROSPECTIVE JUROR:  Oh, okay.

9             THE COURT:  And make sure you speak into the

10   microphone.

11            This is juror No. 0602.  And it's questions No. 33.

12            So you've been a juror in the past in a criminal

13   case; is that correct?

14            PROSPECTIVE JUROR:  Yes.

15            THE COURT:  Which court was it?  Was it this court

16   or the local court or someplace --

17            PROSPECTIVE JUROR:  Local court.

18            THE COURT:  Okay.  So D.C. Superior Court?

19            PROSPECTIVE JUROR:  Yes.

20            THE COURT:  And how long ago was that?

21            PROSPECTIVE JUROR:  I believe it was 2017.

22            THE COURT:  Okay.  And is that the only time you've

23   been a juror?

24            PROSPECTIVE JUROR:  No, I was a juror last May, but

25   it was a civil trial.

1          THE COURT:  Okay.  If you'd speak up a little bit.

2          PROSPECTIVE JUROR:  I was a juror last May, but it

3   was in a civil trial.

4          THE COURT:  Okay.  Are those the only two

5   experiences?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  All right.  The -- when you served as a

8   juror in the criminal case in 2017, were you the foreperson of

9   the jury?

10          PROSPECTIVE JUROR:  I was not.

11          THE COURT:  Okay.  And without telling us what the

12   verdict was, in the criminal case, did the jury reach a

13   verdict?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And do you remember what the charges

16   were in that particular case, just generally?

17          PROSPECTIVE JUROR:  No.

18          THE COURT:  Okay.  Anything about that experience

19   and the criminal trial as a juror in terms of what happened in

20   the case or your deliberations or anything, anything about

21   having served as a juror in that case that would affect your

22   fairness and impartiality in this case?

23          PROSPECTIVE JUROR:  No.

24          THE COURT:  In terms of the civil case, did they --

25   did the jury reach a verdict in that case?

1              PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Anything about that experience that you

3     think would affect your consideration of the evidence in this

4     case?

5              PROSPECTIVE JUROR:  No.

6              THE COURT:  What -- do you remember what the topic

7     was, what the subject matter was in the civil case?

8              PROSPECTIVE JUROR:  I think there was a dispute as

9     to who was at fault about a fall.

10             THE COURT:  Somebody fell and injured themselves?

11             PROSPECTIVE JUROR:  Someone fell and injured

12    themselves, yes.

13             THE COURT:  All right.  Any questions, Mr. Keller?

14             MR. KELLER:  Do you recall how long the

15    deliberations were in the criminal case?

16             PROSPECTIVE JUROR:  It was no more than a day, maybe

17    like half a day.

18             MR. KELLER:  And then what about in the civil case?

19             PROSPECTIVE JUROR:  Same thing.

20             MR. KELLER:  I know the judge asked you generally

21    about anything from those experiences that could impact you in

22    this case, but with respect to the deliberations specifically,

23    do you recall any difficulties or discomfort in discussing the

24    case with the other jurors or having to reach a resolution

25    with your fellow jurors?

1          PROSPECTIVE JUROR:  No.

2          MR. KELLER:  Nothing further.

3          THE COURT:  Mr. Kenner.

4          MR. KENNER:  Thank you, Your Honor.

5          In the criminal trial in 2017, how long was the

6     trial before you started deliberations?

7          PROSPECTIVE JUROR:  I believe about five days.

8          MR. KENNER:  You heard the judge in that case give

9     you various instructions as to how to do your work as a juror?

10         PROSPECTIVE JUROR:  Yes.

11         MR. KENNER:  Do you understand that Her Honor will

12    be doing the same in this case.  You understand you have to

13    follow Her Honor's instructions in this case only?

14         PROSPECTIVE JUROR:  Yes.

15         MR. KENNER:  And you have no problem doing that?

16         PROSPECTIVE JUROR:  No.

17         MR. KENNER:  Okay.  Do you have any recollection

18    about the different burdens of proof between the civil trial

19    and the criminal trial?

20         PROSPECTIVE JUROR:  I don't.

21         MR. KENNER:  Were you aware that the burden was

22    higher in one of those types of trials than in the other type?

23         PROSPECTIVE JUROR:  At this moment, no, I don't.

24    The civil trial was last year.  The criminal trial was, what,

25    like five years ago.  So I don't really remember the

1    difference since I don't work in the area of law.

2              MR. KENNER:  Okay.  In this case, I believe Her

3    Honor will instruct you on proof beyond a reasonable doubt and

4    on the -- what that means.  Do you agree to follow the judge's

5    instruction on that?

6              PROSPECTIVE JUROR:  Yes.

7              MR. KENNER:  And you have no recollection that in a

8    criminal case, the burden of proof is beyond a reasonable

9    doubt where in a civil case, it's a lesser standard?

10             PROSPECTIVE JUROR:  No.

11             MR. KENNER:  Is there anything about your experience

12   in the civil case and the criminal case that you did sit on

13   that causes you to believe that there is a difference, in

14   fact, between the standard in a civil case and the standard in

15   a criminal case?

16             THE COURT:  That's too confusing.  Even I can't

17   figure out what you asked.

18             MR. KENNER:  Okay.  May I try it again?

19             THE COURT:  Yes.

20             MR. KENNER:  Okay.  In the civil case, you were

21   instructed as to what the burden of proof that was required.

22   You were also instructed as to the burden of proof required in

23   the criminal case.  Do you recall there being any difference

24   in those two instructions?

25             MR. KELLER:  Your Honor, the witness has already

1    been asked this question and answered it at least once, if not

2    twice.

3                 THE COURT:  I think so.

4                 Let me just ask it this way.  In a civil case, it is

5    a lower standard and lower burden.  In a criminal case, it's

6    beyond a reasonable doubt.  And you'll be given an instruction

7    as to what that means and how to apply it to the evidence.

8                 When you were in the criminal case, did you, as a

9    juror, follow the instructions and apply the standard that was

10   set out by the judge in that case?

11                PROSPECTIVE JUROR:  Yes.

12                THE COURT:  I think that answers it.

13                MR. KENNER:  Thank you.

14                What is your occupation?

15                PROSPECTIVE JUROR:  I'm a pharmacist.

16                MR. KENNER:  Okay.  Do you do any kind of audit work

17   in connection with being a pharmacist?

18                PROSPECTIVE JUROR:  I do.

19                MR. KENNER:  And can you describe just --

20                PROSPECTIVE JUROR:  Sure.  I audit narcotic drugs to

21   make sure inventory counts are accurate.

22                MR. KENNER:  Okay.  And what was the subject matter

23   in the criminal case?

24                PROSPECTIVE JUROR:  I believe it was a gun charge.

25   But like I said, I don't really remember.

1          MR. KENNER:  Okay.  How long have you lived in D.C.?

2          PROSPECTIVE JUROR:  About ten years.

3          MR. KENNER:  And where did you live prior to that?

4          PROSPECTIVE JUROR:  Maryland.

5          MR. KENNER:  Have you ever had any reason to work

6   with law enforcement in your capacity as a pharmacist?

7          PROSPECTIVE JUROR:  No.

8          MR. KENNER:  Do you interact with law enforcement

9   personnel in your job?

10          PROSPECTIVE JUROR:  No.

11          MR. KENNER:  I have nothing further.

12          THE COURT:  All right.  You can step down, thank

13   you.  We'll give you further instructions.

14          (Juror left the courtroom.)

15          MR. KENNER:  Pass for cause, Your Honor.

16          THE COURT:  I'm sorry?

17          MR. KENNER:  Pass for cause.

18          THE COURT:  Why?

19          MR. KENNER:  No, I --

20          THE COURT:  Oh, you're not passing.  I thought you

21   were saying for cause, and I was going to say there is no

22   reason.  All right.  We're keeping her.

23          I'm assuming Mr. Keller's nods are --

24          MR. KELLER:  Correct, Your Honor.

25          THE COURT:  Okay.

1              (Juror entered the courtroom.)

2              THE COURT:  All right.  Sir, if you would step in

3       over here, to my left, here.  This way.  You can come down the

4       center.  All right.  And if you would step up and you can sit,

5       thank you.  And make yourself comfortable.  You can take the

6       mask down so we can hear you.

7              PROSPECTIVE JUROR:  Okay.

8              THE COURT:  And then if you would speak into the

9       microphone, I'd appreciate it.

10             PROSPECTIVE JUROR:  Okay.

11             THE COURT:  This is juror No. 0426.  And it's 37 and

12      38.

13             So 37 is whether you have a health problem or take

14      medication that you feel that you couldn't sit on this jury.

15      So you have a health problem or medication --

16             PROSPECTIVE JUROR:  I'm diabetic.  The -- I don't

17      really have an issue serving if I'm picked.  The issue that I

18      have is that I wear a meter.

19             THE COURT:  Okay.  That's no problem.

20             PROSPECTIVE JUROR:  And it might go off from time to

21      time.

22             THE COURT:  Not a problem.

23             PROSPECTIVE JUROR:  But if my sugar would drop, I

24      would have to put something sweet in my mouth during the case,

25      if that's --

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR:  But that was the only issue that

3     I have.

4          THE COURT:  So if we took regular breaks and if that

5     goes off, then do you have something -- we could take a short

6     break and do you have whatever you need to take with you?

7          PROSPECTIVE JUROR:  Whatever I bring -- uh-huh.

8          THE COURT:  Okay.  So if we -- or you'll let us know

9     when you need to take a break, if you need to.

10         PROSPECTIVE JUROR:  Correct.  Yes.

11         THE COURT:  And also do you have issues in terms of

12    if you're selected about when you have to eat lunch or

13    anything?  We do provide food for sort of a breakfast, but,

14    you know, muffins and stuff, but is there a particular time

15    that you need to have for lunch?

16         PROSPECTIVE JUROR:  Not really.  It's just that the

17    only thing I'm just concerned about if my sugar happen to

18    drop, would I be able to just pop a hard piece of candy into

19    my mouth to kind of bring my sugar up.  That's the only

20    issue.

21         THE COURT:  Okay.  All right.  If you decide at some

22    point -- I usually do 1:00 to 2:00, but I can certainly make

23    an adjustment if it turns out that you need something earlier

24    if you're selected.

25         Okay.  38 is whether you have difficulty seeing or

1    hearing and whether -- in terms of following things and needed

2    accommodation.  So is it hearing or seeing?

3                PROSPECTIVE JUROR:  Seeing.

4                THE COURT:  I'm sorry?

5                PROSPECTIVE JUROR:  Seeing.

6                THE COURT:  Seeing.  Okay.

7                PROSPECTIVE JUROR:  Something might have to be --

8    like if I'm reading something, it might have to be blown up

9    just a little bit so I can see it.

10                THE COURT:  Okay.  What we have is every two chairs,

11    there is a small screen.  Would you be able to see the screen

12    in front of you?  Okay.  If you looked at the screen -- let me

13    just get a sense.  You know the screen right in front of you

14    here, if something was on that, would you be able to see it?

15                PROSPECTIVE JUROR:  It depends.  If it's anything

16    like writing or something or like a document, it might have to

17    be blown up a little bit so I could see it.

18                THE COURT:  Okay.  If we gave you it in paper, would

19    you be able to read it, in paper form?

20                PROSPECTIVE JUROR:  Depends on how big the --

21                THE COURT:  The print is.

22                PROSPECTIVE JUROR:  The print is.

23                THE COURT:  Okay.  So what do you do as usual for

24    your accommodations?  Do you work?

25                PROSPECTIVE JUROR:  I'm not working right now, no.

1          THE COURT:  I'm sorry?

2          PROSPECTIVE JUROR:  I'm not working right now.

3          THE COURT:  Okay.  So in terms of accommodating for

4    the seeing, is it more that you would just need things blown

5    up?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  Okay.  So it's more writing.  Is it

8    things that when -- in looking out?  I mean, do you have any

9    problem seeing the individuals there, or is it more things

10   that are close up that you need to see?

11         PROSPECTIVE JUROR:  More like close up that I need

12   to see.

13         THE COURT:  Okay.  So is it distance you have

14   problems with, or is it things that are closer?

15         PROSPECTIVE JUROR:  Distance, it depends.  Like

16   if -- how can I --

17         THE COURT:  Can you see people beyond the well of

18   the Court, people that are sitting out there?

19         PROSPECTIVE JUROR:  Yes.  Yes.  Yes.

20         THE COURT:  Okay.  All right.

21         Any questions?

22         MR. KELLER:  Have you been working any time in the

23   last few years?

24         PROSPECTIVE JUROR:  The last time I worked was 2020,

25   because of my diabetes and my condition, and my eyesight.

1          MR. KELLER:  What were you doing back in 2020?

2          PROSPECTIVE JUROR:  I was a warehouse specialist for

3     NIH.

4          MR. KELLER:  How long were you with NIH?

5          PROSPECTIVE JUROR:  Not long.  It was maybe like six

6     months.

7          MR. KELLER:  And what about prior to that, were you

8     working anywhere else?

9          PROSPECTIVE JUROR:  No.

10         MR. KELLER:  Nothing further, Your Honor.

11         THE COURT:  Mr. Kenner.

12         MR. KENNER:  Good afternoon, how are you?

13         PROSPECTIVE JUROR:  I'm doing fine.

14         MR. KENNER:  Good.  Do you have special

15    accommodations that you set up for yourself at your residence

16    to adapt to the issues that you have medically?

17         PROSPECTIVE JUROR:  Other than I -- when I'm at

18    home, I have two different pairs of eyeglasses, but they don't

19    always work.  These are progressive lenses, but I still can't

20    see -- like I've explained, I still can't see certain things.

21    That's why it has to be blown up.  I do have readers from time

22    to time that I do use.  But they really don't work like

23    because of my eyes change so often, my vision change so often.

24    So I always got to get another pair or stronger pair of, like,

25    readers or so.

1          MR. KENNER:  Do you feel like the medical things

2    that you've been describing to us would make it more difficult

3    for you to be a juror --

4          PROSPECTIVE JUROR:  No.

5          MR. KENNER:  -- if you didn't have those problems?

6          PROSPECTIVE JUROR:  No.

7          MR. KENNER:  You would agree you have to be able to

8    see and read evidence?

9          PROSPECTIVE JUROR:  Um, like I said, if something

10   blown up or something I can see, you know, I would be able to

11   see it, yeah, I could probably -- but --

12         MR. KENNER:  This case is likely to be document

13   intensive.  There's going to be a lot of documents that have

14   to be read, and the print is not always of a very large size.

15   Would that create a problem for you?

16         THE COURT:  Well, it seems to me if you use the

17   ELMO, you can blow it up.  And, frankly, if you do it on the

18   computer or whatever, you can also blow portions up if you

19   want someone to read it.

20         So we should be able to do that, assuming that that

21   would work for you.

22         PROSPECTIVE JUROR:  Uh-huh.

23         MR. KENNER:  Would sitting on a trial that's going

24   to be four weeks, approximately, plus deliberation time, would

25   that be hard on you because of your physical problems?

1              PROSPECTIVE JUROR:  No.

2              MR. KENNER:  How long have you lived in D.C.?

3              PROSPECTIVE JUROR:  All my life.

4              MR. KENNER:  And is the six-month job that you

5      described previously the only employment that you have?

6              PROSPECTIVE JUROR:  No, I had employment before

7      that, but my health kind of got a little bit -- I'm not going

8      to say worse, but it got a little bit bothersome during the

9      time.

10             MR. KENNER:  So the medical issues that you're

11     describing prevents you from having a job; is that correct?

12             PROSPECTIVE JUROR:  Correct.

13             THE COURT:  What kind of work have you done -- just

14     describe it generally -- besides working in the warehouse?

15             PROSPECTIVE JUROR:  I've done retail before.  I've

16     also worked at a hospital as a supply technician before.  But

17     the heavy work didn't start until I started working in the

18     warehouse.  I've done network for the last, I want to say

19     five, maybe five and a half years before I worked at NIH, my

20     last job.

21             THE COURT:  Okay.

22             MR. KENNER:  And please remind me again, when did

23     the medical issues kind of overtake your life?

24             PROSPECTIVE JUROR:  It's been going a while -- it's

25     been going on for a while, but it just started getting a

```
1   little -- how can I put it?  I'm not going to say worse, but
2   it's just been progressing.
3           MR. KENNER:  I have nothing further.
4           THE COURT:  All right.  You can step down, sir, and
5   we'll give you further instructions.
6           PROSPECTIVE JUROR:  Okay.
7           (Juror left the courtroom.)
8           MR. KENNER:  Your Honor, I would move to excuse this
9   witness -- this juror, I'm sorry.
10          THE COURT:  What's your position, Mr. Keller?
11          MR. KELLER:  I guess no objection based on the
12  vision issues, Your Honor.
13          THE COURT:  All right.  Since you've asked for it,
14  I'll go ahead and do it.  He's excused for cause, 0426.
15          (Juror entered the courtroom.)
16          THE COURT:  All right.  If you would step up over
17  here, please.  Come up, and you can go ahead and sit down.
18  And you can take your mask off so we can hear what you're
19  saying.  And if you'd speak into the microphone in a nice
20  clear voice.
21          PROSPECTIVE JUROR:  Okay.
22          THE COURT:  This is juror No. 0658.  Questions 16,
23  17, 20 and 22.
24          So 16, 16 is whether you or somebody close to you
25  works for law enforcement.  Is that you or somebody else?
```

```
1              PROSPECTIVE JUROR:  Somebody else.  My
2   sister-in-law.
3              THE COURT:  All right.  And what does your
4   sister-in-law do?
5              PROSPECTIVE JUROR:  She works for the Department of
6   Justice in the Bureau of Justice Statistics.
7              THE COURT:  I missed that, the Bureau of?
8              PROSPECTIVE JUROR:  Justice Statistics.
9              THE COURT:  Okay.  Do you know what she does in that
10  bureau?
11             PROSPECTIVE JUROR:  I should, but no, not really.
12             THE COURT:  Okay.  Is that the only person?
13             PROSPECTIVE JUROR:  Correct.
14             THE COURT:  So you don't have any idea what the
15  subject matter is of the statistics?
16             PROSPECTIVE JUROR:  I know she works on -- she works
17  on police reform.  So statistics related to instances of
18  violence, but that's about it.
19             THE COURT:  Okay.  So the statistics are around
20  actions with police departments?
21             PROSPECTIVE JUROR:  Correct.
22             THE COURT:  Have you had much discussion about that,
23  or you just know that much?
24             PROSPECTIVE JUROR:  I mean, we've had more
25  discussions, but that's about as much as I know.
```

1           THE COURT:  Okay.  Anything about those discussions

2    that you think would affect your consideration of the evidence

3    in the case?

4           PROSPECTIVE JUROR:  I don't think so.

5           THE COURT:  17 is whether you or somebody close to

6    you has ever been employed by the Courts, D.C. Superior Court

7    or U.S. District Court.  Is that you or somebody else?

8           PROSPECTIVE JUROR:  Somebody else.

9           THE COURT:  What's the relation?

10          PROSPECTIVE JUROR:  My husband works for the Federal

11   Judiciary.

12          THE COURT:  In this courthouse or someplace else?

13          PROSPECTIVE JUROR:  So again, he started two weeks

14   ago, so I'll apologize in advance.  He works for like the

15   justice -- not Justice Department, but Federal Judiciary in

16   the main building.  He's a budget analyst over by the Union

17   Station.

18          THE COURT:  The administrative office of the

19   Court.

20          PROSPECTIVE JUROR:  Yes, thank you.

21          THE COURT:  Okay.  Is he an attorney?

22          PROSPECTIVE JUROR:  No.

23          THE COURT:  Do you know what he does in the

24   administrative office of the Court?

25          PROSPECTIVE JUROR:  He's a budget analyst for the

1    Court security folks.

2              THE COURT:  Okay.  And how long -- so he just got

3    this?

4              PROSPECTIVE JUROR:  He just started two weeks ago,

5    yes.

6              THE COURT:  What did he do before that?

7              PROSPECTIVE JUROR:  He worked for the Department of

8    Veteran's Affairs.

9              THE COURT:  What did he do there?

10             PROSPECTIVE JUROR:  Same thing, a budget analyst.

11             THE COURT:  Do you know what that -- what generally

12   that means?

13             PROSPECTIVE JUROR:  Again, I should, absolutely.

14   But yeah, he mostly dealt with a lot of overseeing of budget

15   portfolios for the VA, for veteran's health in particular.  I

16   think in his current capacity, it's more administrative, so

17   it's more reconciliations and that kind of thing.

18             THE COURT:  And for the AO, he's just -- when did he

19   start?

20             PROSPECTIVE JUROR:  He started two weeks ago.

21             THE COURT:  Okay.  So in terms of what is budget

22   adjustments, what is he -- or analysis, what is he looking at

23   specifically within the Federal Judiciary?

24             PROSPECTIVE JUROR:  Specifically at court

25   security.

1          THE COURT:  Oh, okay.  Court security.  All right.

2     Anything about his work or the fact that he's connected to the

3     courts that would influence you in this case in any way?

4          PROSPECTIVE JUROR:  No.

5          THE COURT:  All right.  20 is whether you or

6     somebody close to you is a lawyer, worked for a lawyer, or

7     studied law.  Is that you or somebody else?

8          PROSPECTIVE JUROR:  Somebody else.  My father is a

9     lawyer.

10          THE COURT:  Okay.  And is he a lawyer here in D.C.

11     or someplace else?

12          PROSPECTIVE JUROR:  No, he's no longer practicing,

13     in California.

14          THE COURT:  Okay.  And what -- what was his

15     specialty, did he work for the government or private?

16          PROSPECTIVE JUROR:  No, private attorney, in tax and

17     property.

18          THE COURT:  Did he do litigation or --

19          PROSPECTIVE JUROR:  No.

20          THE COURT:  No litigation, okay.  And how long did

21     he do that work, roughly?  Is that most of his career?

22          PROSPECTIVE JUROR:  His career, yes.

23          THE COURT:  When did he retire?

24          PROSPECTIVE JUROR:  15 years ago.

25          THE COURT:  Okay.  Anything about those discussions

```
 1        that you think -- that you might have had with your father
 2        about legal issues or anything else that you think would
 3        influence you in this case?
 4                  PROSPECTIVE JUROR:  No.
 5                  THE COURT:  22 is whether you or somebody close to
 6        you ever worked on campaign fundraising or a campaign finance.
 7        Is that you or somebody else?
 8                  PROSPECTIVE JUROR:  That's me.
 9                  THE COURT:  Okay.  And what capacity did you work on
10        that?
11                  PROSPECTIVE JUROR:  So I worked for political action
12        committee called Emily's List as a communications manager,
13        again about 15 years ago.
14                  THE COURT:  Okay.  How long have you worked for
15        Emily's List?
16                  PROSPECTIVE JUROR:  I have not worked there for
17        15 years.
18                  THE COURT:  Okay.  So 15 years ago, you worked for
19        them?
20                  PROSPECTIVE JUROR:  Correct.
21                  THE COURT:  And you did, you said, communications?
22                  PROSPECTIVE JUROR:  Correct.
23                  THE COURT:  So is that sort of media communications
24        or other --
25                  PROSPECTIVE JUROR:  Exactly.  Exactly.  As well as
```

1    some amount of consultancy to campaigns working on their media

2    engagement.

3          THE COURT:  Okay.  And was the campaign focused on

4    fundraising for Emily's List or for broader campaigns, for

5    candidates or something else?

6          PROSPECTIVE JUROR:  So I largely did not have my

7    fingers in the fundraising itself, but mostly working on --

8    the organization itself fundraises for women candidates.

9          THE COURT:  Okay.  So you didn't work on the

10   fundraising yourself though?

11         PROSPECTIVE JUROR:  Correct.  Correct.

12         THE COURT:  And what have you been doing since the

13   15 years?

14         PROSPECTIVE JUROR:  I work largely as a gender

15   advisor for a variety of different international

16   organizations.  I currently work for the Open Government

17   Partnership which works on government accountability and

18   transparency.

19         THE COURT:  Okay.  So are these NGOs kind of things?

20         PROSPECTIVE JUROR:  Exactly.

21         THE COURT:  So is that all within the government

22   within the United States or government overseas or --

23         PROSPECTIVE JUROR:  So I've worked with governments

24   from around the world.  So currently with -- the Open

25   Government Partnership is a partnership of 75 governments from

1    around the world.

2              THE COURT:  And what's the focus of the partnership?

3              PROSPECTIVE JUROR:  It's working on government

4    transparency, accountability, and citizen participation in

5    government policymaking.  So making government's more --

6              THE COURT:  Is there a particular policy that's at

7    issue or just in general?

8              PROSPECTIVE JUROR:  Policy largely.  So working on

9    making governments more accountable to the citizens that they

10   represent as well as making their work more transparent and

11   communicating that to different citizens.

12             THE COURT:  Is there anything about your work,

13   having heard generally what -- I gave you background

14   information, is there anything about your work now or the work

15   you did for Emily's List that you think would affect your

16   consideration of the evidence in this case?

17             PROSPECTIVE JUROR:  No.

18             THE COURT:  All right.  Mr. Keller.

19             MR. KELLER:  No questions, Your Honor.

20             THE COURT:  Mr. Kenner.

21             MR. KENNER:  Thank you, Your Honor.

22             Is Malaysia one of the 75?

23             PROSPECTIVE JUROR:  It is not.

24             MR. KENNER:  Is the People's Republic of China?

25             PROSPECTIVE JUROR:  It is not.

1          MR. KENNER:  Is Taiwan?

2          PROSPECTIVE JUROR:  No.

3          MR. KENNER:  Am I correct to say you don't really

4   focus on the Asian countries?

5          PROSPECTIVE JUROR:  We do work on east Asia, but

6   it's largely South Korea, as well as southeast Asia.

7          MR. KENNER:  Okay.  Your husband, would it be sort

8   of correct to call him a statistician?

9          PROSPECTIVE JUROR:  He is not a statistician.  He's

10  a budget guy.

11         MR. KENNER:  He's a budget guy.  So he's used to

12  reviewing numbers and finding issues or problems and solving

13  them.  Does he make recommendations as to how budgets should

14  be done or changed?

15         PROSPECTIVE JUROR:  That's a great question.  In his

16  current capacity, I don't know.  I believe he is more working

17  on the day-to-day management of budgets.  At the VA, he did do

18  a certain amount of oversight and communication of budget

19  portfolios and cooperation with the Hill and different budget

20  agencies about that.

21         MR. KENNER:  Okay.  So he would analyze numbers at

22  least at the VA, and he would make budget recommendations; is

23  that correct?

24         PROSPECTIVE JUROR:  I don't know that he would make

25  budget recommendations.  I think he would assess budgets and

1    share that internally.

2         MR. KENNER:  All right.  So he would look at

3    documents, I imagine a lot of financial documents, and come to

4    conclusions about whether or not they made sense to him; is

5    that correct?

6         PROSPECTIVE JUROR:  Correct.  I believe so.

7         MR. KENNER:  Do you have a background in finance?

8         PROSPECTIVE JUROR:  I do not.

9         MR. KENNER:  Does your husband?

10        PROSPECTIVE JUROR:  He does.  He has an MBA.

11        MR. KENNER:  Okay.  Do you mind sharing what his

12   major was?

13        PROSPECTIVE JUROR:  It was just a master's in

14   business administration.  So he had a large focus on kind of

15   more of a government policy side of business.

16        MR. KENNER:  Okay.  Can you give me some idea of

17   what your educational background is?

18        PROSPECTIVE JUROR:  So I have an undergraduate

19   degree from Denison University in communications and women's

20   studies and then an MPP, master in public policy, from Harvard

21   University.

22        MR. KENNER:  Okay.  Now, part of your work, as I

23   understand it, is to make governments more accountable; is

24   that correct?

25        PROSPECTIVE JUROR:  Correct.

1        MR. KENNER:  Can you describe what you mean by that?

2        PROSPECTIVE JUROR:  Yeah.  I think largely the

3   organization focuses on providing sunlight to the work that

4   governments do every day.  So it's working with governments to

5   share information about what their policies are doing, what

6   they're trying to accomplish, what their targets and goals are

7   with the public and doing strategic targeted outreach to

8   citizens and community groups to make sure that they are

9   engaged in the policymaking process.

10        MR. KENNER:  Is part of that work involve analyzing

11   whether or not a particular government is doing for what

12   it's -- for its citizens what it's supposed to be doing?

13        PROSPECTIVE JUROR:  Yes.

14        MR. KENNER:  Can you give me an example of that?

15        PROSPECTIVE JUROR:  So my job in particular is

16   looking at gender and women's engagement in this work.  And so

17   we might sit down with a government who says we want to make a

18   commitment around opening up public procurement to women

19   entrepreneurs.  And so we would go through with and assess

20   with them what they're currently doing, what are some

21   recommendations potentially around adjusting those procurement

22   thresholds or what kinds of work would be needed to engage

23   more women in the process.  And then they would have a

24   two-year strategy to be able to implement that.

25        MR. KENNER:  Okay.  Do you have any awareness of an

```
1    alleged theft -- not an alleged, a theft of billions of

2    dollars from the government of Malaysia that involved the

3    then-prime minister of Malaysia?

4              PROSPECTIVE JUROR:  I don't.

5              MR. KENNER:  Would you be comfortable sitting on a

6    case where some of the issues would revolve around the

7    accountability of a foreign government to its citizens?

8              THE COURT:  I don't think comfort is the issue.  The

9    question is would you be able to do it and be fair and

10   impartial in making those -- listening to this and making

11   those decisions.

12             PROSPECTIVE JUROR:  I would.

13             MR. KENNER:  Do you have any background in political

14   science?

15             PROSPECTIVE JUROR:  I don't, not formally, no.

16             MR. KENNER:  I have no further questions.

17             THE COURT:  All right.  You can step down, thank

18   you.  We'll give you further instructions.

19             (Juror left the courtroom.)

20             MR. KENNER:  No objection, Your Honor.

21             THE COURT:  I'm sorry?

22             MR. KENNER:  No objection.

23             THE COURT:  All right.

24             MR. KELLER:  Your Honor, no objection.  And perhaps

25   I misunderstood the Court, but I thought the Court was
```

1    prohibiting us from asking about education and also asking

2    about familiarity with 1 MDB?

3             THE COURT:  I was hoping that that would not -- you

4    know, would not be those questions that would be asked.

5             You've not asked directly, but you've gotten into

6    asking background.  I don't have a problem with relating it to

7    the particular job in terms of training, but asking whether --

8    you know, what their majors were, et cetera.  And, frankly,

9    the husband is not the juror.  So whether he's got an MBA or

10   not really doesn't make any difference.  He's not going to be

11   the one making this decision.  And I did indicate that I

12   prefer that you not bring up specific things.  Now, it didn't

13   create a problem.  I'm trying not to constantly interrupt you,

14   Mr. Kenner, but I would ask that you pay attention to my

15   rulings.

16            MR. KENNER:  I try to always, Your Honor.  I --

17            THE COURT:  Well, you're not succeeding.

18            MR. KENNER:  I brought it up -- I'm sorry.  I

19   apologize.  I brought it up only because of what she does

20   and --

21            THE COURT:  Right.  But she indicated to you -- she

22   indicated -- I'm not going to get into an argument with you.

23   We don't have time to waste on it.  But she said -- Malaysia

24   had nothing to do with the work that she's done.  So as a

25   practical matter, if she had, maybe that would be an opening

1    to say it but it wasn't.  So I'd ask that you pay attention to

2    what I have set out so I'm not left with constantly

3    interrupting you, which doesn't look good.  And it's not a

4    good way of doing this.  I'd prefer to have you, as much as

5    possible, be able to explore the areas that are appropriate.

6              MR. KENNER:  Yes, Your Honor.

7              THE COURT:  Let's get the next juror in.

8              She's fine.

9              (Juror entered the courtroom.)

10             THE COURT:  If you could step over here and come to

11   my left.  Come on over here.  You can come in the center.  It

12   doesn't matter however you come.

13             PROSPECTIVE JUROR:  I'm sorry, I'm confused.

14             THE COURT:  If you would just come up here.  Step

15   up.  Go ahead and sit down.

16             This is juror No. 0749.

17             And I would ask that you do speak into the

18   microphone so make sure we have a record.

19             And the questions are 20, 23, 25 and 36.

20             Can I -- Dorothy, just I want to make sure I've got

21   the right number.  It's after 23, if you could just look for a

22   second.  Just tell me if it's 25.

23             PROSPECTIVE JUROR:  Yes, that was 25.

24             THE COURT:  Okay.  Terrific.

25             All right.  Let me start with question 20, which

1    is -- this applies to you or members of your family and close

2    friends, whether they're a lawyer, work for a lawyer or

3    studied law.  Is that you or somebody else?

4            PROSPECTIVE JUROR:  That was me.

5            THE COURT:  Okay.  And you're an attorney?

6            PROSPECTIVE JUROR:  No, I'm not.

7            THE COURT:  You studied law?

8            PROSPECTIVE JUROR:  No, I worked for a lawyer.

9            THE COURT:  Okay.  You worked for a lawyer.  In what

10   capacity did you work for a lawyer?

11           PROSPECTIVE JUROR:  I was her paralegal.

12           THE COURT:  Okay.  And did you get training as a

13   paralegal, or was it on-the-job training?

14           PROSPECTIVE JUROR:  It was both.

15           THE COURT:  Okay.  And did you work for a private

16   attorney in a private firm or government?

17           PROSPECTIVE JUROR:  She was a private attorney.  If

18   I can move forward to say exactly who she is, that'll give you

19   be better depiction of why I identified her that way.  She was

20   a chapter 13 trustee for the District of Columbia, Cynthia

21   Nichols.

22           THE COURT:  Okay.  And so how long did you work for

23   her?

24           PROSPECTIVE JUROR:  Ten years.

25           THE COURT:  What period of time would that have

1    been, approximately?  It's been a while.

2              PROSPECTIVE JUROR:  Yes, it's been over -- I want to

3    say over 20 years now.

4              THE COURT:  Okay.  And have you done any other jobs

5    working -- well, in the -- in a legal environment with --

6    working with other attorneys?

7              PROSPECTIVE JUROR:  No.

8              THE COURT:  Anything about the work that you did for

9    her that you think would influence you in this case or affect

10   your fairness and impartiality?

11             PROSPECTIVE JUROR:  No, there isn't.

12             THE COURT:  Okay.  And 23 is have you or any members

13   of the family ever run for elected office.  Is that you or

14   somebody else?

15             PROSPECTIVE JUROR:  That was me.

16             THE COURT:  And what office did you run for?

17             PROSPECTIVE JUROR:  A and C.

18             THE COURT:  Okay.  For what ward?

19             PROSPECTIVE JUROR:  Ward 1.

20             THE COURT:  And can I ask, did you get elected?

21             PROSPECTIVE JUROR:  It was a little close.  I did it

22   at the last two weeks.  I was close.  I was like a couple from

23   not winning.  It was my first time.  No, I didn't win.  But I

24   would do it again.

25             THE COURT:  Okay.  So is this recent?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  How long ago then?  When was the

3    election?

4          PROSPECTIVE JUROR:  It was at the end of last year.

5          THE COURT:  Okay.

6          PROSPECTIVE JUROR:  So we found out in January, if

7    I'm not mistaken.

8          THE COURT:  Okay.  So if the opportunity came again,

9    you would run again?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  Okay.  As part of that, did you -- you

12    obviously went around and did any campaigning.  Did you

13    collect any funds as part of that, or was this strictly you

14    and volunteers?

15          PROSPECTIVE JUROR:  I went around and did

16    campaigning, but it was self-funded by myself.

17          THE COURT:  Okay.  Anybody else, or are you the only

18    one that's done the elected --

19          PROSPECTIVE JUROR:  It was just me.

20          THE COURT:  All right.  25 is whether you or

21    somebody close to you was a victim, witness, of a similar

22    crime, it would be financial crimes, investment fraud,

23    identity theft, campaign finance violations.  Is that you or

24    somebody else?

25          PROSPECTIVE JUROR:  It's somebody else who wasn't --

1    it affected me, but it was someone else that was -- indirectly

2    that affected me.  That's it.

3                THE COURT:  So were you the victim?

4                PROSPECTIVE JUROR:  I was the victim.

5                THE COURT:  And you were a victim of which of these

6    categories?

7                PROSPECTIVE JUROR:  Misrepresentation of debt.

8                THE COURT:  Oh, okay.  I don't want to pry into

9    things but if you could just be a little more specific for us.

10   Is this someone who you trusted, and it turned out that they

11   had more debt than they expected or they persuaded you to

12   invest in something, or what could it be?

13               PROSPECTIVE JUROR:  One is, I did not trust them;

14   two is, they were an attorney; and three, it is within a

15   cooperative where I live.

16               THE COURT:  Oh.

17               PROSPECTIVE JUROR:  And the debt was placed on me,

18   and it was my due diligence to prove that I didn't owe the

19   debt.

20               THE COURT:  Okay.  So you live in a cooperative?

21               PROSPECTIVE JUROR:  Correct.

22               THE COURT:  And would the attorney -- was the

23   attorney representing the cooperative, the ward?

24               PROSPECTIVE JUROR:  No, the attorney lives in the

25   cooperative, and he was on the board of directors.

1          THE COURT:  Okay.  So you're in a cooperative.  The

2    attorney was on the board?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Were you on the board too?

5          PROSPECTIVE JUROR:  At one point in time, yes.  But

6    not in relations to this, no.

7          THE COURT:  Okay.  And so this was fees that were

8    associated with the cooperative or something else?

9          PROSPECTIVE JUROR:  To make a long story short, I've

10    lived there 45 years and it was a tenant conversion.  So that

11    means that you bought it at an insider price.  And so based

12    off of that and where it is, where my -- where the property is

13    today, they're saying that we owe -- or we have a loan of --

14    I'm just going to use a number not true, $70,000, and that's

15    been reported to the IRS.  But they've not been able to give

16    anything to signify that that debt exists, because it

17    doesn't.

18          THE COURT:  Okay.  So is there a lawsuit or

19    something associated with this?

20          PROSPECTIVE JUROR:  It's -- it's in the works.

21          THE COURT:  And are you represented by a lawyer

22    yourself?

23          PROSPECTIVE JUROR:  No, not yet.

24          THE COURT:  But are you going to get a lawyer?

25          PROSPECTIVE JUROR:  Correct, because it's not just

1    myself, it's others that are affected.

2           THE COURT:  So others that would have been in the

3    cooperative.  This is part of the --

4           PROSPECTIVE JUROR:  That is in the cooperative, that

5    were -- that is affected.  And I only brought it up because he

6    was an attorney, and he had -- he has access to our debt or

7    our information -- our debt, and he's stating that -- he's

8    misrepresenting the facts and stating that we owe monies when

9    we don't.

10          THE COURT:  Was this part of the TOPA program?

11          PROSPECTIVE JUROR:  No.  I went through that

12   already.

13          THE COURT:  Okay.  So this went through TOPA, and

14   this is something that's additional.

15          PROSPECTIVE JUROR:  Yes, ma'am.

16          THE COURT:  What is he claiming that's the nature of

17   the debt?  I mean, why would you owe it?  What does he claim

18   is the basis for it?

19          PROSPECTIVE JUROR:  Basis -- the basis is since I'm

20   original cooperative member, if I wanted to sell today, I

21   should be able to sell because I was a person who bought on

22   the insider cost.  I don't have a debt.  I didn't get a loan.

23   So but in order for me to sell, he is stating that I must pay

24   X number of dollars, which is a debt.  And I have something

25   that he's put and assigned to me stating that I owe this

```
 1    debt.

 2              THE COURT:  Okay.  Sorry to delve into your personal

 3    issue.

 4              PROSPECTIVE JUROR:  That's okay.

 5              THE COURT:  Just trying to get a sense of -- is

 6    there anything from your perspective that you associate, as

 7    I've described the case here, and what's going on in your

 8    personal life with this debt that you have indicated that you

 9    don't owe, is there anything that you associate in your own

10    mind, or do you see them as two separate things and could

11    focus on this case?

12              PROSPECTIVE JUROR:  I see them as two separate

13    things.  I could focus on one.

14              THE COURT:  All right.  And the last question is 36,

15    and that's the length of the trial in terms of the four weeks.

16    What seems to be the problem?

17              PROSPECTIVE JUROR:  I'm self-employed and I'm the

18    only employee, and I represent a number of -- I represent a

19    number of developers, architects, and engineers.  With what I

20    do, I am responsible for making sure that my client is able to

21    get the permits to do the vertical build.  If I am not able to

22    achieve that, and I've been paid funds to represent them and

23    obtain the permits, that becomes a detriment to me, and I

24    stand the point of being sued to give money back because I

25    can't respond to them daily on a timely basis.
```

```
 1              THE COURT:  Okay.  Do you have any employees that
 2   work with you?
 3              PROSPECTIVE JUROR:  No, I do not.
 4              THE COURT:  So this is something that you do
 5   yourself?
 6              PROSPECTIVE JUROR:  That's correct.
 7              THE COURT:  So would you ever be available for a
 8   trial, leaving aside that this one is quite a long one?
 9              PROSPECTIVE JUROR:  I don't -- to be honest, with
10   today's economy, I can't say I would.
11              THE COURT:  Okay.  Let's assume just for purposes of
12   this discussion that you were selected.  If you were selected,
13   would you be able to focus on this case, or would you be
14   concerned about what's happened in terms of your
15   self-employment?
16              PROSPECTIVE JUROR:  Yes, I would be concerned.
17   Would I be able to -- would I withstand and represent and do
18   what I'm supposed to do?  Yes, I would.  Because I'm going to
19   try to abide by the law and do my civic duty.
20              THE COURT:  Okay.  All right.
21              Mr. Keller.
22              MR. KELLER:  Just on the work you did, it sounds
23   like quite a while ago for the chapter 13 bankruptcy lawyer,
24   what kind of work were you doing as a paralegal?  Were you
25   reviewing bankruptcy files?  Were you reviewing debts that the
```

1    attorney's clients owed?

2            PROSPECTIVE JUROR:  Everything, from start to

3    finish.  New project came in -- I'm sorry, not new project,

4    new case came in, she taught me how to review the files, to

5    set it up, to find out if they were going to be plausible for

6    the case or not.  She would then, in turn, do the close-out

7    and move forward with having it scheduled for the section 341

8    meeting.

9            MR. KELLER:  Did part of that -- it sounds like it

10   did, but did part of that involve reviewing the finances in

11   detail of the clients?

12           PROSPECTIVE JUROR:  Yes.

13           MR. KELLER:  No further questions, Your Honor.

14           THE COURT:  Mr. Kenner.

15           MR. KENNER:  May I just have one moment, please.

16           What, if any, problems to yourself do you anticipate

17   if you had to spend a month here in trial?  Would you not be

18   able to pay your bills?  Would you go into savings?  What

19   would be the impact?

20           PROSPECTIVE JUROR:  It would impact my home, which

21   would be my son, who has traumatic brain injury, as well as a

22   dog that we have that's our companion pet.  And yes, you're

23   right, it would impact me financially based on the way that we

24   live.

25           MR. KENNER:  I have nothing further.

98

1              THE COURT:  All right.  You can step down.  We'll

2      give you further instructions.

3              (Juror left the courtroom.)

4              THE COURT:  I'm surprised she didn't put in -- I

5      don't remember her asking for -- there weren't that many that,

6      you know, were sort of pulled out take a look, but anyway.

7              MR. KENNER:  I have no objection to excusing her,

8      Your Honor.

9              MR. KELLER:  Agreed, Your Honor.

10             THE COURT:  All right.  I -- for financial purposes,

11     I would go ahead.  The other possibility is to just put her at

12     the end, unless you want her really off altogether in case we

13     need an extra juror.  But I don't have a problem, since both

14     of you agree, to let her go.

15             MR. KENNER:  I think we should let her go now, Your

16     Honor.

17             THE COURT:  All right.  Then I'll excuse 0749 for

18     cause.

19             All right.  It's time to stop.  What I'm going to do

20     is I'm going to ask if you all would wait for a few minutes.

21     Probably a little more than that.  Let me run down to the

22     other courtroom and tell them they need to come back tomorrow,

23     et cetera.  Then I'll be back here just to bring up a couple

24     points.  Okay?  Won't be long.

25             MR. KENNER:  What time in the morning, Your Honor?

1          THE COURT:  I'm going to ask you to show up -- I'm

2    going to start with them at 9:00 so we can get through as much

3    as possible, but you can come into the courtroom, obviously.

4    I'll have it open at 8:30, so you can come in and be set up so

5    at 9:00 we can start promptly.

6          MR. KENNER:  Thank you.

7          THE COURT:  Okay.  Oh, wait, we have one -- is this

8    the one with the trial?  Is this the one with the trial?

9    Okay.  There's one additional person that is out of order.

10   And I don't usually do this because it creates problems with

11   the rest of the jurors saying why is this person being taken

12   out of order.  There is, however -- I can orchestrate it so I

13   can bring her in.  She has indicated that she's -- has a

14   ten-year-old son taking -- watching over somebody who's blind

15   and obviously wanted to be excused, is the way I would see it.

16   I can bring her in now instead of making her come back

17   tomorrow when we can see what -- you know, what she has to

18   say.  We can stay for a few more minutes.

19         MR. KENNER:  Your Honor, on that basis, I have no

20   objection to dismissing her.

21         THE COURT:  Okay.  Let's hear what she has to say.

22   That's what she told somebody else.  We're going to put on the

23   record what she actually will say.  Okay.  If you could stay a

24   little longer and we'll orchestrate this.

25              (A recess was taken.)

```
1                    (Juror entered the courtroom.)

2            THE COURT:  Okay.  So this is juror No. -- hold on

3    one second.  0294.

4            You have a number, 04.  What's that?

5            PROSPECTIVE JUROR:  040294.

6            THE COURT:  Okay.  So it must be the 0294.  Let me

7    just find that.  What number is it?

8            THE CLERK:  It's line 33 on the second page.

9            THE COURT:  I'm sorry, which one?

10           THE CLERK:  33 on page 2.

11           THE COURT:  33 on the second page.  Okay.  So this

12   is juror No. 0294.  12, 19 and 38.  And -- okay.

13           And I believe you indicated that -- I thought you

14   had indicated to someone that you had a problem with being

15   able to continue to serve as a juror?

16           PROSPECTIVE JUROR:  I didn't hear you.

17           THE COURT:  Okay.

18           PROSPECTIVE JUROR:  I'm sorry.

19           THE COURT:  No.

20           Why don't you hand her one of the things.

21           Okay.  We have something that can make it easier for

22   you.

23           PROSPECTIVE JUROR:  Oh, okay.

24           THE COURT:  Ma'am, did you -- can you hear me now?

25   Can you hear me?  No?
```

1          PROSPECTIVE JUROR:  Hold on, I can't hear
2     anything.
3          THE COURT:  Can you hear me now?  Or you need
4     another battery.  Okay.  Let me give you this, and hopefully
5     you'll be able to hear a little better.  No, that doesn't work
6     either?
7          PROSPECTIVE JUROR:  I'll try to listen close.
8          THE COURT:  All right.  Let me try it this way.  I
9     had understood -- and we pulled you out separately -- that you
10    had a ten-year-old watching or a child watching a -- somebody
11    who is blind?
12         PROSPECTIVE JUROR:  Okay, no, I have a -- I work at
13    the same school that my grandson go to.  And he's ten.  And
14    it's only my brother who's blind, legally blind, myself, and
15    my grandson.  So I kept him home.  I'm going to have to keep
16    him home if I'm down here doing jury duty because I'm the only
17    one who can take him and pick him up.  I don't have anyone
18    else to take him or pick him up from school.
19         THE COURT:  He doesn't have -- there are other
20    parents or somebody else that wouldn't do that for you?
21         PROSPECTIVE JUROR:  His parents, my daughter.
22         THE COURT:  No, I meant other parents that go to
23    school with him.
24         PROSPECTIVE JUROR:  Not in my area.
25         THE COURT:  Okay.

```
1              PROSPECTIVE JUROR:  Not because a lot of those -- he

2       goes to another school.

3              THE COURT:  Where does he go to school?

4              PROSPECTIVE JUROR:  J.C. Nalle.  I mean, I can get a

5       teacher, but he don't know how to lock the door and unlock.

6       And my brother is legally blind.  He can't come down the steps

7       and lock the door.  Because the last time he tried to come

8       down, he fell down the bottom and broke his ribs.

9              THE COURT:  We don't need that.  So as I understand

10      it, your grandson lives with you.

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  He's ten.

13             PROSPECTIVE JUROR:  Right.

14             THE COURT:  He goes to school.

15             PROSPECTIVE JUROR:  The same school I work at.

16             THE COURT:  The school you work at.  So you're able

17      to take him there and bring him home.

18             PROSPECTIVE JUROR:  Right.

19             THE COURT:  And the household has you, your

20      grandson, and your --

21             PROSPECTIVE JUROR:  Brother.

22             THE COURT:  Brother, who is legally blind.

23             PROSPECTIVE JUROR:  Legally blind, and handicap

24      with -- his foot is kind of off.

25             THE COURT:  Okay.  So you're not able to make
```

```
 1    arrangements to have your grandson taken to school and picked
 2    up, is that it?
 3              PROSPECTIVE JUROR:  That's correct.
 4              THE COURT:  Do you want to -- there's other
 5    questions, 12, 19, and 38.
 6              MR. KELLER:  No need to go through those, Your
 7    Honor.
 8              MR. KENNER:  No, Your Honor.
 9              THE COURT:  All right.  So let me ask you to step
10    down and through this door.
11              (Juror left the courtroom.)
12              THE COURT:  Okay.
13              MR. KENNER:  No objection to excusing her, Your
14    Honor.
15              MR. KELLER:  Same, Your Honor.
16              THE COURT:  All right.  Then I'll excuse 0294, which
17    is 33 on the list, for cause.
18              I've excused those that we have not excused and then
19    the ones that we've retained, they're coming back at 11:00 so
20    that there's no reason for them to wait around for the morning
21    since it's obviously taking us time.  I asked the rest of the
22    people in the ceremonial courtroom, they've handed their cards
23    to my law clerk.  So we have all of their cards and they've
24    been excused.  They are to return tomorrow after going to the
25    jury office to get -- to check in so they can get paid, and
```

1    they will be in there as of 9:00.  So I think that's it for

2    now.  There's a couple of other things, but it's quite late

3    now.  It's 5:30.  Is there something else we need to talk

4    about other than picking up tomorrow?

5            MR. KENNER:  No, I just want to know who to turn the

6    jury panel sheet into?

7            THE COURT:  Ms. Patterson will pick them up in a

8    minute.

9            MR. KENNER:  Thank you.

10           MR. KELLER:  Your Honor, on that note, in another

11   case where jury selection lasted for a few days, it came out

12   that one of the parties was going on social media to research

13   the jurors and view their pages, and the judge ended up

14   prohibiting that.  Is that something that the Court permit or

15   prohibit?

16           THE COURT:  As a practical matter, since you don't

17   have the sheets and are not keeping them, my assumption is

18   that you should stick to what we present in court.  Since I've

19   limited what you can ask, I would prefer that you not, you

20   know, do additional research.

21           I would also ask that at least in terms of we have

22   media in a media room, which is fine, but I would use some

23   care in terms of what is said about the case so that we do not

24   have issues of publicity during the selection and the trial

25   itself.

1          So I would just ask that you -- not ordering

2    anything, but I would just use some common sense so we do not

3    have some additional problems.  But I would ask that you not

4    look at -- that get information beyond what is presented in

5    the courtroom about individuals.  I've limited what you can

6    get so that we get the material that is appropriate in terms

7    of -- the problem with doing additional research on the people

8    is there's no way of them responding or explaining or doing

9    anything else, nor the other side gets to ask any questions.

10          So I'm limiting it to consideration of what we hear

11   in the courtroom.  We're -- these are appropriate questions or

12   I've made rulings on them and where both sides have an

13   opportunity to hear what the answers are and to be able to ask

14   questions.  I don't want doing research on the outside

15   relating to these people.  You'll get information that's then

16   not been able to be questioned about either of the, you know,

17   counsel.  So we'll leave it at that.

18          MR. KELLER:  Thank you, Your Honor.

19          THE COURT:  Anything else?

20          MR. KELLER:  Nothing else.

21          THE COURT:  All right.  Then I'll see you tomorrow.

22   I'd get in here before 9:00 so that you can set up and we can

23   move forward.  And I thank the Marshal and the court reporter

24   and Dorothy for staying later.

25          (The proceedings were concluded at 5:28 p.m.)

I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_____/s/_____
Christine T. Asif
Official Court Reporter

< Dates >.
April  59:10.
April 4th
   59:10.
January,
   91:6.
March 27th,
   2023 1:11.
May  65:18,
   97:15.
May,  61:24,
   62:2.
$70  93:14.
.

< 0 >.
00 3:6, 57:6,
   57:7, 69:22,
   99:2, 99:5,
   103:19,
   104:1,
   105:22.
000 93:14.
0187 4:12.
0203 47:11,
   53:8.
0206 57:15.
0237 6:13.
0294 100:3,
   100:6,
   100:12,
   103:16.
04 100:4.
040294 100:5.
0426 68:11,
   75:14.
0463 22:6,
   24:14.
0602 61:11.
0625 54:2.
0658 75:22.
0704 46:25.
0722 24:24,
   31:5.
0739 12:24.
0739. 19:24.
0749 88:16,
   98:17.
.
.

< 1 >.
1 22:6, 22:8,
   69:22, 87:2,
   90:19.
1016 1:28.
102 3:3, 3:5,
   3:23.
11 103:19.
11-month-old
   45:3.
12 50:11, 55:3,
   100:12,
   103:5.
13 89:20,
   96:23.
1301 1:27.
14 31:21,
   31:22,
   32:1.
1400 1:35.
14th 59:10.
15 14:15,
   31:22, 34:24,
   79:24, 80:13,
   80:17, 80:18,
   81:13.
16 12:24, 13:1,
   24:25, 25:1,
   75:22,
   75:24.
16633 1:42.
17 75:23,
   77:5.
18 22:7, 24:25,
   27:6, 27:18,
   31:22,
   35:21.
19 100:12,
   103:5.
19-00148-1
   1:6.
1985 55:20.
.
.

< 2 >.
2 69:22,
   100:10.
20 31:22, 39:1,
   57:16, 57:17,
   75:23, 79:5,

88:19, 88:25,
   90:3.
20001 2:17.
20004 2:9.
20005 1:36.
2006 7:17.
2017 61:21,
   62:8, 64:5.
202 2:18.
2020 71:24,
   72:1.
20530 1:29.
21 41:20.
22 31:22, 42:1,
   75:23,
   80:5.
23 88:19,
   88:21,
   90:12.
24 5:1.
25 88:19,
   88:22, 88:23,
   91:20.
26 22:7.
27 22:7.
28 105:25.
29 31:22,
   42:23.
2:16 1:12.
.
.

< 3 >.
30 99:4,
   104:3.
33 47:11,
   61:11, 100:8,
   100:10,
   100:11,
   103:17.
333 2:15.
341 97:7.
35 31:22,
   43:19.
354-3247
   2:18.
36 22:7, 31:22,
   44:8, 44:15,
   57:16, 59:7,
   88:19,
   95:14.

37 47:11,
   47:15, 68:11,
   68:13.
38 68:12,
   69:25,
   100:12,
   103:5.
.
.

< 4 >.
4 22:6, 22:21,
   23:10,
   57:6.
42 31:23, 44:3,
   44:21,
   45:21.
45 93:10.
.
.

< 5 >.
5 25:21, 26:3,
   57:7, 104:3,
   105:25.
.
.

< 6 >.
641 2:8.
6507 2:16.
.
.

< 7 >.
75 81:25,
   82:22.
77 3:5, 3:22.
.
.

< 8 >.
8 99:4.
.
.

< 9 >.
9 3:6, 99:2,
   99:5, 104:1,
   105:22.
91436 1:43.
_____/s/___
   _____
   106:5.
.
.

< A >.
A. 2:7,
  59:20.
ABC 58:15.
abide 96:19.
above-entitled
  106:3.
Absolutely
  34:4, 34:6,
  34:9, 34:12,
  78:13.
accepted
  45:12.
access 94:6.
accident 48:1,
  48:5.
accommodating
  71:3.
accommodation
  70:2.
accommodations
  70:24,
  72:15.
accomplish
  85:6.
accountability
  81:17, 82:4,
  86:7.
accountable
  82:9,
  84:23.
accounting
  11:18, 41:21,
  41:22,
  41:24.
accurate 6:16,
  9:24,
  66:21.
achieve
  95:22.
across 32:13.
ACTION 1:5,
  80:11.
actions 41:7,
  76:20.
active 40:14,
  40:16,
  40:17.
actually 7:21,
  10:22, 45:4,

60:14,
  99:23.
adapt 72:16.
additional
  19:25, 94:14,
  99:9, 104:20,
  105:3,
  105:7.
adjusting
  85:21.
adjustment
  69:23.
adjustments
  78:22.
admin 57:24,
  58:17,
  59:6.
administration
  33:5,
  84:14.
administrative
  58:9, 77:18,
  77:24,
  78:16.
admit 41:6,
  47:1, 54:3.
advance
  77:14.
advisor
  81:15.
advisors
  41:8.
Affairs 78:8.
affect 32:8,
  33:9, 43:2,
  50:22, 50:23,
  59:3, 62:21,
  63:3, 77:2,
  82:15,
  90:9.
affected 92:1,
  92:2, 94:1,
  94:5.
AFTERNOON 1:13,
  3:2, 53:11,
  72:12.
agencies 7:13,
  7:15, 7:19,
  83:20.
agency 8:6,

8:9, 10:6,
  10:18, 13:2,
  13:7, 25:9.
ago 36:10,
  36:20, 37:12,
  45:10, 48:2,
  48:6, 49:15,
  49:17, 50:15,
  50:20, 60:6,
  61:20, 64:25,
  77:14, 78:4,
  78:20, 79:24,
  80:13, 80:18,
  91:2,
  96:23.
agree 19:12,
  65:4, 73:7,
  98:14.
Agreed 98:9.
ahead 4:9,
  6:10, 22:3,
  24:7, 24:19,
  31:10, 57:5,
  57:11, 60:17,
  75:14, 75:17,
  88:15,
  98:11.
aid 14:11.
alleged 86:1.
allowed
  12:13.
Almost 39:12.
Alon 1:40.
already 18:19,
  24:1, 59:13,
  60:21, 65:25,
  94:12.
although 15:5,
  19:17.
altogether
  98:12.
AMERICA 1:5.
American
  56:10.
amount 9:20,
  9:24, 81:1,
  83:18.
analysis
  78:22.
analyst 77:16,

77:25,
  78:10.
analyze
  83:21.
analyzed
  41:9.
analyzing
  85:10.
angry 36:14.
announced
  52:9.
annoyed 3:7.
answer 17:7,
  17:24, 18:13,
  19:13,
  24:21.
answered 16:25,
  17:4, 66:1.
answers 54:12,
  54:17, 61:7,
  66:12,
  105:13.
anticipate
  97:16.
anxiety 44:5,
  44:11,
  45:18.
Anybody 3:22,
  18:22, 21:13,
  24:4, 35:1,
  35:13, 35:17,
  42:9,
  91:17.
anyway 47:2,
  98:6.
AO 78:18.
apart 18:15.
apolitical
  34:5.
apologize 5:10,
  6:3, 35:7,
  36:2, 36:4,
  77:14,
  87:19.
APPEARANCES
  1:23, 2:1.
appearing
  34:15.
applies 89:1.
apply 66:7,

66:9.
appreciate
  68:9.
appropriate
  15:17, 16:5,
  16:18, 17:7,
  17:12, 17:23,
  17:25, 18:2,
  18:17, 18:18,
  19:8, 40:20,
  88:5, 105:6,
  105:11.
approximately
  73:24,
  90:1.
architects
  95:19.
area 39:22,
  65:1,
  101:24.
areas 25:23,
  88:5.
argument
  87:22.
arguments
  23:11.
Around 3:4,
  3:14, 6:10,
  13:16, 14:15,
  17:9, 41:6,
  41:7, 43:4,
  53:25, 60:14,
  60:15, 76:19,
  81:24, 82:1,
  85:18, 85:21,
  86:6, 91:12,
  91:15,
  103:20.
arrangements
  103:1.
arrested
  28:9.
Asia 83:5,
  83:6.
Asian 83:4.
aside 34:3,
  34:14, 34:18,
  34:21, 38:16,
  38:19, 38:23,
  43:4, 43:6,

96:8.
Asif 2:11,
  106:1,
  106:6.
aspects 34:2,
  38:16.
assess 83:25,
  85:19.
assigned 25:20,
  94:25.
assignments
  26:3.
assistant
  57:25,
  58:18.
associate 95:6,
  95:9.
associated
  27:8, 93:8,
  93:19.
associates
  41:8.
association
  55:24.
associations
  33:17,
  36:18.
assume 12:6,
  33:21, 57:3,
  96:11.
Assuming 6:4,
  32:2, 61:1,
  67:23,
  73:20.
assumption
  104:17.
assured
  36:13.
attention
  45:20, 87:14,
  88:1.
Attorney 27:8,
  28:4, 33:2,
  35:23, 36:6,
  39:4, 39:11,
  77:21, 79:16,
  89:5, 89:16,
  89:17, 92:14,
  92:22, 92:23,
  92:24, 93:2,

94:6, 97:1.
attorneys 58:7,
  90:6.
attractions
  59:25.
audit 9:11,
  9:12, 9:14,
  66:16,
  66:20.
auditing
  9:18.
available
  96:7.
Avenue 1:27,
  1:35, 2:8,
  2:15.
aware 64:21.
awareness
  85:25.
away 57:25.
.
.
< B >.
baby 44:4,
  46:4.
background
  7:17, 11:17,
  82:13, 84:7,
  84:17, 86:13,
  87:6.
bad 33:16.
banking
  41:22.
bankruptcy
  96:23,
  96:25.
Bannon 32:19,
  41:7.
based 22:13,
  23:8, 28:21,
  32:12, 75:11,
  93:11,
  97:23.
basic 43:15.
Basically 9:16,
  17:2,
  30:13.
Basis 15:10,
  18:24, 94:18,
  94:19, 95:25,

99:19.
battery
  101:4.
becomes
  95:23.
began 7:22.
beliefs 32:12,
  38:24.
believe 16:7,
  18:5, 27:3,
  35:20, 40:19,
  41:25, 45:1,
  45:2, 61:21,
  64:7, 65:2,
  65:13, 66:24,
  83:16, 84:6,
  100:13.
believes
  22:19.
besides 42:9,
  74:14.
best 33:18,
  35:7,
  38:23.
better 44:6,
  52:21, 52:22,
  89:19,
  101:5.
beyond 17:10,
  20:4, 20:9,
  20:25, 50:12,
  65:3, 65:8,
  66:6, 71:17,
  105:4.
bias 32:11,
  35:10,
  41:14.
biased 33:18.
big 70:20.
bigger 60:25.
Bill 42:6.
billions
  86:1.
bills 97:18.
birth 45:24.
bit 7:3, 25:12,
  43:11, 52:14,
  62:1, 70:9,
  70:17, 74:7,
  74:8.

blind 99:14,
   101:11,
   101:14,
   102:6,
   102:22,
   102:23.
blow 73:17,
   73:18.
blown 70:8,
   70:17, 71:4,
   72:21,
   73:10.
board 56:22,
   92:25, 93:2,
   93:4.
booked 59:13.
Borat 33:15.
Boston 60:2.
bothersome
   74:8.
bottom 102:8.
bought 93:11,
   94:21.
Boulevard
   1:42.
boutique
   58:13.
box 50:3.
brain 36:18,
   97:21.
break 38:18,
   57:6, 69:6,
   69:9.
breakfast
   69:13.
breaks 48:22,
   69:4.
briefly
   39:19.
bring 6:1,
   12:10, 19:20,
   44:22, 69:7,
   69:19, 87:12,
   98:23, 99:13,
   99:16,
   102:17.
bringing 17:17,
   18:19,
   19:17.
broader 81:4.

broke 36:25,
   102:8.
broken 36:11.
Brother 101:14,
   102:6,
   102:21,
   102:22.
brought 16:7,
   17:5, 17:24,
   19:9, 45:23,
   87:18, 87:19,
   94:5.
budget 77:16,
   77:25, 78:10,
   78:14, 78:21,
   83:10, 83:11,
   83:18, 83:19,
   83:22,
   83:25.
budgets 83:13,
   83:17,
   83:25.
build 95:21.
building 37:11,
   77:16.
burden 19:14,
   20:2, 20:3,
   20:7, 20:8,
   21:2, 21:5,
   22:16, 64:21,
   65:8, 65:21,
   65:22,
   66:5.
burdens
   64:18.
Bureau 76:6,
   76:7,
   76:10.
business 84:14,
   84:15.
.
.
< C >.
C. 1:10, 1:29,
   1:36, 2:9,
   2:17, 4:25,
   11:9, 13:8,
   13:15, 14:16,
   15:3, 15:4,
   17:11, 25:15,

25:19, 33:3,
   36:24, 43:11,
   55:1, 55:19,
   59:12, 59:25,
   60:4, 61:18,
   67:1, 74:2,
   77:6, 79:10,
   102:4.
California
   1:43, 12:11,
   59:11, 60:4,
   79:13.
call 22:9,
   83:8.
called 80:12.
calling
   45:11.
campaign 42:4,
   42:6, 42:7,
   42:13, 42:17,
   80:6, 81:3,
   91:23.
campaigning
   91:12,
   91:16.
campaigns 81:1,
   81:4.
candidates
   81:5, 81:8.
candy 69:18.
capacity 67:6,
   78:16, 80:9,
   83:16,
   89:10.
car 36:11,
   37:1, 37:6,
   59:13.
cards 103:22,
   103:23.
care 15:19,
   45:4, 45:7,
   45:14, 46:4,
   104:23.
career 55:25,
   79:21,
   79:22.
careers 56:2.
careful
   40:13.
carefully

21:20.
carry 23:14.
cases 59:5.
categories
   92:6.
caught 37:4.
cause 12:5,
   12:7, 24:11,
   24:15, 53:4,
   53:9, 67:15,
   67:17, 67:21,
   75:14, 98:18,
   103:17.
causes 40:18,
   45:5,
   65:13.
center 68:4,
   88:11.
ceremonial 3:7,
   103:22.
certain 32:13,
   72:20,
   83:18.
certainly
   69:22.
certificate
   45:24.
certify
   106:1.
cetera 34:5,
   87:8,
   98:23.
chairs 70:10.
change 41:18,
   72:23.
changed
   83:14.
chapter 89:20,
   96:23.
charge 28:22,
   29:20,
   66:24.
charged 16:11,
   22:9,
   29:12.
charges 22:11,
   28:10,
   62:15.
Charles 2:5,
   2:6.

check 103:25.
Chicago 42:7.
child 45:7,
  45:14,
  101:10.
China 56:15,
  82:24.
chosen 49:18,
  50:24,
  52:6.
Christine 2:11,
  106:1,
  106:6.
Christmas
  60:8.
citizen 45:2,
  45:13,
  82:4.
citizens 82:9,
  82:11, 85:8,
  85:12,
  86:7.
city 26:15.
civic 96:19.
civil 61:25,
  62:3, 62:24,
  63:7, 63:18,
  64:18, 64:24,
  65:9, 65:12,
  65:14, 65:20,
  66:4.
claim 94:17.
claiming
  94:16.
clear 47:9,
  57:13, 60:12,
  75:20.
clearly 3:6.
CLERK 12:18,
  100:8,
  103:23.
client 8:8,
  8:10, 8:15,
  15:12, 15:13,
  15:16, 15:18,
  95:20.
clients 97:1,
  97:11.
Clinton 42:6,
  42:12.

close 7:8,
  7:11, 10:8,
  11:2, 13:1,
  25:1, 27:7,
  29:11, 35:22,
  39:2, 41:21,
  42:3, 57:17,
  71:10, 71:11,
  75:24, 77:5,
  79:6, 80:5,
  89:1, 90:21,
  90:22, 91:21,
  101:7.
close-out 8:17,
  97:6.
close-outs
  6:23, 7:1,
  7:17, 11:8,
  11:16.
closed 8:7.
closely 42:6.
closer 5:3,
  71:14.
closing 8:20,
  8:21.
CNN 41:10.
Coast 59:11.
collapse
  56:9.
collect
  91:13.
COLLEEN
  KOLLAR-KOTELL
  Y 1:18.
college 11:15,
  58:19.
COLUMBIA 1:2.
Columbia 2:14,
  36:22,
  89:20.
combination
  45:16.
comes 33:19,
  60:23.
comfort 86:8.
comfortable
  22:3, 24:20,
  31:11, 47:17,
  68:5, 86:5.
coming 56:8,

59:10, 59:18,
  60:13,
  103:19.
comments
  5:21.
commitment
  85:18.
committee
  80:12.
common 105:2.
communicating
  82:11.
communication
  83:18.
communications
  80:12, 80:21,
  80:23,
  84:19.
community 30:5,
  35:8, 85:8.
companies 7:6,
  7:18.
companion
  97:22.
company 8:2,
  8:9.
completely
  45:3.
complicated
  49:1.
component
  15:5.
computer
  73:18.
concern 35:5,
  46:13.
concerned 29:1,
  69:17, 96:14,
  96:16.
concerns
  44:1.
concluded
  105:25.
conclusions
  84:4.
condition
  71:25.
confident
  44:10.
conflict

44:9.
confused
  88:13.
confusing
  65:16.
connected 42:6,
  79:2.
connection
  66:17.
consequences
  37:22.
consider 22:12,
  43:21.
consideration
  59:3, 63:3,
  77:2, 82:16,
  105:10.
consistent
  45:9.
constantly
  18:1, 87:13,
  88:2.
consultancy
  81:1.
Consulting
  6:20, 8:12.
CONT'D 2:1.
contact
  18:14.
context 12:12,
  12:13.
continue
  100:15.
Contitution
  2:15.
Contract 6:22,
  7:1, 7:9,
  7:16, 7:22,
  7:24, 8:7,
  8:16, 8:21,
  8:22, 9:15,
  10:7, 11:2,
  11:16.
contractors
  6:21.
contracts 6:22,
  7:5, 7:11,
  8:1, 8:20,
  9:11, 9:12,
  9:18, 10:2,

10:13.
conversations
  34:11, 41:6,
  41:12,
  43:16.
conversion
  93:10.
Cooper 3:12.
cooperation
  83:19.
cooperative
  92:15, 92:20,
  92:23, 92:25,
  93:1, 93:8,
  94:3, 94:4,
  94:20.
correctional
  13:9, 13:12,
  13:14, 14:7,
  15:1.
corrections
  14:8.
correctly
  31:17.
corruption
  41:7,
  43:12.
cost 94:22.
cost-plus
  9:18.
Counsel 40:1,
  40:6,
  105:17.
countries
  42:24,
  83:4.
counts 66:21.
couple 6:19,
  44:14, 49:8,
  50:15, 57:21,
  90:22, 98:23,
  104:2.
course 33:17.
courthouse
  77:12.
courtroom 3:8,
  3:17, 3:18,
  37:16, 38:11,
  38:17, 98:22,
  99:3, 103:22,

105:5,
  105:11.
courtroom.
  5:25, 6:7,
  12:4, 12:20,
  16:23, 19:21,
  21:24, 22:1,
  24:9, 24:17,
  30:25, 31:6,
  46:21, 47:4,
  53:3, 53:17,
  57:2, 57:9,
  60:20, 61:4,
  67:14, 68:1,
  75:7, 75:15,
  86:19, 88:9,
  98:3, 100:1,
  103:11.
Courts 77:6,
  79:3.
cousin 25:3,
  25:6, 25:7,
  25:10, 25:20,
  26:10, 26:19,
  27:16, 27:20,
  27:23, 27:25,
  28:9, 28:15,
  28:21, 29:2,
  29:8, 29:12,
  29:18, 30:9,
  30:10, 30:13,
  30:18,
  30:19.
coworkers
  14:21.
create 47:23,
  47:25, 73:15,
  87:13.
creates
  99:10.
credibility
  35:3, 35:12,
  35:15, 35:18,
  43:5.
credible
  35:16.
crime 16:11,
  26:15,
  91:22.
crimes 91:22.

CRIMINAL 1:5,
  5:11, 9:5,
  16:17, 40:8,
  49:9, 49:19,
  49:22, 52:13,
  52:22, 59:1,
  61:12, 62:8,
  62:12, 62:19,
  63:15, 64:5,
  64:19, 64:24,
  65:8, 65:12,
  65:15, 65:23,
  66:5, 66:8,
  66:23.
current 8:14,
  8:15, 40:20,
  78:16,
  83:16.
currently
  14:10, 54:20,
  81:16, 81:24,
  85:20.
Cynthia
  89:20.
.
.
< D >.
daily 95:25.
dates 54:8,
  54:14.
daughter 13:5,
  14:6, 14:19,
  15:1,
  101:21.
David E. Kenner
  1:39.
day 45:11,
  63:16, 63:17,
  85:4.
day-to-day
  83:17.
days 59:25,
  64:7,
  104:11.
dealt 78:14.
debt 92:7,
  92:11, 92:17,
  92:19, 93:16,
  94:6, 94:7,
  94:17, 94:22,

94:24, 95:1,
  95:8.
debts 96:25.
decide 10:21,
  50:12, 51:25,
  69:21.
decided 18:19,
  35:1,
  60:10.
decides 32:3.
deciding
  35:15.
decision 35:9,
  35:14, 43:23,
  87:11.
decisions 10:2,
  10:5, 35:12,
  35:18,
  86:11.
dedicate
  45:19.
deeply 44:2.
DEFENDANT 1:12,
  1:39, 2:5,
  19:1, 20:1,
  20:6, 21:2,
  22:9, 22:11,
  22:14, 23:12,
  50:7.
defendants
  13:25.
defense 32:2,
  32:3.
defer 46:4.
deferment
  44:8.
deferral
  45:10.
definitely
  41:9.
degree 19:7,
  84:19.
deliberation
  73:24.
deliberations
  62:20, 63:15,
  63:22,
  64:6.
delve 95:2.
Denison

84:19.
Department
  1:26, 1:33,
  7:20, 7:21,
  7:22, 8:11,
  8:21, 25:11,
  25:14, 25:15,
  25:20, 39:7,
  39:21, 40:2,
  56:3, 76:5,
  77:15,
  78:7.
departments
  76:20.
Depends 7:23,
  70:15, 70:20,
  71:15.
depiction
  89:19.
depression
  44:5,
  45:17.
describe 66:19,
  74:14,
  85:1.
described
  40:24, 74:5,
  95:7.
describing
  73:2,
  74:11.
deserves
  45:20.
detail 97:11.
detailed
  11:12.
details
  60:25.
determinations
  10:19.
determine
  10:7.
determined
  38:4.
detriment
  95:23.
developers
  95:19.
developing
  55:13.

development
  55:10,
  55:11.
DHS 8:15,
  10:25, 11:2,
  11:3.
diabetes
  71:25.
diabetic
  68:16.
difference
  26:25, 65:1,
  65:13, 65:3,
  87:10.
different 3:9,
  7:18, 7:19,
  15:11, 27:24,
  34:11, 34:12,
  52:5, 52:10,
  64:18, 72:18,
  81:15, 82:11,
  83:19.
difficult 27:9,
  28:22, 35:24,
  47:17,
  73:2.
difficulties
  44:19,
  63:23.
difficulty
  36:7, 43:24,
  49:4,
  69:25.
diligence
  92:18.
DIRE 1:17.
directions
  56:14.
directly
  87:5.
directors
  92:25.
discomfort
  63:23.
discuss 5:11,
  40:13.
discussed 14:6,
  26:9,
  26:13.
discussing

40:20, 51:23,
  63:23.
discussion
  52:8, 76:22,
  96:12.
discussions
  13:24, 40:7,
  40:23, 58:25,
  76:25, 77:1,
  79:25.
disgust 33:6.
dismiss 53:4.
dismissing
  99:20.
dispute 63:8.
Distance 71:13,
  71:15.
District 1:1,
  1:2, 1:19,
  2:13, 2:14,
  15:6, 36:22,
  77:7,
  89:20.
DJS 6:20, 6:24,
  7:18, 8:12.
document 70:16,
  73:12.
documents
  73:13,
  84:3.
dog 97:22.
doing 7:16,
  8:16, 14:13,
  42:16, 45:1,
  49:10, 59:14,
  59:21, 59:22,
  59:24, 59:25,
  64:12, 64:15,
  72:1, 72:13,
  81:12, 85:5,
  85:7, 85:11,
  85:12, 85:20,
  88:4, 96:24,
  101:16,
  105:7, 105:8,
  105:14.
dollars 86:2,
  94:24.
donating
  40:18.

done 9:17,
  23:10, 58:23,
  74:13, 74:15,
  74:18, 83:14,
  87:24, 90:4,
  91:18.
door 25:13,
  102:5, 102:7,
  103:10.
Dorothy 88:20,
  105:24.
doubt 17:10,
  17:15, 17:18,
  20:4, 20:9,
  20:25, 23:11,
  50:13, 65:3,
  65:9, 66:6.
driver 48:15.
driving 60:1.
drop 68:23,
  69:18.
drugs 66:20.
due 92:18.
Dulles 59:20.
Durbin 39:16,
  39:20.
during 58:18,
  68:24, 74:8,
  104:24.
duty 23:12,
  45:2, 45:10,
  96:19,
  101:16.
.
.
< E >.
ear 45:4.
earlier
  69:23.
easier 38:24,
  100:21.
East 59:11,
  83:5.
Eastern
  56:16.
eat 69:12.
economic
  55:11.
economy
  96:10.

education
    11:13,
    87:1.
educational
    55:24,
    84:17.
effectiveness
    5:15.
effort 38:25.
eight 13:16.
either 3:19,
    35:22, 36:6,
    46:16, 101:6,
    105:16.
elected 43:1,
    90:13, 90:20,
    91:18.
election 42:18,
    91:3.
elections
    42:25.
ELMO 73:17.
Emily 80:12,
    80:15, 81:4,
    82:15.
employed 13:2,
    13:7, 13:18,
    54:20,
    77:6.
employee
    95:18.
employees
    96:1.
employer
    8:11.
Employment
    6:19, 39:24,
    40:5, 74:5,
    74:6.
Encino 1:43.
end 91:4,
    98:12.
ended 104:13.
enforcement
    9:4, 11:21,
    13:2, 13:6,
    13:21, 25:2,
    25:9, 27:7,
    28:4, 34:25,
    35:8, 35:23,

36:6, 36:10,
    36:13, 36:16,
    38:14, 67:6,
    67:8,
    75:25.
engage 85:22.
engaged 85:9.
engagement
    81:2,
    85:16.
engineers
    95:19.
enough 24:1,
    60:22.
entered 6:7,
    12:20, 19:21,
    22:1, 23:2,
    24:17, 31:6,
    47:4, 53:17,
    57:9, 61:4,
    68:1, 75:15,
    88:9,
    100:1.
entrepreneurs
    85:19.
environment
    90:5.
especially
    33:4.
Esquire 1:25,
    1:31, 1:32,
    1:39, 1:40,
    2:5.
essence 7:25,
    58:8.
essentially
    10:1, 56:1.
et 34:5, 87:8,
    98:23.
European
    56:17.
events 40:20.
eventually
    43:22.
Everybody 6:5,
    48:4,
    57:14.
Everything
    97:2.
evidence 21:4,

22:17, 23:10,
    30:1, 30:3,
    34:17, 34:20,
    38:4, 49:20,
    50:7, 50:8,
    52:7, 59:3,
    63:3, 66:7,
    73:8, 77:2,
    82:16.
evidently
    52:6.
ex-soviet
    56:9.
Exactly 10:23,
    33:12, 40:4,
    42:16, 50:19,
    80:25, 81:20,
    89:18.
example 8:15,
    33:13, 41:7,
    85:14.
excluded 5:8,
    6:2, 12:9,
    12:14,
    12:15.
excuse 3:5,
    6:5, 46:25,
    53:8, 75:8,
    98:17,
    103:16.
excused 3:4,
    22:25, 23:3,
    23:6, 46:12,
    47:2, 53:9,
    60:11, 60:22,
    61:3, 75:14,
    99:15,
    103:18,
    103:24.
excuses
    46:16.
excusing 3:22,
    46:22, 98:7,
    103:13.
exists 93:16.
expected
    92:11.
experience
    5:21, 9:7,
    11:16, 27:7,

28:2, 28:3,
    35:22, 36:6,
    36:10, 36:15,
    38:16, 38:18,
    50:22, 62:18,
    63:2,
    65:11.
experiences
    34:7, 35:8,
    36:3, 62:5,
    63:21.
expired 8:23.
explain 7:3,
    9:21,
    28:25.
explained
    60:14,
    72:20.
explaining
    105:8.
explore 88:5.
exposure
    8:24.
expressing
    43:24,
    44:11.
extra 98:13.
eyeglasses
    72:18.
eyes 72:23.
eyesight
    71:25.
.

< F >.
F. 1:31.
facility 14:7,
    15:2, 15:4.
fact 20:21,
    22:13, 28:21,
    36:14, 65:14,
    79:2.
facts 94:8.
fair 27:10,
    30:17, 35:24,
    36:8, 36:17,
    43:6, 45:23,
    86:9.
fairly 34:20,
    38:8.

fairness 32:8,
  33:9, 43:2,
  62:22,
  90:10.
fall 63:9.
Falls 60:1.
familiar 7:2.
familiarity
  87:2.
family 24:1,
  27:13, 27:14,
  40:14, 45:5,
  59:9, 59:10,
  59:18, 60:12,
  60:23, 89:1,
  90:13.
far 11:16,
  23:18.
father 79:8,
  80:1.
father-in-law
  42:5,
  42:10.
fault 36:17,
  38:13,
  63:9.
favors 42:25.
FCRR 2:11,
  106:1.
Federal 6:22,
  6:25, 15:1,
  15:5, 77:10,
  77:15,
  78:23.
fee 9:18.
feel 23:9,
  36:13, 36:15,
  38:7, 38:12,
  43:11, 44:7,
  44:10, 59:15,
  68:14,
  73:1.
feeling 32:14,
  38:16.
feelings
  43:5.
feels 37:11,
  40:19.
fees 93:7.
fell 63:10,

63:11,
  102:8.
fellow 43:25,
  52:8,
  63:25.
felt 38:9.
few 3:4, 29:16,
  71:23, 98:20,
  99:18,
  104:11.
figure 3:9,
  48:19, 60:23,
  65:17.
file 9:2,
  57:25.
files 96:25,
  97:4.
final 9:22,
  10:19.
finally 60:9.
finance 42:4,
  80:6, 84:7,
  91:23.
finances
  97:10.
financial 84:3,
  91:22,
  98:10.
financially
  97:23.
find 3:15,
  19:6, 23:16,
  97:5,
  100:7.
finding
  83:12.
findings
  10:6.
fine 19:17,
  72:13, 88:8,
  104:22.
fingers 81:7.
finish 97:3.
finished
  28:13.
Firm 1:41,
  56:3, 58:4,
  58:6, 58:7,
  58:21,
  89:16.

first 59:11,
  90:23.
fits 48:19.
five 23:4,
  23:25, 64:7,
  64:25,
  74:19.
fixed 9:18.
flights
  59:12.
fly 60:4.
flying 59:19.
focus 55:4,
  55:14, 82:2,
  83:4, 84:14,
  95:11, 95:13,
  96:13.
focused 55:9,
  55:12,
  81:3.
focuses 85:3.
folks 78:1.
follow 19:18,
  20:6, 21:10,
  22:20, 22:22,
  43:15, 64:13,
  65:4, 66:9.
follow-up
  21:14.
following
  43:12,
  70:1.
food 69:13.
foot 102:24.
foregoing
  106:2.
foreign 42:24,
  86:7.
forensic
  41:21.
foreperson
  62:8.
form 23:3,
  70:19.
formal 22:10.
formally
  86:15.
former 41:8.
forward 41:13,
  89:18, 97:7,

105:23.
Fostering
  55:11.
found 3:13,
  37:22, 38:5,
  91:6.
four 58:7,
  58:18, 73:24,
  95:15.
four-week
  45:14.
Francisco
  58:14.
frankly 73:17,
  87:8.
fraud 10:13,
  91:22.
frequently
  7:15.
friend 45:5.
friends 34:11,
  89:2.
front 70:12,
  70:13.
Fulbright 56:3,
  56:8.
fulfill 7:24.
fulfilled 8:2,
  10:8.
full 7:8, 8:5,
  45:20,
  59:15.
fully 45:1.
function
  7:10.
fund 42:4.
fundraises
  81:8.
fundraising
  80:6, 81:4,
  81:7,
  81:10.
funds 91:13,
  95:22.
.
.
.
< G >.
gathering
  29:25,
  30:3.

gave 18:13,
  52:7, 52:14,
  70:18,
  82:13.
gender 81:14,
  85:16.
General 5:14,
  38:18, 40:1,
  40:6, 40:25,
  82:7.
Generally 14:8,
  46:9, 46:14,
  62:16, 63:20,
  74:14, 78:11,
  82:13.
gets 105:9.
getting 3:7,
  18:3, 19:6,
  34:13, 53:10,
  74:25.
girls 55:13.
Giuliani 33:13,
  33:16,
  41:11.
give 7:17,
  10:5, 11:2,
  11:3, 11:25,
  16:21, 21:19,
  31:18, 31:25,
  45:19, 50:10,
  51:2, 54:3,
  64:8, 67:13,
  75:5, 84:16,
  85:14, 86:18,
  89:18, 93:15,
  95:24, 98:2,
  101:4.
given 66:6.
go-between
  10:24.
goals 85:6.
gosh 33:15.
gotten 14:20,
  87:5.
governments
  81:23, 81:25,
  82:9, 84:23,
  85:4.
grab 57:25.
grad 56:17.

graduate
  11:14.
grandson
  101:13,
  101:15,
  102:10,
  102:20,
  103:1.
great 83:15.
Group 6:20,
  46:10, 47:1,
  51:17.
groups 3:10,
  85:8.
guess 7:3,
  38:13,
  75:11.
guilt 22:12,
  23:12.
guilty 16:8,
  17:6, 17:23,
  18:19, 19:10,
  20:2, 20:4,
  20:9, 20:12,
  20:15, 20:22,
  20:23, 20:25,
  22:13, 23:12,
  23:17, 23:19,
  37:22,
  38:5.
Gun 28:5, 28:8,
  28:10, 28:16,
  29:21,
  66:24.
guy 48:9,
  83:10,
  83:11.
.
.
< H >.
half 63:17,
  74:19.
hand 31:24,
  100:20.
handed
  103:22.
handicap
  102:23.
hang 3:14.
happen 48:2,

69:17.
happened 23:9,
  23:22, 30:13,
  36:12, 41:9,
  62:19,
  96:14.
happening
  26:15, 33:12,
  43:13.
hard 12:25,
  29:8, 33:11,
  48:8, 48:25,
  69:18,
  73:25.
Harvard
  84:20.
Haskell 2:5,
  2:7.
hazmat 40:4.
head 6:5,
  54:23.
Health 7:21,
  14:11, 15:9,
  15:19, 47:16,
  68:13, 68:15,
  74:7,
  78:15.
heard 23:10,
  32:13, 33:8,
  64:8,
  82:13.
hearing 20:18,
  28:7, 33:1,
  70:1, 70:2.
heavy 74:17.
Hello 57:14.
helped 57:25.
helpful 3:13.
helping
  58:14.
hereby 106:1.
high 11:14.
high-stress
  44:9.
higher 64:22.
Hill 83:19.
Hold 100:2,
  101:1.
home 14:10,
  15:9, 60:8,

72:18, 97:20,
  101:15,
  101:16,
  102:17.
Homeland 7:22,
  8:11, 8:22.
hon- 41:2.
honest 32:11,
  32:15, 33:1,
  33:19, 41:3,
  96:9.
honestly
  37:10.
HONORABLE
  1:18.
hope 33:11.
hoped 38:13.
hopefully
  101:4.
hoping 46:3,
  87:3.
hospital
  74:16.
hospitality
  58:13.
hotel 59:13.
hours 49:8.
household 26:7,
  29:15, 33:4,
  102:19.
households
  33:3.
Human 7:21.
husband 33:2,
  39:4, 39:23,
  40:16, 77:10,
  83:7, 84:9,
  87:9.
.
.
< I >.
idea 76:14,
  84:16.
identified
  89:19.
identity
  91:23.
imagine 84:3.
impact 63:21,
  97:19, 97:20,

97:23.
impartial
  27:10, 30:17,
  35:25, 36:8,
  86:10.
impartiality
  32:8, 33:10,
  43:2, 62:22,
  90:10.
implement
  85:24.
important 17:4,
  21:17.
in. 19:20,
  46:15, 88:7,
  99:13.
incarcerated
  22:25,
  23:4.
included 9:3.
incorrectly
  36:2.
Indiana 2:8.
indicate
  87:11.
indicated
  20:21, 22:10,
  22:21, 47:18,
  87:21, 87:22,
  95:8, 99:13,
  100:13,
  100:14.
indicating
  23:13, 48:16,
  49:3.
indication
  22:12.
indictment
  22:10, 22:12,
  22:14.
indirectly
  92:1.
individual
  58:5.
individuals
  15:10, 71:9,
  105:5.
infection
  45:4.
infer 22:13.

influence
  42:25, 79:3,
  80:3, 90:9.
inform 38:21.
information
  4:15, 4:19,
  6:15, 10:5,
  10:18, 18:8,
  46:10, 52:15,
  60:23, 82:14,
  85:5, 94:7,
  105:4,
  105:15.
initiate
  7:10.
injured 63:10,
  63:11.
injury 97:21.
Innocence
  15:22, 15:23,
  15:25, 17:9,
  18:10, 18:11,
  19:1, 19:4,
  20:7.
innocent 16:11,
  20:2, 20:13,
  20:17, 20:22,
  22:15.
insider 93:11,
  94:22.
instances
  76:17.
instead 3:7,
  99:16.
institute
  54:24.
instruct 19:7,
  65:3.
instructed
  20:1, 65:21,
  65:22.
instruction
  17:3, 18:12,
  18:15, 21:11,
  21:19, 51:2,
  65:5, 66:6.
instructions
  11:4, 11:25,
  16:5, 16:14,
  16:16, 16:21,

17:20, 19:7,
  19:18, 20:6,
  22:23, 50:11,
  64:9, 64:13,
  65:24, 66:9,
  67:13, 75:5,
  86:18,
  98:2.
insufficient
  38:5.
Integrity
  1:34.
intensive
  73:13.
interact
  67:8.
interest
  15:18.
interface
  11:20.
internally
  84:1.
international
  55:6, 55:9,
  81:15.
interpreter
  52:21.
interrupt
  87:13.
interrupting
  88:3.
introduced
  32:2.
introduction
  52:15.
inventory
  66:21.
invest 92:12.
investigations
  9:5.
investment
  91:22.
invoice 7:10.
invoices 8:4,
  9:22.
involve 85:10,
  97:10.
involved 10:12,
  10:13, 11:7,
  16:16, 25:23,

29:9, 30:14,
  41:16,
  86:2.
IRS 93:15.
Israely 1:40.
issue 12:6,
  17:11, 47:25,
  57:3, 59:8,
  68:17, 69:2,
  69:20, 82:7,
  86:8, 95:3.
issues 5:12,
  8:5, 48:11,
  59:1, 69:11,
  72:16, 74:10,
  74:23, 75:12,
  80:2, 83:12,
  86:6,
  104:24.
itself 58:21,
  81:7, 81:8,
  104:25.
Ivanka 32:21.
.
.
.
< J >.
jaded 43:11.
jail 13:8,
  13:15, 15:3,
  15:4.
job 11:12,
  14:20, 15:9,
  39:13, 39:20,
  48:14, 55:3,
  55:21, 57:21,
  57:22, 67:9,
  74:4, 74:11,
  74:20, 85:15,
  87:7.
jobs 13:21,
  90:4.
John D. Keller
  1:25.
jotting
  32:25.
Judge 1:19,
  3:12, 37:19,
  37:20, 38:2,
  38:4, 46:15,
  46:16, 50:10,

51:24, 52:7,
63:20, 64:8,
65:4, 66:10,
104:13.
Judiciary
77:11, 77:15,
78:23.
jurors 12:11,
16:25, 43:25,
51:16, 52:8,
63:24, 63:25,
99:11,
104:13.
Justice 1:26,
1:33, 5:12,
59:1, 76:6,
76:8,
77:15.
.
.
< K >.
keep 58:2,
101:15.
keeping 6:5,
12:18, 67:22,
104:17.
Keller 4:21,
6:18, 14:5,
54:19, 54:25,
63:13, 63:18,
67:23, 75:10,
82:18,
96:21.
Kenner 1:41,
4:23, 5:9,
9:9, 9:14,
12:9, 14:24,
16:24, 52:24,
55:17, 64:3,
64:21, 72:11,
82:20, 87:14,
88:6,
97:14.
kept 101:15.
kid 42:15.
kind 6:24,
9:20, 10:23,
11:12, 11:15,
32:14, 39:8,
39:10, 41:9,

41:11, 44:3,
47:20, 59:5,
66:16, 69:19,
74:7, 74:13,
74:23, 78:17,
81:19, 84:14,
96:24,
102:24.
kinds 34:7,
85:22.
knows 17:9.
Korea 83:6.
.
.
< L >.
language 48:9,
49:4.
large 46:10,
73:14,
84:14.
largely 81:6,
81:14, 82:8,
83:6, 85:2.
last 53:12,
61:24, 62:2,
64:24, 71:23,
71:24, 74:18,
74:20, 90:22,
91:4, 95:14,
102:7.
lasted
104:11.
late 104:2.
later 38:11,
46:12,
105:24.
latest 41:16.
laws 40:9.
lawsuit
93:18.
lawyer 39:2,
39:14, 57:18,
79:6, 79:9,
79:10, 89:2,
89:8, 89:9,
89:10, 93:21,
93:24,
96:23.
lawyers 57:21,
57:23,

58:5.
learn 43:16,
45:12.
lease 58:15.
least 3:11,
59:17, 66:1,
83:22,
104:21.
leave 3:12,
37:16,
105:17.
leaving 3:7,
45:11,
96:8.
left 5:25,
12:4, 16:23,
21:24, 24:9,
30:25, 37:17,
44:14, 46:21,
53:3, 57:2,
60:20, 67:14,
68:3, 75:7,
86:19, 88:2,
88:11, 98:3,
103:11.
legal 40:9,
59:1, 80:2,
90:5.
Legally 101:14,
102:6,
102:22,
102:23.
length 44:15,
47:24, 59:7,
95:15.
lenses 72:19.
less 27:3,
35:16.
lesser 65:9.
letter 23:5.
letting
22:10.
level 43:15.
librarian
55:22,
55:23.
library
54:23.
life 5:1,
11:10, 34:3,

74:3, 74:23,
95:8.
likely 73:12.
limbs 34:16.
limited 104:19,
105:5.
limiting
105:10.
line 14:13,
100:8.
List 80:12,
80:15, 81:4,
82:15,
103:17.
listed 4:14,
6:14,
12:24.
listen 21:19,
33:18, 34:17,
34:19, 35:3,
44:10, 48:18,
101:7.
listened 40:24,
49:20, 50:10,
52:7.
listening 44:1,
86:10.
litigation
39:8, 58:20,
58:23, 79:18,
79:20.
little 5:3,
7:3, 25:12,
43:11, 52:14,
56:5, 62:1,
70:9, 70:17,
74:7, 74:8,
75:1, 90:21,
92:9, 98:21,
99:24,
101:5.
live 67:3,
92:15, 92:20,
97:24.
lived 4:25,
11:9, 26:6,
29:14, 55:19,
67:1, 74:2,
93:10.
lives 92:24,

102:10.
loan 93:13,
  94:22.
lobbyist
  42:8.
Local 15:4,
  28:16, 37:9,
  54:25, 61:16,
  61:17.
located 23:5.
lock 102:5,
  102:7.
locked 14:1,
  30:6, 30:7,
  30:11.
Lockhart
  1:32.
long-term
  15:10.
long-time
  43:11.
longer 79:12,
  99:24.
look 10:15,
  11:4, 38:19,
  38:21, 84:2,
  88:3, 88:21,
  98:6,
  105:4.
looked 70:12.
looking 71:8,
  78:22,
  85:16.
Looks 31:21.
losing 3:15.
lot 23:24,
  33:3, 38:9,
  38:24, 45:5,
  46:12, 60:5,
  73:13, 78:14,
  84:3,
  102:1.
loud 47:9,
  57:13.
loudly 31:14.
lower 66:5.
lunch 69:12,
  69:15.
.
.

< M >.
Ma'am 8:3,
  21:9, 21:12,
  21:21, 54:20,
  94:15,
  100:24.
mail 57:25.
mailed 22:24,
  23:3.
main 77:16.
major 29:9,
  84:12.
majors 87:8.
Malaysia 82:22,
  86:2, 86:3,
  87:23.
manage 44:12.
management
  58:13,
  83:17.
manager
  80:12.
march 41:16.
marches 40:19,
  40:23.
Marlboro
  49:14.
Marshal
  105:23.
Marshals
  15:6.
Maryland 14:17,
  28:19, 28:20,
  49:7, 49:13,
  50:16, 51:8,
  51:11,
  67:4.
mask 4:10,
  6:11, 12:23,
  12:25, 19:22,
  22:4, 24:20,
  31:11, 47:8,
  53:21, 57:12,
  61:7, 68:6,
  75:18.
master 84:13,
  84:20.
match 41:1.
material
  105:6.

materials
  60:12.
matter 39:22,
  63:7, 66:22,
  76:15, 87:25,
  88:12,
  104:16,
  106:3.
matters
  56:20.
MBA 84:10,
  87:9.
MDB 87:2.
mean 3:18,
  17:6, 17:10,
  17:12, 20:12,
  20:21, 23:25,
  33:1, 33:12,
  40:11, 40:14,
  48:8, 49:2,
  50:1, 51:21,
  71:8, 76:24,
  85:1, 94:17,
  102:4.
meaning 50:1.
means 7:4,
  15:25, 32:7,
  65:4, 66:7,
  78:12,
  93:11.
meant 101:22.
media 3:17,
  3:20, 80:23,
  81:1, 104:12,
  104:22.
medical 73:1,
  74:10,
  74:23.
medically
  72:16.
medication
  44:5, 47:16,
  68:14,
  68:15.
medications
  47:20.
meeting 97:8.
member 5:6,
  45:23,
  94:20.

members 52:3,
  89:1,
  90:12.
menacing
  38:10.
mental 45:18,
  46:3.
mentally
  45:22.
mention
  41:15.
messages
  45:11.
meter 68:18.
Michel 22:9.
microphone
  4:11, 5:2,
  22:5, 23:1,
  24:22, 25:5,
  29:6, 31:15,
  47:9, 48:4,
  53:25, 57:13,
  61:10, 68:9,
  75:19,
  88:18.
mind 33:20,
  38:23, 46:2,
  84:11,
  95:10.
minister
  86:3.
minus 3:4.
minute 46:18,
  104:8.
minutes 98:20,
  99:18.
Misrepresentati
  on 92:7.
misrepresenting
  94:8.
missed 27:19,
  76:7.
mistaken
  91:7.
misunderstood
  35:6,
  86:25.
mom 45:17.
moment 14:20,
  64:23,

97:15.
money 42:24,
    43:12,
    95:24.
monies 94:8.
monitor 7:25.
month 59:18,
    97:17.
months 72:6.
morning 98:25,
    103:20.
mostly 78:14,
    81:7.
motion 19:16.
mouth 33:16,
    68:24,
    69:19.
Move 3:3,
    24:10, 53:4,
    53:25, 75:8,
    89:18, 97:7,
    105:23.
moved 42:6.
moves 31:1.
movie 33:15,
    33:17.
Moving 47:3.
MPP 84:20.
Ms 104:7.
muffins
    69:14.
Mulryne 1:31.
myself 44:7,
    91:16, 94:1,
    101:14.
.
.
< N >.
Nalle 102:4.
name 32:15.
names 32:13,
    33:19,
    41:11.
narcotic
    66:20.
nature 40:10,
    94:16.
necessarily
    7:18, 10:4,
    34:10, 36:16,

38:13.
need 3:13,
    4:11, 22:4,
    24:21, 25:5,
    29:6, 31:14,
    47:9, 48:3,
    53:14, 53:24,
    69:6, 69:9,
    69:15, 69:23,
    71:4, 71:10,
    71:11, 98:13,
    98:22, 101:3,
    102:9, 103:6,
    104:3.
needed 70:1,
    85:22.
negative 28:3,
    34:15,
    34:21.
negotiate
    8:6.
network
    74:18.
New 1:27, 1:35,
    33:14, 45:16,
    60:3, 97:3,
    97:4.
newer 33:14.
news 33:5,
    40:12,
    43:15.
next 4:6, 6:9,
    12:17, 12:22,
    18:21, 21:25,
    24:16, 31:8,
    34:24, 47:6,
    59:10,
    88:7.
Ngos 81:19.
Niagara 60:1.
nice 47:9,
    57:13,
    75:19.
Nichols
    89:21.
Nicole 1:32.
night 47:22.
NIH 72:3, 72:4,
    74:19.
nine 36:10,

36:20,
    37:12.
No. 1:5, 4:12,
    6:13, 7:16,
    12:24, 13:1,
    17:6, 17:24,
    20:14, 22:6,
    22:8, 22:21,
    24:24, 32:10,
    39:15, 42:2,
    47:11, 54:2,
    57:15, 61:11,
    68:11, 75:22,
    88:16, 94:11,
    100:2,
    100:12,
    100:19.
nobody 6:4,
    61:1.
nods 67:23.
nonprofit
    54:24,
    55:5.
Nope 42:11.
nor 105:9.
note 104:10.
notes 32:18.
Nothing 5:22,
    11:23, 16:19,
    17:2, 17:21,
    18:8, 56:24,
    64:2, 67:11,
    72:10, 75:3,
    87:24, 97:25,
    105:20.
notion 15:21,
    16:10.
nuisance
    3:14.
Number 22:8,
    27:6, 43:18,
    88:21, 93:14,
    94:24, 95:18,
    95:19, 100:4,
    100:7.
numbers 31:19,
    83:12,
    83:21.
NW 1:27, 1:35,
    2:8, 2:15.

.
.
< O >.
object 18:23.
objecting
    18:22.
objection
    18:22, 24:12,
    31:3, 46:22,
    46:24, 53:6,
    60:16, 75:11,
    86:20, 86:22,
    86:24, 98:7,
    99:20,
    103:13.
objections
    3:22.
obtain 95:23.
obviously 5:20,
    33:8, 52:2,
    60:14, 60:24,
    91:12, 99:3,
    99:15,
    103:21.
occupation
    15:15,
    66:14.
occurring
    59:16.
Office 27:9,
    28:4, 35:23,
    36:7, 40:1,
    45:11, 59:6,
    77:18, 77:24,
    90:13, 90:16,
    103:25.
officer 13:9,
    13:13, 13:14,
    15:1, 26:5,
    26:11, 27:1,
    27:4, 56:7,
    58:9.
officers 34:25,
    37:5.
Offices 2:6.
Official 2:12,
    106:7.
officials
    43:1.
often 26:19,

33:5, 40:12, 42:22, 72:23.
on-the-job 11:16, 89:13.
once 66:1.
ones 3:12, 12:14, 103:19.
Open 3:18, 81:16, 81:24, 99:4.
opening 85:18, 87:25.
operation 23:24.
opinions 42:24, 43:1, 43:21, 43:24, 44:11.
opportunity 5:11, 91:8, 105:13.
oppose 19:16.
opposed 35:15.
orchestrate 99:12, 99:24.
order 94:23, 99:9, 99:12.
ordering 105:1.
organization 81:8, 85:3.
organizations 5:6, 81:16.
original 94:20.
others 7:14, 43:22, 44:10, 44:14, 94:1, 94:2.
outcome 37:18, 42:25.
outreach 85:7.
outside

105:14.
outsourcing 56:3.
overflow 3:17, 3:19.
overseas 81:22.
overseeing 78:14.
oversight 83:18.
overtake 74:23.
owe 92:18, 93:13, 94:8, 94:17, 94:25, 95:9.
owed 97:1.
own 5:14, 35:3, 43:23, 43:24, 44:11, 95:9.
.
.
< P >.
p.m. 1:12, 105:25.
page 100:8, 100:10, 100:11.
pages 104:13.
paid 7:8, 8:5, 9:19, 9:20, 9:21, 9:23, 9:24, 10:3, 10:10, 95:22, 103:25.
pain 47:13, 47:18, 47:19, 47:24, 48:17, 48:19.
pair 72:24.
pairs 72:18.
panel 104:6.
panels 46:9.
paper 70:18, 70:19.
paperwork 57:25.
paralegal

89:11, 89:13, 96:24.
parents 101:20, 101:21, 101:22.
part 8:25, 38:15, 46:13, 47:1, 49:23, 84:22, 85:10, 91:11, 91:13, 94:3, 94:10, 97:9, 97:10.
participate 23:7, 50:13.
participation 82:4.
particular 7:13, 7:14, 8:6, 8:21, 25:23, 56:19, 62:16, 69:14, 78:15, 82:6, 85:11, 85:15, 87:7.
particularly 18:9.
parties 104:12.
Partnership 81:17, 81:25, 82:2.
Pass 12:5, 12:7, 67:15, 67:17.
passing 67:20.
past 9:17, 41:10, 41:12, 58:23, 61:12.
patrol 25:22.
Patterson 104:7.
pay 87:14, 88:1, 94:23, 97:18.
pending 28:12, 28:14, 28:15,

28:21.
People 3:3, 3:4, 3:18, 10:3, 13:25, 15:6, 15:11, 16:24, 33:22, 34:10, 34:16, 34:22, 46:10, 46:11, 46:14, 46:15, 51:18, 60:13, 71:17, 71:18, 82:24, 103:22, 105:7, 105:15.
per 11:15.
perception 18:5.
Perfect 5:3.
performance 11:7.
performed 9:25, 10:3, 11:1.
perhaps 86:24.
period 89:25.
permit 104:14.
permits 95:21, 95:23.
person 11:3, 16:10, 18:5, 20:11, 20:14, 36:11, 36:14, 36:17, 37:21, 37:22, 38:10, 76:12, 94:21, 99:9, 99:11.
personal 32:6, 44:2, 57:24, 95:2, 95:8.
personally 32:4, 32:9, 32:11.
personnel 67:9.
perspective 23:8, 95:6.
persuaded

92:11.
pet 97:22.
pharmacist
  66:15, 66:17,
  67:6.
Philly 60:3.
physical
  73:25.
physically
  45:21.
pick 101:17,
  101:18,
  104:7.
picked 68:17,
  103:1.
picking
  104:4.
piece 69:18.
pipeline
  40:4.
place 15:6,
  45:23,
  56:21.
placed 92:17.
Plaintiff
  1:7.
plan 60:6,
  60:25.
planned 59:9,
  60:7,
  60:21.
plausible
  97:5.
Please 4:8,
  4:9, 5:9,
  6:1, 6:8,
  22:2, 24:18,
  47:5, 47:6,
  47:7, 53:18,
  53:19, 57:10,
  61:6, 74:22,
  75:17,
  97:15.
plus 48:8,
  73:24.
point 7:11,
  8:7, 57:6,
  57:7, 69:22,
  93:5,
  95:24.

points 43:22,
  98:24.
Police 25:11,
  25:14, 25:15,
  25:20, 26:5,
  26:11, 26:25,
  27:4, 37:5,
  76:17,
  76:20.
policies
  85:5.
Policy 82:6,
  82:8, 84:15,
  84:20.
policymaking
  82:5, 85:9.
political 5:6,
  6:2, 32:11,
  32:12, 33:3,
  34:12, 38:24,
  40:23, 41:1,
  42:25, 43:5,
  43:12, 80:11,
  86:13.
politically
  40:14, 40:15,
  40:17.
politicians
  43:6.
pop 69:18.
portfolios
  78:15,
  83:19.
portions
  73:18.
position 10:1,
  10:9, 17:19,
  19:15,
  75:10.
possession
  28:5, 28:8,
  28:10, 28:16,
  29:21.
possibility
  98:11.
possible 88:5,
  99:3.
postpartum
  44:5,
  45:18.

potentially
  85:21.
practical
  87:25,
  104:16.
practice 12:10,
  58:11,
  58:12.
practicing
  79:12.
PRAKAZREL
  MICHEL
  1:10.
prefer 17:12,
  17:18, 18:1,
  87:12, 88:4,
  104:19.
presence
  45:9.
present 10:17,
  21:3, 36:7,
  46:15, 49:21,
  52:12, 52:17,
  104:18.
presented 50:6,
  50:7,
  105:4.
President
  41:8.
Presumed 20:1,
  20:17, 20:22,
  22:14.
Presumption
  15:21, 15:24,
  17:9, 18:10,
  18:11, 19:4,
  22:15.
presumptions
  16:1.
Pretty 11:10.
prevents
  74:11.
previous
  57:20.
previously
  57:20,
  74:5.
price 93:11.
principles
  22:18,

22:20.
print 70:21,
  70:22,
  73:14.
prior 67:3,
  72:7.
privacy
  15:18.
private 39:6,
  58:6, 79:15,
  79:16, 89:15,
  89:16,
  89:17.
Probably 26:20,
  36:19, 73:11,
  98:21.
problem 12:8,
  46:20, 61:2,
  64:15, 68:13,
  68:15, 68:19,
  68:22, 71:9,
  73:15, 87:6,
  87:13, 95:16,
  98:13,
  100:14,
  105:7.
problems 47:16,
  47:23, 61:1,
  71:14, 73:5,
  73:25, 83:12,
  97:16, 99:10,
  105:3.
proceedings
  105:25,
  106:3.
process 85:9,
  85:23.
procurement
  85:18,
  85:21.
produce
  22:17.
professors
  56:8, 56:10,
  56:20.
program 48:9,
  56:4, 56:7,
  94:10.
progressing
  75:2.

progressive
  72:19.
prohibit
  104:15.
prohibiting
  87:1,
  104:14.
project 97:3.
promptly
  99:5.
proof 46:2,
  64:18, 65:3,
  65:8, 65:21,
  65:22.
properly
  10:3.
property 79:17,
  93:12.
protest
  41:16.
protesting
  40:19.
protests
  40:23.
proudest
  41:5.
prove 16:11,
  19:1, 20:2,
  20:3, 20:7,
  20:8, 21:3,
  92:18.
proved 50:12.
proven 20:12,
  20:23.
proves 20:24.
provide 4:15,
  6:15, 6:24,
  7:6, 10:16,
  18:11,
  69:13.
provided 7:7,
  7:9, 10:16,
  10:22, 10:25,
  16:14.
providing 8:9,
  8:18, 8:25,
  10:10,
  85:3.
proving 19:13,
  22:16.

pry 92:8.
Public 1:34,
  84:20, 85:7,
  85:18.
publicity
  104:24.
pull 5:2.
pulled 98:6,
  101:9.
purposes 96:11,
  98:10.
pursuit 37:5.
put 5:9, 9:20,
  16:17, 26:24,
  32:3, 34:3,
  34:14, 34:17,
  34:21, 35:4,
  36:11, 38:16,
  38:19, 38:23,
  43:4, 43:6,
  45:20, 68:24,
  75:1, 94:25,
  98:4, 98:11,
  99:22.
.
.
< Q >.
quarter 57:6.
question 10:12,
  15:17, 16:18,
  17:4, 17:7,
  17:12, 17:22,
  17:25, 18:2,
  18:18, 19:25,
  22:8, 24:25,
  32:1, 33:7,
  33:24, 34:13,
  35:4, 35:11,
  43:21, 43:23,
  44:3, 45:20,
  66:1, 83:15,
  86:9, 88:25,
  95:14.
questioned
  105:16.
questionnaire
  22:24.
quickly
  54:11.
quite 44:7,

46:10, 60:22,
  96:8, 96:23,
  104:2.
.
.
< R >.
R. 2:5, 2:6.
rack 36:18.
Rae 1:32.
raise 35:4.
raised 48:11.
raising 42:4.
ran 38:11.
reach 3:6,
  51:7, 51:10,
  51:15, 52:2,
  62:12, 62:25,
  63:24.
reactions
  33:22.
read 70:19,
  73:8, 73:14,
  73:19.
readers 72:21,
  72:25.
reading 54:3,
  70:8.
really 11:15,
  21:17, 26:12,
  29:3, 29:8,
  31:14, 33:16,
  35:11, 41:17,
  42:14, 42:15,
  44:4, 45:9,
  45:19, 46:3,
  59:5, 64:25,
  66:25, 68:17,
  69:16, 72:22,
  76:11, 83:3,
  87:10,
  98:12.
reason 6:4,
  23:21, 67:5,
  67:22,
  103:20.
reasonable
  17:10, 17:15,
  17:18, 20:4,
  20:9, 20:25,
  23:11, 50:13,

65:3, 65:8,
  66:6.
recall 63:14,
  63:23,
  65:23.
recent 33:4,
  41:19,
  90:25.
recently 9:17,
  44:4.
recess 4:4,
  53:10, 57:8,
  99:25.
recollection
  64:17,
  65:7.
recommendations
  83:13, 83:22,
  83:25,
  85:21.
reconcile
  9:23.
reconciliations
  78:17.
record 88:18,
  99:23,
  106:2.
recorded
  36:2.
reform 76:17.
region 56:18.
register
  49:8.
regular 69:4.
regulations
  41:22.
related 9:4,
  76:17.
relating 87:6,
  105:15.
relation 27:14,
  77:9.
relations
  93:6.
remains
  22:15.
remember 37:10,
  40:4, 47:1,
  62:15, 63:6,
  64:25, 66:25,

98:5.
remind 74:22.
repeat 5:16.
Reported 2:11,
  93:15.
Reporter 2:12,
  105:23,
  106:7.
represent
  82:10, 95:18,
  95:22,
  96:17.
represented
  93:21.
representing
  92:23.
Republic 56:15,
  82:24.
reputation
  32:5, 32:7.
request 23:2,
  45:10,
  60:11.
require
  16:15.
required 32:3,
  65:21,
  65:22.
research 54:24,
  56:11,
  104:12,
  104:20,
  105:7,
  105:14.
residence
  72:15.
resident
  43:11.
resolution
  63:24.
respect
  63:22.
Respectfully
  17:14.
respond
  95:25.
responding
  105:8.
responsibility
  23:14, 48:10,

51:1.
responsible
  45:3, 45:13,
  95:20.
rest 17:25,
  45:15, 99:11,
  103:21.
restaurants
  58:14.
restaurateur
  58:13.
retail 74:15.
retained
  103:19.
retire 79:23.
retired 54:21,
  54:22.
return
  103:24.
review 97:4.
reviewing 9:1,
  83:12, 96:25,
  97:10.
revolve 86:6.
ribs 102:8.
road 59:14.
robbery
  29:22.
Roe 41:18.
role 40:6.
Room 2:16,
  104:22.
rooms 59:13.
roughly 26:19,
  79:21.
RPR 2:11,
  106:1.
rulings 87:15,
  105:12.
run 4:1, 90:13,
  90:16, 91:9,
  98:21.
rush 6:8.
Russia 56:4.
Russian 56:6,
  56:16.
.
.
< S >.
S. 1:26, 1:33,

15:6, 27:8,
  28:3, 35:23,
  36:6, 56:8,
  77:7.
safe 36:13,
  36:15,
  38:12.
safer 38:14.
San 58:14.
sanity 46:3.
sat 50:3.
satisfaction
  11:1.
satisfied 11:6,
  52:20.
savings
  97:18.
saying 18:1,
  20:10, 20:14,
  30:2, 47:8,
  48:18, 49:5,
  49:13, 67:21,
  75:19, 93:13,
  99:11.
says 85:17.
scary 36:15.
scheduled
  97:7.
scholars
  56:8.
school 11:14,
  39:17, 39:18,
  39:19, 56:17,
  101:13,
  101:18,
  101:23,
  102:2, 102:3,
  102:14,
  102:15,
  102:16,
  103:1.
science
  86:14.
screen 70:11,
  70:12,
  70:13.
se. 11:15.
Sean 1:31.
second 31:18,
  88:22, 100:3,

100:8,
  100:11.
Section 1:34,
  97:7.
Security 7:22,
  8:11, 8:22,
  45:24, 78:1,
  78:25,
  79:1.
Seeing 33:16,
  44:6, 69:25,
  70:2, 70:3,
  70:5, 70:6,
  71:4, 71:9.
seek 42:25.
seem 35:4.
seems 11:11,
  73:16,
  95:16.
seen 23:4,
  32:13.
select 45:8.
selected 22:20,
  30:16, 33:10,
  69:12, 69:24,
  96:12.
selection
  104:11,
  104:24.
self-employed
  95:17.
self-employment
  96:15.
self-funded
  91:16.
sell 94:20,
  94:21,
  94:23.
Senator 39:15,
  39:20.
send 46:9,
  46:11.
sense 15:5,
  70:13, 84:4,
  95:5,
  105:2.
separate 3:19,
  38:20, 95:10,
  95:12.
separately

101:9.
serve 100:15.
served 62:7,
  62:21.
Service 7:7,
  15:6.
Services 6:24,
  7:7, 7:9,
  7:21, 8:9,
  8:17, 8:24,
  9:25, 10:9,
  10:22,
  10:25.
serving
  68:17.
SESSION 1:13,
  54:9.
Sessions 32:19,
  41:11.
set 3:21, 4:5,
  22:18, 58:14,
  66:10, 72:15,
  88:2, 97:5,
  99:4,
  105:22.
several 8:19,
  17:11.
shaking 6:5.
share 84:1,
  85:5.
sharing 44:3,
  84:11.
She'll 11:25,
  31:25.
sheet 104:6.
sheets
  104:17.
short 69:5,
  93:9.
shouldn't
  32:17,
  43:18.
show 4:2,
  36:12, 45:12,
  99:1.
sick 23:25,
  45:4.
side 84:15,
  105:9.
sides 105:12.

signify
  93:16.
similar 35:9,
  91:21.
Sir 10:14,
  30:24, 53:1,
  60:18, 68:2,
  75:4.
sister-in-law
  76:2, 76:4.
sit 4:10, 6:10,
  12:23, 22:3,
  24:19, 47:7,
  48:17, 53:19,
  57:11, 61:6,
  65:12, 68:4,
  68:14, 75:17,
  85:17,
  88:15.
sitting 47:24,
  48:21, 54:14,
  71:18, 73:23,
  86:5.
situations
  44:9.
six 45:10,
  72:5.
six-month
  74:4.
size 73:14.
small 58:7,
  70:11.
Social 45:24,
  104:12.
socialize
  14:21.
solving
  83:12.
somehow
  45:22.
Someone 27:8,
  32:15, 41:14,
  63:11, 73:19,
  92:1, 92:10,
  100:14.
someplace 3:17,
  36:23, 37:9,
  59:23, 61:16,
  77:12,
  79:11.

Sometimes
  9:13.
Somewhere
  28:18,
  54:25.
son 22:25,
  23:3, 23:9,
  23:22, 45:3,
  45:23, 97:21,
  99:14.
Sorry 7:3,
  12:19, 14:17,
  24:2, 25:25,
  27:12, 29:7,
  32:17, 32:22,
  33:14, 33:15,
  36:9, 37:12,
  40:5, 41:24,
  42:14, 46:19,
  54:6, 67:16,
  70:4, 71:1,
  75:9, 86:21,
  87:18, 88:13,
  95:2, 97:3,
  100:9,
  100:18.
sort 69:13,
  80:23, 83:7,
  98:6.
sounds 96:22,
  97:9.
source 33:8.
South 83:6.
southeast
  83:6.
Soviet 56:9,
  56:10.
special 46:9,
  72:14.
specialist
  56:4, 56:6,
  72:2.
specialty
  79:15.
specific 55:4,
  55:14, 87:12,
  92:9.
Specifically
  43:17, 55:13,
  56:18, 63:22,

78:23,
  78:24.
spectators
  3:19.
spend 97:17.
stand 27:1,
  33:13, 38:11,
  95:24.
standard 65:9,
  65:14, 66:5,
  66:9.
standing
  25:13.
stands 41:18.
start 3:10,
  32:1, 47:15,
  74:17, 78:19,
  88:25, 97:2,
  99:2, 99:5.
started 19:11,
  64:6, 74:17,
  74:25, 77:13,
  78:4,
  78:20.
starting
  47:21.
State 15:2,
  45:18,
  56:3.
States 1:1,
  1:5, 1:19,
  2:13, 56:9,
  81:22.
stating 94:7,
  94:8, 94:23,
  94:25.
Station
  77:17.
statistician
  83:8, 83:9.
Statistics
  76:6, 76:8,
  76:15, 76:17,
  76:19.
stay 48:20,
  49:8, 60:13,
  99:18,
  99:23.
staying
  105:24.

stenographic
  106:2.
steps 102:6.
Steve 41:7.
stick 104:18.
stood 41:12.
stop 98:19.
stopped
  17:18.
stopping
  17:19.
stories
  43:13.
story 93:9.
strategic
  85:7.
strategy
  85:24.
Street 25:22,
  32:21.
stress 45:5.
strictly 11:8,
  91:13.
strike 19:17,
  24:11, 24:14,
  31:1, 31:5.
strong 42:23.
stronger
  72:24.
struggling
  44:4.
studied 39:2,
  56:16, 57:18,
  79:7, 89:3,
  89:7.
studies 56:17,
  84:20.
stuff 29:22,
  37:3, 58:15,
  69:14.
subject 39:22,
  56:19, 63:7,
  66:22,
  76:15.
subjects
  25:23.
submit 9:22.
submitted 8:4,
  45:10.
succeeding

87:17.
sued 95:24.
sugar 68:23,
  69:17,
  69:19.
suggest 3:3,
  3:4, 3:8,
  17:1, 18:9,
  18:14.
Suite 1:28.
sunlight
  85:3.
Superior 37:8,
  61:18,
  77:6.
supply 74:16.
support
  42:17.
supporting
  42:20.
supposed 85:12,
  96:18.
surgery
  23:24.
surprised
  98:4.
sweet 68:24.
system 5:15,
  38:8, 40:8,
  59:1.
.
.
< T >.
T. 2:11,
  106:6.
Taiwan 83:1.
taken. 4:4,
  57:8,
  99:25.
talked 26:10,
  30:10,
  59:5.
targeted
  85:7.
targets 85:6.
taste 33:16.
taught 97:4.
tax 79:16.
Taxi 48:15.
teach 56:11.

teacher
  102:5.
technician
  74:16.
tells 10:25.
Ten 39:12,
  67:2, 89:24,
  101:13,
  102:12.
ten-year-old
  99:14,
  101:10.
tenant 93:10.
term 9:12.
Terrific
  88:24.
testified 27:1,
  37:17.
testify 21:4,
  36:12, 37:6,
  37:16.
testimony
  34:24, 35:14,
  35:19.
that'll
  89:18.
THE CLERK 4:6,
  100:10.
theft 86:1,
  91:23.
themselves
  63:10,
  63:12.
then-prime
  86:3.
therapist
  44:6.
they've 8:23,
  10:10, 20:21,
  46:14, 93:15,
  103:22,
  103:23.
thinking
  36:19.
thinks 17:23.
though 3:14,
  81:10.
thoughts 14:7,
  43:25.
threatened

38:17.
threatening
  38:10.
three 26:20,
  26:22, 49:16,
  50:19, 58:18,
  92:14.
thresholds
  85:22.
throughout
  22:15.
timely 95:25.
today 3:21,
  93:13, 94:20,
  96:10.
together
  40:20.
tomorrow 3:9,
  3:16, 4:2,
  98:22, 99:17,
  103:24,
  104:4,
  105:21.
took 27:1,
  37:3, 39:20,
  48:22,
  69:4.
TOPA 94:10,
  94:13.
topic 63:6.
totally
  38:20.
tourist
  59:24.
training 12:14,
  87:7, 89:12,
  89:13.
TRANSCRIPT
  1:17,
  106:2.
transparency
  81:18,
  82:4.
transparent
  82:10.
Transportation
  7:20, 39:7,
  39:22,
  40:2.
traumatic

97:21.
traveling
  60:14,
  60:15.
treat 27:2,
  34:25, 35:13,
  35:17.
treated 38:8.
trials 16:25,
  17:22, 40:9,
  41:10, 46:12,
  64:22.
tried 102:7.
trip 59:11,
  59:14.
trouble 20:18,
  28:7, 44:9,
  54:3.
true 93:14.
Trump 32:21,
  33:5, 41:8.
trust 92:13.
trusted
  92:10.
trustee
  89:20.
truthful
  35:2.
try 8:5, 9:23,
  10:9, 43:15,
  45:11, 45:17,
  60:5, 60:9,
  65:18, 87:16,
  96:19, 101:7,
  101:8.
trying 3:3,
  3:15, 7:24,
  17:8, 19:6,
  35:10, 36:18,
  37:10, 40:4,
  41:3, 43:13,
  44:6, 44:11,
  46:13, 48:19,
  85:6, 87:13,
  95:5.
Tuesday
  59:10.
tuned 41:10.
turn 97:6,
  104:5.

turned 92:10.
turning
  14:19.
turns 69:23.
twice 66:2.
twinge 32:14.
Two 10:24,
  47:11, 48:11,
  56:2, 59:15,
  59:25, 62:4,
  65:24, 70:10,
  72:18, 77:13,
  78:4, 78:20,
  90:22, 92:14,
  95:10,
  95:12.
two-year
  85:24.
type 64:22.
types 64:22.
.
.
< U >.
unable 22:19.
unanimous
  43:20.
undergraduate
  84:18.
understand
  3:13, 18:4,
  20:5, 20:10,
  20:11, 21:5,
  21:8, 21:17,
  21:18, 30:12,
  31:17, 43:13,
  48:5, 49:2,
  49:25, 51:4,
  51:5, 52:22,
  64:11, 64:12,
  84:23,
  102:9.
understands
  18:10.
Understood
  7:12,
  101:9.
Union 56:9,
  56:10,
  77:16.
United 1:1,

1:5, 1:19,
  2:13,
  81:22.
University
  84:19,
  84:21.
Unless 53:14,
  98:12.
unlock 102:5.
Until 20:12,
  20:23, 20:24,
  57:6,
  74:17.
Upper 49:14.
using 8:14,
  59:13.
usual 70:23.
.
.
< V >.
v. 41:18.
VA 78:15,
  83:17,
  83:22.
vacation
  59:9.
variety
  81:15.
various 64:9.
vendor 7:8,
  8:4, 8:6,
  8:16, 8:17,
  8:25, 9:19,
  10:21, 10:24,
  11:7.
vendors 8:19.
Ventura 1:42.
verdict 43:20,
  51:7, 51:10,
  51:15, 52:1,
  52:2, 52:9,
  62:12, 62:13,
  62:25.
versed 43:14.
versions
  17:11.
vertical
  95:21.
Veteran 78:8,
  78:15.

victim 91:21,
  92:3, 92:4,
  92:5.
view 5:14,
  22:22, 40:17,
  43:22,
  104:13.
views 34:3,
  34:11, 34:12,
  34:15, 34:22,
  41:1, 43:9,
  43:17.
violations
  91:23.
violence
  76:18.
vision 72:23,
  75:12.
visit 60:9,
  60:24.
visiting 59:12,
  59:22.
voice 47:10,
  57:13, 58:3,
  75:20.
VOIR 1:17.
volunteers
  91:14.
vote 23:12.
vs 1:8.
.
.
< W >.
Wade 41:18.
wait 35:14,
  98:20, 99:7,
  103:20.
Wall 32:21.
wanted 32:15,
  44:21, 45:12,
  94:20,
  99:15.
wanting
  23:21.
wants 8:22.
Ward 25:21,
  26:3, 90:18,
  90:19,
  92:23.
warehouse 72:2,

74:14,
74:18.
Washington
1:10, 1:29,
1:36, 2:9,
2:17.
waste 17:13,
87:23.
watch 3:17,
3:20,
37:15.
watching 33:14,
99:14,
101:10.
wear 68:18.
week 45:15.
weeks 45:10,
59:16, 73:24,
77:13, 78:4,
78:20, 90:22,
95:15.
well-articulate
d 43:17.
Whatever 7:10,
8:6, 8:21,
8:22, 10:6,
10:18, 33:8,
38:5, 60:24,
69:6, 69:7,
73:18.
wherever
12:10.
whole 5:1,
7:19, 37:15,
59:14.
whomever 9:22,
10:6,
10:18.
Will 3:16,
3:19, 33:17,
52:11, 52:17,
53:10, 59:17,
64:11, 65:3,
99:23, 104:1,
104:7.
willing
41:13.
win 90:23.
wind 3:14.
winning

90:23.
withdraw 5:4.
within 26:3,
39:25, 78:23,
81:21, 81:22,
92:14.
without 13:1,
33:12, 51:6,
62:11.
withstand
96:17.
witness 19:17,
27:2, 28:6,
37:13, 65:25,
75:9,
91:21.
witnesses 32:2,
32:4, 32:9,
33:18.
Wolf 32:21.
women 55:13,
81:8, 84:19,
85:16, 85:18,
85:23.
word 46:1.
words 27:2,
34:15,
35:14.
worked 7:18,
7:19, 7:20,
7:21, 13:15,
39:10, 39:15,
39:20, 41:21,
42:4, 56:2,
56:17, 57:18,
57:21, 58:17,
59:2, 71:24,
74:16, 74:19,
78:7, 79:6,
80:6, 80:11,
80:14, 80:16,
80:18, 81:23,
89:8, 89:9.
worker 15:9.
Working 7:23,
8:11, 8:16,
9:23, 10:6,
15:16, 25:2,
27:8, 34:9,
48:13, 49:9,

56:3, 56:10,
70:25, 71:2,
71:22, 72:8,
74:14, 74:17,
81:1, 81:7,
82:3, 82:8,
83:16, 85:4,
90:5, 90:6.
works 13:8,
39:23, 40:1,
40:3, 75:25,
76:5, 76:16,
77:10, 77:14,
81:17,
93:20.
world 55:13,
81:24,
82:1.
worried 30:17,
30:19.
worse 74:8,
75:1.
writing 70:16,
71:7.
written 22:6,
43:18,
54:13.
wrote 23:13,
32:18,
54:11.
.
.
< Y >.
year 26:21,
26:22, 64:24,
91:4.
years 5:1,
13:16, 14:15,
23:4, 23:5,
23:25, 36:10,
36:20, 37:12,
39:12, 48:5,
49:16, 50:15,
50:20, 55:3,
58:18, 64:25,
67:2, 71:23,
74:19, 79:24,
80:13, 80:17,
80:18, 81:13,
89:24, 90:3,

93:10.
York 1:27,
1:35, 60:3.
younger
27:15.
youngest 27:15,
27:17, 27:20,
27:22.
yourself 22:3,
24:20, 31:10,
47:7, 68:5,
72:15, 81:10,
93:22, 96:5,
97:16.